UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
------------------------------------------------------------------------X
STEVEN SHAW,

                Plaintiff,                          Docket No.: 20-cv-410

   -against-                               **DECLARATION IN OPPOSITION TO PLAINTIFF'S MOTION TO STAY**

THE HONORABLE THOMAS B. MODLY,
ADMIRAL CHRISTOPHER GRADY,
VICE ADMIRAL DEWOLFE MILLER,
REAR ADMIRAL ROY KELLEY, and
TIMOTHY C. PARLATORE, ESQ.

                Defendants.
------------------------------------------------------------------------X

STATE OF VIRGINIA    )
                               ) SS.:
COUNTY OF FAIRFAX   )

      TIMOTHY C. PARLATORE, a lawyer admitted to practice before the Courts of the states of New York, New Jersey, and numerous U.S. District Courts, declares the following under the penalties of perjury:

      1.     I am the Defendant, *pro se,* in the above captioned action and submit this Declaration in Opposition to Plaintiff's Motion to Stay.

      2.     This Affirmation is based on personal knowledge and information and belief, the source of that information, and the basis for that belief being an examination of the various papers filed as part of this proceeding, related proceedings, publicly available information, my independent investigation of this matter and my representations of LtCol Michael Nesbitt, CDR Martin Weyenberg, CDR Brandon Scott and CDR Bryan Roberts.

      3.     The Plaintiff's primary cause of action, which forms the basis of his jurisdictional claims, is that the Navy has convened an investigation in violation of an order by the Assistant Secretary of the Navy for Manpower and Reserve Affairs ("ASN M&RA"). However, this is a

1

false jurisdictional claim, as ASN M&RA explicitly authorized the investigation and, as discussed more fully in the associated Memorandum of Law, an order authorizing an investigation is not reviewable by the Court.  Plaintiff moved for a stay after being confronted with the fact that he has misrepresented the contents of ASN M&RA's order.

4. In addition to the claims Plaintiff raises against Navy leadership, the complaint accuses me of libel, related to two statements that I made in communications on behalf of my clients.  However, despite Plaintiff's best efforts to misconstrue these statements, the inescapable fact is that both statements were true.

5. The first allegedly libelous statement is when I wrote a complaint to the Department of Defense Office of the Inspector General asking them to investigate their own investigator, David Ursini, for a range of misconduct, including improperly providing copies of evidence to Plaintiff, LT Shaw.  In this complaint, I accurately and correctly stated that we were unaware of how LT Shaw obtained copies of LtCol Nesbitt's personal notebook, but that he had sent copies to members of the media in an attempt to smear LtCol Nesbitt.  We wanted them to investigate whether Mr. Ursini had improperly provided it to him, or if he had obtained it through other means, such as scanning a copy from LtCol Nesbitt's office.  This statement is true and therefore not libelous.

6. The second allegedly libelous statement is when I wrote in a communication to various members of Congress that LT Shaw had obtained a patent for a "training and maneuver refinement system" that appears to be intended to be installed onto F/A-18, but failed to have it properly evaluated under 37 C.F.R. §501 to determine whether he or the Government owned the intellectual property rights to this device.  37 C.F.R. §501.6 provides that the Government shall obtain the intellectual property rights to "any invention made by any Government employee: (i) During working hours, or (ii) With a contribution by the Government of facilities, equipment,

materials, funds or information, or of time or services of other Government employees on official duty, or (iii) Which bears a direct relation to or is made in consequence of the official duties of the inventor." This statement is true and therefore not libelous.

7. I take Plaintiff's allegations of dishonesty very seriously and have been moving aggressively to litigate this case and clear my name, but Plaintiff has demonstrated an outright refusal to cooperate in any way that would advance this case towards discovery or resolution. In addition to pushing for a 26(f) conference, I also attempted to have Mr. Montalvo correct several material misrepresentations that he had made to the Court at our first appearance, as he is required to do under Rules of Professional Conduct 3.3(a)(1).

8. On February 13, 2020, we appeared before the Court to argue the Plaintiff's Motion for a Preliminary Injunction, Mr. Montalvo argued that my request that the Inspector General investigate whether Mr. Ursini had improperly provided documents to LT Shaw was knowingly false because months earlier, Mr. Montalvo had cross-examined LtCol Nesbitt about his notebook at an administrative hearing for LT Shaw's Field Naval Aviator Examination Board ("FNAEB"). Although Mr. Montalvo regaled this Court with a story about how his cross-examination led the board to find LtCol Nesbitt not credible, this entire episode was a complete fabrication. Mr. Montalvo never cross-examined LtCol Nesbitt because FNAEBs do not permit attorneys to participate and cross-examine witnesses. Nobody at the board asked LtCol Nesbitt questions about his notebook, he never claimed that the notes were taken contemporaneously, and the board never made any determinations about LtCol Nesbitt's credibility. Moreover, Mr. Montalvo falsely claimed that, rather than prohibiting LT Shaw from teaching his dangerous landing method, he had actually received a Navy Achievement Medal for this teaching method. However, no such

medal exists. In a case where Plaintiff is accusing an attorney of making false statements, it is unbelievable that Plaintiff's counsel begins the case by fabricating stories to tell the Court.

9. Subsequently, I had several email communications with Mr. Montalvo in an effort to resolve the issues of the false representations, as well as to set a 26(f) conference, but Mr. Montalvo flippantly refused, saying "In the words of the pirate Barbossa,[1] 'I'm disinclined to acquiesce to your request.' Have a good day."[2]

10. On February 20, 2020, I wrote again to counsel for the Plaintiff to have them correct material misstatements in the complaint regarding the contents of the order from ASN M&RA with a copy of ASN M&RA's letter attached.[3] I received no response to this communication. Instead, Plaintiff now claims that he coincidentally received the letter that day, not from me, but from the Project on Government Oversight ("POGO"). Plaintiff has noticeably declined to include that email as an exhibit.

11. Plaintiff's claims about POGO make no sense, as he claims that POGO sent him my letter to Congresswoman Luria before he filed the complaint but chose not to send him the exhibits. Instead, Plaintiff claims that POGO decided to withhold the exhibits for a few weeks before miraculously deciding to send him the exhibits on the same day that he received my demand to dismiss the case for his misrepresentations of ASN M&RA's letter.

12. On February 26, 2020, counsel for the Plaintiff sent me and counsel for the co-defendants a draft motion to stay on consent. In declining to consent, I attempted to educate Plaintiff's counsel as to why the claimed factual basis of their motion was unsustainable, considering their inclusion of my letter to Congresswoman Luria. Counsel for the Plaintiff refused

---

[1] Barbossa is a character in the Disney movie *Pirates of the Caribbean.*
[2] A copy of this communication is annexed hereto at Exhibit "A."
[3] A copy of this communication is annexed hereto at Exhibit "B."

4

to discuss this glaring issue and refused efforts to resolve the matter without involving the Court.[4] Oddly, despite my informing him that this was going to be a contested issue in litigating this motion, Plaintiff chose not to address this issue in their moving papers. That is because there is no plausible explanation how Plaintiff could be unaware that ASN M&RA authorized the investigation, when their own submissions to the Court include this information from my letter to Congresswoman Luria.

13.     Plaintiff's refusal to engage in any discussions about discovery or prior misrepresentations to the Court are indicative of Plaintiff's true intentions with the instant case. This case was never filed with the intent of being litigated, but rather as a publicity stunt to falsely paint everyone as racists. Although the exhibits demonstrate that LT Shaw is currently being represented by at least six different attorneys at four different law firms, LT Shaw appeared in court with one attorney and a publicist. The next day, Mr. Montalvo posted a copy of the Navy Times article about these proceeding on his firm website and social media accounts, promoted with the hashtag #racism, among others.[5] As this article explicitly discusses ASN M&RA's authorization to conduct an investigation, and Mr. Montalvo's response to that authorization, it is not credible to believe that counsel for the Plaintiff would have promoted and posted this article without actually reading it.

14.     Plaintiff has told many different stories of why he should not be held accountable for his wrongdoing. He apparently told Congresswoman Luria that it was because of his reports on "bottle bets" by the Landing Signals Officers ("LSOs"), rather than racism.[6] However, all of

---

[4] A copy of this communication is annexed hereto at Exhibit "C."
[5] A copy counsel's posts and the article itself is annexed hereto at Exhibit "D."
[6] A copy of a letter from Congresswoman Luria to the Secretary of the Navy is annexed hereto at Exhibit "E." In this letter, Rep. Luria advocates for LT Shaw to be promoted and returned to flight status because of his "bottle bets" complaint but makes no mention of racism. Parenthetically, my clients, who are also constituents of Rep. Luria, would have preferred if her staff took the opportunity to hear the other side of the story before demanding that a dangerous officer like LT Shaw be returned to flight status.

LT Shaw's claims of retaliation are significantly undermined by the documentary proof that Navy leadership had been trying to curtail his illegal and dangerous activities long before any of his protected communications. In fact, the LSOs had put out a fleet-wide advisory about his dangerous activities in September 2016, before he even reported to VFA-106.[7] The incident discussed in the newsletter involved a junior aviator from LT Shaw's former squadron who was nearly killed when he attempted to land using an unapproved and dangerous method taught to him by LT Shaw.

15.   The case at bar is a completely frivolous attempt by LT Shaw to avoid accountability for his misconduct, while attempting to publicly smear me and several senior naval officers. The requested stay will serve no legitimate purpose and is only being sought to allow LT Shaw to avoid discovery, where his false claims will be quickly eviscerated.

WHEREFORE, Defendant respectfully requests that this Court deny Plaintiff's motion for a stay, together with such other and further relief as the Court deems appropriate.

Dated:  March 9, 2020
        Falls Church, Virginia

Respectfully submitted,

Timothy C. Parlatore, Esq.

---

[7] A copy of the September 2016 LSO Newsletter is annexed hereto at Exhibit "F." On page 12, the newsletter states that "a [junior officer, LT Shaw] wrote a manifesto and spread it around the air wing about velocity vector gouge and ball flying. CAG paddles [the airwing LSO] crushed it but not before it led to an almost ramp strike."