**NAVY EQUAL OPPORTUNITY (EO) AND SEXUAL HARASSMENT REPORT**
**NAVPERS 5354/2 (Rev. 08-2017)**          Supporting Directives OPNAVINST 5354.1G and OPNAVINST 5300.13

**PART III: FORMAL REPORT PROCESSING/COMMAND ACTIONS**

**INTERIM FEEDBACK/ASSISTANCE TO COMPLAINANT.** Take particular care to avoid re-victimizing complainants (and witnesses). Keep the complainant and alleged offender apprised of the status of the investigation (including any deadline extensions). Provide supplemental counseling/ support assistance/referral as warranted. Ensure that all involved are aware of the retaliation plan of action and know that retaliation against the complainant will not be tolerated. (Recommend keeping a record of such feedback/assistance. Attach record to the report form.)
**RESOLUTION TIME STANDARDS/REPORTING.** Resolution of case should be completed no later than 20 days from investigation commencement. Resolution includes: Completion of investigation, determination of validity of report, adjudication at non-judicial punishment or courts-martial, initiation of other appropriate action, notification to accused, and notification of complainant and submission of a close-out. If time standards cannot be met, continuation messages every 14 days through case resolution is mandatory for reports of sexual harassment. Explain the reason(s) for delay. Send all messages UNCLASSIFIED.
**DOCUMENT COMMAND ACTION.** The complainant's command is responsible for ensuring Parts I and II are complete and providing this to the alleged offender's Commander, Commanding Officer or Officer-in-charge (hereafter referred to as Commander) (as applicable). Upon completion of Part III, with the exception of continuation(s) and close-out Date Time Groups, Parts I through III are required to be forwarded within 72 hours (3 days) and Parts IV and V upon final disposition of report, via appropriate Echelon II CCS, CMEO program manager, or EO program manager, to Mill_NavyEOAdvice@Navy.mil via an e-mail that is not encrypted. Command records should permit reviewers to clearly ascertain/assess decisions reached. Make appropriate entries in individual personnel records, if applicable. Make any statistical reports required by the chain of command. Retain this completed form and investigation onboard at least two years, at which time the entire command investigation shall be sent to the Office of the Judge Advocate General (Code 15) Investigations Branch. Provide a copy of completed form to complainant as authorized under Freedom of Information Act (FOIA) and governing directives.

**1. Command Climate Specialist (CCS) Consultation:** OPNAVINST 5300.XX and OPNAVINST 5354.1G requires consultation of a CCS in all informal, formal, and anonymous sexual harassment, unlawful discrimination and harassment reports.

(a) Command Climate Specialist Name:          (b) Rank/Rate:          (c) Command Name/UIC:

(d) Command Climate Specialist Phone Number:          (e) Command Climate Specialist E-mail Address:

I understand that I must provide all appropriate voice reports and required message reports (e.g., OPREP) per OPNAVINST F3100.6 series within established time lines. I further understand that I must initiate an appropriate investigation or ensure that one is being conducted (e.g., by NCIS) within three calendar days (72 hours) and notify complainant the same day of investigation commencement. I must ensure a retaliation plan is in place and acknowledged by all involved parties. I also understand that I am required to consult a CCS prior to making a determination of this report, as well as, consult with a judge advocate for all allegations of sexual harassment and for legal sufficiency review.

Transfer of Report: When the complainant and alleged offender are assigned to different commands or services (when all parties are not assigned to a joint military environment), the report shall be processed by the command or service of the alleged offender.

**2. Commander Directing Investigation:**

| (a) Name: | (b) Rank/Rate: CAPT | (c) Command Name/UIC: CSFWL/Ø9103 |
|---|---|---|
| (d) Contact Information: | (e) Signature: | (f) Date: 6 APR 18 |

**3. Date Time Group (DTG) of OPREP Messages** (Attach a copy of all messages to this form.)

| (a) Initial DTG: 051915Z APR18 | (b) Close-Out DTG: |
|---|---|

**4. Investigating Officer.**

| (a) Name and Contact Information: CAPT | (b) Date Convened: |
|---|---|

**5. Complainant Acknowledgment/Signature.** (By signing, Complainant affirms the above has been read and is understood.)

| (a) Name: JASON ASHLEY | (b) Signature: | (c) Date: 18 APR 18 |
|---|---|---|

**6. Alleged Offender Acknowledgment/Signature.** (By signing, Alleged Offender affirms the above has been read and is understood.)

(a) DoD ID Number:

| (b) Name: | (c) Signature: | (d) Date: 26 APR 18 |
|---|---|---|

FOR OFFICIAL USE ONLY
PRIVACY SENSITIVE                    [ Print Form ]

**NAVY EQUAL OPPORTUNITY (EO) AND SEXUAL HARASSMENT REPORT**
**NAVPERS 5354/2 (Rev. 08-2017)**          Supporting Directives OPNAVINST 5354.1G and OPNAVINST 5300.13

| PART IV. FORMAL NOTIFICATION REVIEW |
|---|

1. Notification of Action Taken to Resolve Report. *(To concur within 20 calendar days of receipt of report.)*

| (a) Report was completed on: | (b) Report was found to be: |
|---|---|
| 13 JUL 18 | Unsubstantiated (No Corroboration) |

(c) Based on the following findings:

Refer to COMNAVAIRLANT ltr 5354 Ser N01L/400 of 26 Dec 19 (Subj: Determination of Equal Opportunity Complaint Against ██████████████████, USNR). A copy of the letter with third party privacy information redacted is provided to the complainant and the alleged offender. COMNAVAIRLANT independent determination on the complaint was directed by COMNAVAIRFOR ltr 5354 Ser N00/389 of 9 Sep 19.

2. Right to review by higher authority (via an appeal): I acknowledge notice of my right to submit a statement concerning the investigative findings and command action taken, and to request review of those findings and actions by the Echelon II Commander. Any statement and, or request must be submitted within 7 days of acknowledgment.

| (a) Echelon II Command: | (b) Echelon II CCS/EO Program Manager Contact Information: |
|---|---|
| U.S. FLEET FORCES COMMAND | ████████████████████████ |

3. Complainant Acknowledgment/Signature. *(By signing, Complainant affirms the above has been read and is understood.)*

☑ I intend to submit a statement/appeal.          ☐ I DO NOT intend to submit a statement/appeal.

| (a) Name: | (b) Signature: | (c) Date : | (d) Seven Days: |
|---|---|---|---|
| ASHLEY, JASON A. | ASHLEY.JAS ON.AUSTIN.1 █5467██55 — Digitally signed by ASHLEY.JASON.AUS TIN.1284671155 Date: 2020.01.15 6:18:12 -08'00' | | |

4. Alleged Offender Acknowledgment/Signature. *(By signing, Alleged Offender affirms the above has been read and is understood.)*

☐ I intend to submit a statement/appeal.          ☒ I DO NOT intend to submit a statement/appeal.

| (a) Name: | (b) Signature: | (c) Date : | (d) Seven Days: |
|---|---|---|---|
| ██████████ | ██████████ | 3 JAN 20 | 6 JAN 20 |

| PART V. FORMAL APPEAL |
|---|

1. First Appeal Results:

☐ CONCUR          ☐ DO NOT CONCUR

| (a) Name of Echelon II Reviewing Authority *(Commander/Designee):* | (b) Rank/Rate: | (c) Command Name/UIC: |
|---|---|---|
| | | |

| (d) Contact Information: | (e) Signature: | (f) Date: |
|---|---|---|
| | | |

2. Complainant Acknowledgment/Signature. *(By signing, Complainant affirms the above has been read and is understood.)*

☐ I intend to submit a statement/appeal.          ☐ I DO NOT intend to submit a statement/appeal.

| (a) Name: | (b) Signature: | (c) Date : | (d) Seven Days: |
|---|---|---|---|
| ASHLEY, JASON A. | | | |

3. Alleged Offender Acknowledgment/Signature. *(By signing, Alleged Offender affirms the above has been read and is understood.)*

☐ I intend to submit a statement/appeal.          ☐ I DO NOT intend to submit a statement/appeal.

| (a) Name: | (b) Signature: | (c) Date : | (d) Seven Days: |
|---|---|---|---|
| ██████████ | | | |

**Plaintiff's Exhibit 15**          **2 of 18**

**NAVY EQUAL OPPORTUNITY (EO) AND SEXUAL HARASSMENT REPORT**
**NAVPERS 5354/2 (Rev. 08-2017)**          Supporting Directives OPNAVINST 5354.1G and OPNAVINST 5300.13

**PART V. FORMAL APPEAL (continued)**

4. SECNAV - Final Appeal Results *(action that been taken to resolve report by reviewing authority):*

☐ CONCUR                              ☐ DO NOT CONCUR

| (a) Name of SECNAV Reviewing Authority: | (b) Rank/Rate: | (c) Command Name/UIC. |
|---|---|---|
| (d) Contact Information: | (e) Signature: | (f) Date: |

5. Complainant Acknowledgment/Signature. *(By signing, Complainant affirms the above has been read and is understood.)*

| (a) Name: | (b) Signature: | (c) Date: |
|---|---|---|

6. Alleged Offender Acknowledgment/Signature. *(By signing, Alleged Offender affirms the above has been read and is understood.)*

| (a) Name: | (b) Signature: | (c) Date: |
|---|---|---|

**PART VI. FORMAL REPORT FOLLOW-UP**

1. Complainant Follow-Up Survey  *(Commanders shall conduct a follow-up debrief with the Complainant 30-45 days after the final action.  Command follow-up will include a determination of Complainant satisfaction with the effectiveness of corrective action, timeliness, present command climate, and a review to ensure retaliation did not occur.):*

(a) Were you subjected to any form of retaliation because of your report?

(b) Rate your level of satisfaction with the processing of your report.

(c) Rate your level of satisfaction with the resolution of your report.

(d) What could have prevented this incident?

2. Complainant Follow-Up Comments:

3. Complainant Acknowledgment/Signature. *(By signing, Complainant affirms the above has been read and is understood.)*

| (a) Name: | (b) Signature: | (c) Date: |
|---|---|---|

4. Commander Follow-Up Notes.  *(Indicate dates/nature of any actions prompted by Complainant debrief.  Attach additional sheets as necessary.)*

5. Commander Acknowledgment/Signature. *(By signing, Commanding Officer affirms the above is correct and report process is complete.)*

| (a) Name: | (b) Signature: | (c) Date: |
|---|---|---|

**Plaintiff's Exhibit 15**                              **3 of 18**



**DEPARTMENT OF THE NAVY**
COMMANDER NAVAL AIR FORCE ATLANTIC
1562 MITSCHER AVENUE SUITE 300
NORFOLK VA 23551-2427

5354
Ser N01L/ 398
26 Dec 19

From: Commander, Naval Air Force Atlantic
To:    File

Subj: DETERMINATION OF EQUAL OPPORTUNITY COMPLAINT AGAINST LCDR JOHN
P. LYLES, USNR

Ref:   (a) COMNAVAIRFOR ltr 5354 Ser N00/389 of 9 Sep 19
       (b) NAVPERS 5354/2 of 6 Dec 17 (w/Capt Ashley Memorandum for the Record to
           USFFC IG of 21 Nov 17)
       (c) **(b) (6)**               , USN, ltr of 16 Aug 18 (w/encls)
       (d) COMNAVAIRFOR ltr 5354 Ser N00/097 of 13 May 19
       (e) OPNAVINST 5354.1G

1. In accordance with reference (a), I have reviewed the equal opportunity (EO) complaint filed by Capt
Jason A. Ashley, USMC, against LCDR John P. Lyles, USNR, which is contained in reference (b)[1].
Reference (c) is the command investigation that inquired into various allegations of racial discrimination
at Strike Fighter Squadron ONE ZERO SIX (VFA-106), and reference (d) is the final endorsement on the
investigation.

2. In reference (b), Capt Ashley makes the following specific allegations against LCDR Lyles:

   a. LCDR Lyles used an eggplant emoji to refer to Capt Ashley in a "Pure Bloods" group chat on
WhatsApp. Capt Ashley asserts that eggplant is a racial slur used as a substitute for the word "nigger."
He further asserted that the instructors in the group chat were aware eggplant is a racial slur "because
there is no other reason to use the term eggplant, and an eggplant is purple/dark, which is obviously
describing my skin color."

   b. LCDR Lyles used a black hand emoji to describe **(b) (6)**               , USN, in the WhatsApp
group chat. Capt Ashley asserts that "[u]sing a black hand emoji as a white instructor is similar to using
black face, which is a completely offensive practice that was stopped long ago."

3. After a thorough review of references (b) through (d) and consultation with a judge advocate, I find
that the evidence does not substantiate a finding of race discrimination as defined by reference (e). The
complaint is hereby unsubstantiated. This determination is made based on the following findings:

   a. Reference (d) determined that Capt Ashley's FFPB results were not predicated upon race
discrimination.

---

[1] There were two NAVPERS 5354/2s completed regarding Capt Ashley's complaint against LCDR Lyles, though
both are the same in terms of the nature of the report contained in Part II of the form. One of the 5354/2 forms was
received by **(b) (6)**          , COMNAVAIRLANT Command Climate Specialist, on 13 March
2018. The other 5354/2 form was received by **(b) (6)**          , USN, VFA-106 Command Managed Equal
Opportunity Advisor, on 3 April 2018. The form received by **(b) (6)**          was not signed by LCDR
Lyles in Part III, whereas the form received by **(b) (6)**          was signed by LCDR Lyles in Part III. For ease of
reference, both versions of the form are referred to as reference (b).

Subj:    DETERMINATION OF EQUAL OPPORTUNITY COMPLAINT AGAINST LCDR JOHN
         P. LYLES, USNR

b.  Appendix C to reference (e) defines race discrimination as "treating someone unfavorably because he or she is of a certain race or because of personal characteristics associated with race (such as hair texture, skin color, or certain facial features)."

c.  Appendix C to reference (e) further defines the reasonable person standard as "an objective test used to determine if behavior meets the legal test for harassment or unlawful discrimination. The test requires the hypothetical exposure of a reasonable person to the same set of facts and circumstances. If the behavior would have been offensive to a reasonable person, then the test is met. The reasonable person standard considers the complainant's perspective and does not rely upon stereotyped notions of acceptable behavior within that particular work environment."

d.  The "Pure Bloods" chat consisted of VFA-106 instructor pilots (IPs) who were U.S. Naval Academy graduates, and the chat group name was not race based. Reference (c), finding of fact (FF) 34 pertains.

e.  According to the website Urban Dictionary, the eggplant emoji is used as a substitute for the male penis. LCDR Lyles' use of the emoji was intended to convey a penis. Reference (c), findings of fact (FFs) 42 and 118 pertain.

f.  In the "Pure Bloods" chat that took place on 11 September 2017, LCDR Lyles used the eggplant emoji to depict a penis, combined with a popping champagne bottle emoji to describe masturbation (i.e., "you beat me"). Reference (c), FF 46 and enclosure (12) pertain.

g.  LCDR Lyles used a black hand emoji to confirm that the other former replacement pilot involved in the EO complaints against VFA-106 was also Black. Reference (c), FFs 48-49 pertain.

h.  LCDR Lyles' use of the eggplant emoji was found to be racially discriminatory and offensive by Capt Ashley. Reference (c), FF 119 pertains.

i.  Based on the evidence and the full context of the WhatsApp chat, I find that the eggplant emoji coupled with a popping champagne bottle represented a crude joke and reference to male masturbation and was not race based or intended as a racial slur. The IPs in the chat were discussing Capt Ashley's performance as a student aviator. LCDR Lyles used the black hand emoji as a matter of description in response to an IP inquiring whether they were talking about a "White dude." Though the use of the eggplant and black hand emojis were inappropriate, there is no credible evidence that LCDR Lyles or any of the IPs on the chat had actual racial animus.

j.  Reference (d) opined that "regardless of actual intent, a reasonable person could conclude the eggplant emoji used in the 'Pure Bloods' group chat was racially offensive and discriminatory." I concur but I also find that LCDR Lyles' use of the eggplant emoji did not amount to race discrimination within the meaning of reference (e), which requires treating someone unfavorably based on race. Capt Ashley articulates no unfavorable treatment stemming from the WhatsApp chat, and given the chronology of events, there is no evidence of unfair treatment as a result of the chat or any time thereafter. Capt Ashley's FFPB occurred on 31 March 2016 (LCDR Lyles was not a member). Capt Ashley checked out of VFA-106 on 1 June 2016. The WhatsApp chat occurred on 11 September 2017. In the absence of some unfavorable treatment, there can be no finding of race discrimination.

k.  Reference (d) did not make any parallel opinions regarding LCDR Lyles' use of the black hand emoji. In his complaint, Capt Ashley compared this to blackface. Dictionary.com defines digital blackface as "white people using GIFs, memes, emoji, and other images of black people to express various emotional reactions online." While not digital blackface based on this definition, LCDR Lyles' use of a black hand emoji to identify another Black former replacement pilot was inappropriate. As with the use of the eggplant emoji, however, LCDR Lyles' use of the black hand emoji in this context did not

**Plaintiff's Exhibit 15**                                                          **5 of 18**

Subj: DETERMINATION OF EQUAL OPPORTUNITY COMPLAINT AGAINST LCDR JOHN
P. LYLES, USNR

constitute race discrimination within the meaning of reference (e). Capt Ashley articulates no
unfavorable treatment stemming from the WhatsApp chat or any time thereafter.

4. The investigation also concluded that members of the WhatsApp group made unprofessional and
inappropriate statements and used unprofessional and inappropriate emojis in the group chat, and I concur.
The use of the eggplant and black hand emojis by LCDR Lyles was sophomoric, in poor taste, and
demonstrated extremely poor judgment.

5. **(b) (6)**

6. By copy of this letter, Commander, Naval Air Force Atlantic (N01L) shall cause the appropriate
entries to be made on reference (b), and ensure that the parties are debriefed on this determination and
informed of their right to request higher level review by Commander, U.S. Fleet Forces Command, in
accordance with reference (e).

7. My point of contact for this matter is LCDR Barbara Colberg, JAGC, USN. She can be reached at
(757) 836-9920 or barbara.j.colberg@navy.mil.

R. J. KELLEY

Copy to:
LCDR Lyles
Capt Ashley



**DEPARTMENT OF THE NAVY**
COMMANDER NAVAL AIR FORCE ATLANTIC
1562 MITSCHER AVENUE SUITE 300
NORFOLK VA 23551-2427

5354
Ser N01L/ 399
26 Dec 19

From: Commander, Naval Air Force Atlantic
To:   File

Subj: DETERMINATION OF EQUAL OPPORTUNITY COMPLAINT AGAINST LCDR RYAN
E. KIMMEL, USNR

Ref: (a) COMNAVAIRFOR ltr 5354 Ser N00/389 of 9 Sep 19
(b) NAVPERS 5354/2 of 6 Dec 17 (w/Capt Ashley Memorandum for the Record to
USFFC IG of 21 Nov 17)
(c) **(b) (6)**                    , USN, ltr of 16 Aug 18 (w/encls)
(d) COMNAVAIRFOR ltr 5354 Ser N00/097 of 13 May 19
(e) OPNAVINST 5354.1G

1. In accordance with reference (a), I have reviewed the equal opportunity (EO) complaint filed by Capt
Jason A. Ashley, USMC, against LCDR Ryan E. Kimmel, USNR, which is contained in reference (b).
Reference (c) is the command investigation that inquired into various allegations of racial discrimination
at Strike Fighter Squadron ONE ZERO SIX (VFA-106), and reference (d) is the final endorsement on the
investigation.

2. In reference (b), Capt Ashley alleges that LCDR Kimmel engaged in race discrimination when he used
an eggplant emoji to refer to Capt Ashley in a "Pure Bloods" group chat on WhatsApp. Capt Ashley
asserts that eggplant is a racial slur used as a substitute for the word "nigger." He further asserted that the
instructors in the group chat were aware eggplant is a racial slur "because there is no other reason to use
the term eggplant, and an eggplant is purple/dark, which is obviously describing my skin color."

3. After a thorough review of references (b) through (d) and consultation with a judge advocate, I find
that the evidence does not substantiate a finding of race discrimination as defined by reference (e). The
complaint is hereby unsubstantiated. This determination is made based on the following findings:

a. Reference (d) determined that Capt Ashley's FFPB results were not predicated upon race
discrimination.

b. Appendix C to reference (e) defines race discrimination as "treating someone unfavorably because
he or she is of a certain race or because of personal characteristics associated with race (such as hair
texture, skin color, or certain facial features)."

c. Appendix C to reference (e) further defines the reasonable person standard as "an objective test
used to determine if behavior meets the legal test for harassment or unlawful discrimination. The test
requires the hypothetical exposure of a reasonable person to the same set of facts and circumstances. If
the behavior would have been offensive to a reasonable person, then the test is met. The reasonable
person standard considers the complainant's perspective and does not rely upon stereotyped notions of
acceptable behavior within that particular work environment."

d. The "Pure Bloods" chat consisted of VFA-106 IPs who were U.S. Naval Academy graduates, and
the chat group name was not race based. Reference (c), finding of fact (34) pertains.

**Plaintiff's Exhibit 15**                **7 of 18**

Subj:  DETERMINATION OF EQUAL OPPORTUNITY COMPLAINT AGAINST LCDR RYAN
E. KIMMEL, USNR

e. According to the website Urban Dictionary, the eggplant emoji is used as a substitute for the male penis. LCDR Kimmel's use of the emoji was intended to convey a penis. Reference (c), findings of fact (FFs) 42 and 119 pertain.

f. In the "Pure Bloods" chat that took place on 11 September 2017, LCDR Kimmel used the eggplant emoji to depict a penis, combined with a popping champagne bottle emoji to describe masturbation (i.e., "you beat me"). Reference (c), FF 46 and enclosure (12) pertain.

g. LCDR Kimmel's use of the eggplant emoji was found to be racially discriminatory and offensive by Capt Ashley. Reference (c), FF 118 pertains.

h. Based on the evidence and the full context of the WhatsApp chat, I find that the eggplant emoji coupled with a popping champagne bottle represented a crude joke and reference to male masturbation and was not race based or intended as a racial slur. The IPs in the chat were discussing Capt Ashley's performance as a student aviator. One IP used a black hand emoji as a matter of description in response to an IP inquiring whether they were talking about a "White dude." Though the use of the eggplant and black hand emojis were inappropriate, there is no credible evidence that LCDR Kimmel or any of the IPs on the chat had actual racial animus.

i. Reference (d) opined that "regardless of actual intent, a reasonable person could conclude the eggplant emoji used in the 'Pure Bloods' group chat was racially offensive and discriminatory." I concur but I also find that LCDR Kimmel's use of the eggplant emoji did not amount to race discrimination within the meaning of reference (e), which requires treating someone unfavorably based on race. Capt Ashley articulates no unfair treatment stemming from the WhatsApp chat or LCDR Kimmel's comment, and given the chronology of events, there is no evidence of unfair treatment as a result of the chat or any time thereafter. Capt Ashley's FFPB occurred on 31 March 2016 (LCDR Kimmel was not a member). Capt Ashley checked out of VFA-106 on 1 June 2016. The WhatsApp chat occurred on 11 September 2017. In the absence of some unfavorable treatment, there can be no finding of race discrimination.

4. The investigation also concluded that members of the WhatsApp group made unprofessional and inappropriate statements and used unprofessional and inappropriate emojis in the group chat, and I concur. The use of the eggplant emoji by LCDR Kimmel was sophomoric and demonstrated extremely poor judgment.

5. (b) (6)

6. By copy of this letter, Commander, Naval Air Force Atlantic (N01L) shall cause the appropriate entries to be made on reference (b), and ensure that the parties are debriefed on this determination and informed of their right to request higher level review by Commander, U.S. Fleet Forces Command, in accordance with reference (e).

7. My point of contact for this matter is LCDR Barbara Colberg, JAGC, USN. She can be reached at (757) 836-9920 or barbara.j.colberg@navy.mil.

R. J. KELLEY

Subj:   DETERMINATION OF EQUAL OPPORTUNITY COMPLAINT AGAINST LCDR RYAN
        E. KIMMEL, USNR

Copy to:
LCDR Kimmel
Capt Ashley



**DEPARTMENT OF THE NAVY**
COMMANDER NAVAL AIR FORCE ATLANTIC
1562 MITSCHER AVENUE SUITE 300
NORFOLK VA 23551-2427

5354
Ser N01L/ 400
26 Dec 19

From: Commander, Naval Air Force Atlantic
To:   File

Subj: DETERMINATION OF EQUAL OPPORTUNITY COMPLAINT AGAINST CAPT JOHN P. GREENE, USN

Ref:  (a) COMNAVAIRFOR ltr 5354 Ser N00/389 of 9 Sep 19
      (b) NAVPERS 5354/2 of 6 Dec 17 (w/Capt Ashley Memorandum for the Record to USFFC IG of 21 Nov 17)
      (c) (b) (6)                , USN, ltr of 16 Aug 18 (w/encls)
      (d) COMNAVAIRFOR ltr 5354 Ser N00/097 of 13 May 19
      (e) Capt Ashley Article 1150 Complaint of 1 Mar 17 (w/end)
      (f) OPNAVINST 5354.1G

1. In accordance with reference (a), I have reviewed the equal opportunity (EO) complaint filed by Capt Jason A. Ashley, USMC, against CAPT John P. Greene, USN, which is contained in reference (b). Reference (c) is the command investigation that inquired into various allegations of racial discrimination at Strike Fighter Squadron ONE ZERO SIX (VFA-106), and reference (d) is the final endorsement on the investigation. Reference (e) is a Complaint of Wrongs Under Article 1150, U.S. Navy Regulations, filed by Capt Ashley against CAPT Greene on 1 March 2017.

2. In reference (b), Capt Ashley makes the following specific allegations against CAPT Greene:

   a. CAPT Greene discriminated against Capt Ashley by convening a Field Flight Performance Board (FFPB) "after [Capt Ashley] passed an event, but gave a white student additional help when the white student failed the same event." Capt Ashley asserts that he was held to a higher standard than white students at VFA-106.

   b. When Capt Ashley submitted an Article 1150 complaint against CAPT Greene, CAPT Greene responded that he treats all student pilots differently. Capt Ashley asserts that there is no justification for holding him to a different standard than white students.

   c. CAPT Greene took intentional action to remove Capt Ashley from Category 1 initial F/A-18C/D training after the FFPB submitted its report. Capt Ashley submitted his rebuttal to the FFPB report to CAPT Greene, highlighting what he considered to be substantial inaccuracies in the board's data. Capt Ashley asserts that CAPT Greene added a false ranking of his performance in CAPT Greene's endorsement to the FFPB report. CAPT Greene ranked Capt Ashley 99th out of 100 students, but Capt Ashley asserts that he was ranked 55/100 in SHARP. Capt Ashley asserts that CAPT Greene "had to work hard to create information that justified removing a student pilot ranked 55/100, while allowing other white students ranked lower to stay in training."

   d. Capt Ashley requested Mast in order to ask CAPT Greene to remove the ranking, but CAPT Greene "refused to fix any of the bad information in the report or in his endorsement." Capt Ashley asserts that CAPT Greene said that he had a right to add any information he wanted to his endorsement. Capt Ashley asserts that "the rules made it clear that no information could be added after [he] submitted his rebuttal" and that he had no opportunity to challenge the additional information in CAPT Greene's endorsement.

**Plaintiff's Exhibit 15**                                    **10 of 18**

Subj:   DETERMINATION OF EQUAL OPPORTUNITY COMPLAINT AGAINST CAPT JOHN P.
GREENE, USN

    e.  CAPT Greene convened Capt Ashley's FFPB and chose board members who participated in the
"Pure Bloods" group chat to evaluate Capt Ashley's performance.  Capt Ashley asserts that members of
VFA-106 should not have been on his board because they were "interested parties" but that he was
ignored.  Capt Ashley asserts that CAPT Greene denied him equal opportunity to complete the Category 1
syllabus but allowed white students additional opportunities to learn.

3.  Capt Ashley's formal EO complaint also references his 21 November 2017 Memorandum for the
Record to the U.S. Fleet Forces Command Inspector General.  The 21 November 2017 Memorandum
contains the same substantive allegations against CAPT Greene that are on the face of the NAVPERS
5354/2 form and makes the following additional allegations:

    a.  CAPT Greene "changed the reason" for convening the FFPB on his endorsement after Capt Ashley
demonstrated that the 99/100 ranking was false.

    b.  CAPT Greene routed the FFPB through an incorrect endorsing chain.

4.  After a thorough review of references (b) through (e) and consultation with a judge advocate, I find
that the evidence does not substantiate a finding of race discrimination as defined by reference (f).  The
complaint is hereby unsubstantiated.  This determination is made based on the following findings:

    a.  Reference (d) determined that Capt Ashley's FFPB results were not predicated upon racial
discrimination.

    b.  Appendix C to reference (f) defines race discrimination as "treating someone unfavorably because
he or she is of a certain race or because of personal characteristics associated with race (such as hair
texture, skin color, or certain facial features)."

    c.  Appendix C to reference (f) defines the reasonable person standard as "an objective test to
determine if behavior meets the legal test for harassment or unlawful discrimination.  The test requires a
hypothetical exposure of a reasonable person to the same set of facts and circumstances.  If the behavior
would have been offensive to a reasonable person, then the test is met.  The reasonable person standard
considers the complainant's perspective and does not rely upon stereotyped notions of acceptable
behavior within that particular work environment."

    d.  The "Pure Bloods" chat consisted of VFA-106 instructor pilots who were U.S. Naval Academy
graduates, and the chat group name was not race based.  Further, CAPT Greene was not aware that
members of the FFPB were participants in the "Pure Bloods" group chat until Capt Ashley filed his EO
complaint, which was 21 months after the conclusion of the FFPB.  Enclosure (c), Finding of Fact (FF) 34
and enclosure (19) pertain.

    e.  Marine Corps Order 1000.6 states that "An FFPB is an informal administrative board…" and "legal
rules of evidence do not apply."  FFPBs "may consider and include in the record any matter of reasonable
authenticity to the case."  Reference (c), FF 7 pertains.

    f.  Capt Ashley's transition syllabus grade cards had standards that were adjusted from the time of
completion of flights to the time that the FFPB reviewed the grades.  Capt Ashley's SHARP rankings
were: a) Transition Phase (70/100); b) Strike Phase (28/100); c) Overall (55/100).  CAPT Greene's FFPB
endorsement lists Capt Ashley's rankings as:  a) Transition Phase (77/100); initial attempt at Strike Phase
(84/100); c) BFM Phase (83/100); FWT Phase (100/100); e) Overall (99/100).  The rank adjustment was
the result of a comparative analysis of all flights for completion and context (to include 14 re-fly flights
and 21 simulator events), and it was not race based.  Reference (c), FFs 14-19 and enclosures (18)-(19)
pertain.

**Plaintiff's Exhibit 15**                **11 of 18**

Subj:   DETERMINATION OF EQUAL OPPORTUNITY COMPLAINT AGAINST CAPT JOHN P.
          GREENE, USN

g.  Capt Ashley's FFPB report was not routed in accordance with COMNAVAIRFORINST 5420.1F, but was routed pursuant to guidance from Headquarters Marine Corps, Marine Aviation, ASM-52 (Support Programs/Boards).  Reference (c), FFs 31-33 pertain.

h.  In CAPT Greene's endorsement to reference (c), he concurred with Capt Ashley's assertion that CAPT Greene did not treat him the same as other VFA-106 aviators.  However, CAPT Greene's statement, in context, read: "No two replacement aviators are ever treated the same during their time at the FRS.  Each possesses unique strengths and weaknesses and the VFA-106 staff carefully tailors its training efforts to address these differences.  In situations where replacement aviators struggle, their performance is evaluated carefully on a case-by-case basis to determine the best course of action."  Under the reasonable person standard, I find that CAPT Greene's statement is best interpreted as a comment about VFA-106's individualistic approach to training, not as a statement that Capt Ashley was treated differently than white RPs on the basis of his race.

5.  I further find that CAPT Greene's actions were well within the scope of his duties and responsibilities as the VFA-106 Commanding Officer.  In reference (c), the investigating officer opined, and I concur, that administrative and procedural errors occurred in the conduct and routing of Capt Ashley's FFPB.  However, I find that any errors that are attributable to CAPT Greene are not the result of race discrimination.

6.  By copy of this letter, Commander, Naval Air Force Atlantic (N01L) shall cause the appropriate entries to be made on reference (b), and ensure that the parties are debriefed on this determination and informed of their right to request higher level review by Commander, U.S. Fleet Forces Command, in accordance with reference (f).

7.  My point of contact for this matter is LCDR Barbara Colberg, JAGC, USN.  She can be reached at (757) 836-9920 or barbara.j.colberg@navy.mil.

R. J. KELLEY

Copy to:
CAPT Greene
Capt Ashley

**Plaintiff's Exhibit 15**                                                      **12 of 18**



**DEPARTMENT OF THE NAVY**
COMMANDER NAVAL AIR FORCE ATLANTIC
1562 MITSCHER AVENUE SUITE 300
NORFOLK VA 23551-2427

5354
Ser N01L/ 401
26 Dec 19

From: Commander, Naval Air Force Atlantic
To: File

Subj: DETERMINATION OF EQUAL OPPORTUNITY COMPLAINT AGAINST LCDR
ADAM C. KYLE, USNR

Ref: (a) COMNAVAIRFOR ltr 5354 Ser N00/389 of 9 Sep 19
(b) NAVPERS 5354/2 of 6 Dec 17 (w/Capt Ashley Memorandum for the Record to
USFFC IG of 21 Nov 17)
(c) (b) (6)                          , USN, ltr of 16 Aug 18 (w/encls)
(d) COMNAVAIRFOR ltr 5354 Ser N00/097 of 13 May 19
(e) Suspect's Acknowledgement/Waiver of Rights and Written Statement ICO LCDR
Adam Kyle, USN, ltr of 16 Dec 19
(f) OPNAVINST 5354.1G

1. In accordance with reference (a), I have reviewed the equal opportunity (EO) complaint filed by Capt
Jason A. Ashley, USMC, against LCDR Adam C. Kyle, USNR, which is contained in reference (b).
Reference (c) is the command investigation that inquired into various allegations of racial discrimination
at Strike Fighter Squadron ONE ZERO SIX (VFA-106), and reference (d) is the final endorsement on the
investigation.

2. LCDR Kyle served as a Member of Capt Ashley's Field Flight Performance Board (FFPB). The
FFPB met on 31 March 2016 and ultimately recommended that Capt Ashley be removed from F/A-18
Category 1 Replacement Pilot (RP) training, but that he be allowed to transition to another aviation
platform.

3. In reference (b), Capt Ashley makes the following specific allegations against LCDR Kyle:

a. LCDR Kyle discriminated against Capt Ashley by participating in a "Pure Bloods" group chat on
WhatsApp. Capt Ashley asserted that another VFA-106 Instructor Pilot (IP) used an eggplant emoji in
reference to Capt Ashley, and that eggplant is a racial slur used as a substitute for the word "nigger."
Capt Ashley asserted that the IPs were aware that eggplant is a racial slur, and that LCDR Kyle did not
stop or report the racist conversation.

b. LCDR Kyle was a member of Capt Ashley's FFPB. Based on the WhatsApp chat, Capt Ashley
asserts that his FFPB was not free from social and racial bias. Capt Ashley asserts that it is clear from the
WhatsApp chat that it was common knowledge among the instructors that the eggplant emoji referred to
Capt Ashley.

c. The Senior Member of the FFPB, also a "Pure Bloods" chat member, stated in the chat: "Frankly,
we did his ass (and the community's) a favor." Capt Ashley asserts that the "we" in the Senior Member's
comment refers to the FFPB members, including LCDR Kyle.

d. LCDR Kyle did not say anything in response to the eggplant emoji, nor when another IP used a
black hand emoji in reference to another former black student at VFA-106. LCDR Kyle also did not say
anything in response to the Senior Member's statement, but did comment on a picture of a t-shirt that
mocked a situation Capt Ashley had early in training.

**Plaintiff's Exhibit 15**      **13 of 18**

Subj:   DETERMINATION OF EQUAL OPPORTUNITY COMPLAINT AGAINST LCDR
      ADAM C. KYLE, USNR

   e.  Capt Ashley asserts that LCDR Kyle was aware that Capt Ashley "was referred to as an eggplant/nigger and went along with the racist conversation." Capt Ashley asserts that the contents of the WhatsApp conversation demonstrate that social and racial bias among the VFA-106 officers precluded a fair and neutral evaluation of his performance.

4.  Capt Ashley's formal EO complaint also references his 21 November 2017 Memorandum for the Record to the U.S. Fleet Forces Command Inspector General. The 21 November 2017 Memorandum contains the same substantive allegations against LCDR Kyle that are on the face of the NAVPERS 5354/2 form.

5.  LCDR Kyle was not interviewed as part of the original investigation in reference (c). In order to ensure LCDR Kyle was afforded full due process, he was advised of his rights under the Uniform Code of Military Justice Article 31(b) on 16 December 2019, which he waived and submitted a written statement for consideration, reference (e).

6.  After a thorough review of references (b) through (e) and consultation with a judge advocate, I find that the evidence does not substantiate a finding of race discrimination as defined by reference (f). The complaint is hereby unsubstantiated. This determination is made based on the following findings:

   a.  Reference (d) determined that Capt Ashley's FFPB results were not predicated upon race discrimination.

   b.  Appendix C to reference (f) defines race discrimination as "treating someone unfavorably because he or she is of a certain race or because of personal characteristics associated with race (such as hair texture, skin color, or certain facial features)."

   c.  Appendix C to reference (f) defines the reasonable person standard as "an objective test to determine if behavior meets the legal test for harassment or unlawful discrimination. The test requires a hypothetical exposure of a reasonable person to the same set of facts and circumstances. If the behavior would have been offensive to a reasonable person, then the test is met. The reasonable person standard considers the complainant's perspective and does not rely upon stereotyped notions of acceptable behavior within that particular work environment."

   d.  The "Pure Bloods" chat consisted of VFA-106 IPs who were U.S. Naval Academy graduates, and the chat group name was not race based. Reference (c), finding of fact (FF) 34 pertains.

   e.  LCDR Kyle did not use the eggplant emoji. The IPs who used the eggplant emoji in the "Pure Bloods" chat intended it to represent a penis. LCDR Kyle understood the eggplant emoji to represent a penis, and did not understand it as having possible racial connotation. References (c), FFs 47-48 and reference (e) pertain. Based on the evidence and the full context of the WhatsApp chat, I find that the eggplant emoji coupled with a popping champagne bottle represented a crude joke and reference to male masturbation and was not race based or intended as a racial slur. The IPs were discussing Capt Ashley's performance as a student aviator. One IP used a black hand emoji as a matter of description in response to an IP inquiring whether they were talking about a "White dude". There is no credible evidence that LCDR Kyle or any of the IPs on the chat are racist. Accordingly, Capt Ashley's underlying challenge to the FFPB based on board member and IP racial bias is without merit.

   f.  Reference (d) opined that "regardless of actual intent, a reasonable person could conclude the eggplant emoji used in the 'Pure Bloods' group chat was racially offensive and discriminatory." I concur but I also find that the use of the eggplant emoji did not amount to race discrimination within the meaning of reference (e), which requires treating someone unfavorably based on race. Capt Ashley articulates no unfair treatment stemming from the WhatsApp chat, and given the chronology of events, there is no evidence of unfair treatment as a result of the chat or any time thereafter. Capt Ashley's FFPB occurred

**Plaintiff's Exhibit 15**      **14 of 18**

Subj:   DETERMINATION OF EQUAL OPPORTUNITY COMPLAINT AGAINST LCDR
         ADAM C. KYLE, USNR

on 31 March 2016.  Capt Ashley checked out of VFA-106 on 1 June 2016.  The WhatsApp chat occurred
on 11 September 2017.  There can be no finding of race discrimination even if conduct is racially
offensive and discriminatory in the absence of some unfavorable treatment.

7.  In reference (c), the investigating officer opined, and I concur, that administrative and procedural
errors occurred in the conduct of Capt Ashley's FFPB.  However, I find that any errors that are
attributable to LCDR Kyle are not the result of race discrimination.

8.  By copy of this letter, Commander, Naval Air Force Atlantic (N01L) shall cause the appropriate
entries to be made on reference (b), and ensure that the parties are debriefed on this determination and
informed of their right to request higher level review by Commander, U.S. Fleet Forces Command, in
accordance with reference (f).

9.  My point of contact for this matter is LCDR Barbara Colberg, JAGC, USN.  She can be reached at
(757) 836-9920 or barbara.j.colberg@navy.mil.

                                                          R. J. KELLEY

Copy to:
LCDR Kyle
Capt Ashley

**Plaintiff's Exhibit 15**                                          **15 of 18**



**DEPARTMENT OF THE NAVY**
COMMANDER NAVAL AIR FORCE ATLANTIC
1562 MITSCHER AVENUE SUITE 300
NORFOLK VA 23551-2427

5354
Ser N01L/ 402
26 Dec 19

From: Commander, Naval Air Force Atlantic
To:    File

Subj: DETERMINATION OF EQUAL OPPORTUNITY COMPLAINT AGAINST MAJ ERIK T. SPRAGUE, USMC

Ref:  (a) COMNAVAIRFOR ltr 5354 Ser N00/389 of 9 Sep 19
      (b) NAVPERS 5354/2 of 6 Dec 17 (w/Capt Ashley Memorandum for the Record to
          USFFC IG of 21 Nov 17)
      (c)(b) (6)                    , USN, ltr of 16 Aug 18 (w/encls)
      (d) COMNAVAIRFOR ltr 5354 Ser N00/097 of 13 May 19
      (e) OPNAVINST 5354.1G

1. In accordance with reference (a), I have reviewed the equal opportunity (EO) complaint filed by Capt Jason A. Ashley, USMC, against Maj Erik T. Sprague, USMC, which is contained in reference (b). Reference (c) is the command investigation that inquired into various allegations of racial discrimination at Strike Fighter Squadron ONE ZERO SIX (VFA-106), and reference (d) is the final endorsement on the investigation.

2. Maj Sprague served as the Senior Member of the Field Flight Performance Board (FFPB). The FFPB met on 31 March 2016 and ultimately recommended that Capt Ashley be removed from F/A-18 Category 1 Replacement Pilot (RP) training, but that he be allowed to transition to another aviation platform.

3. In reference (b), Capt Ashley makes the following specific allegations against Maj Sprague:

a. Maj Sprague discriminated against Capt Ashley by participating in a "Pure Bloods" group chat on WhatsApp. Capt Ashley asserted that another VFA-106 Instructor Pilot (IP) used an eggplant emoji in reference to Capt Ashley, and that eggplant is a racial slur used as a substitute for the word "nigger." Capt Ashley asserted that the IPs were aware that eggplant is a racial slur, and that Maj Sprague did not stop or report the racist conversation.

b. Maj Sprague encouraged the racist WhatsApp conversation by sending a text message, in reference to the FFPB recommendation, that stated: "Frankly, we did his ass (and the community's) a favor." Capt Ashley asserts that it is clear from Major Sprague's text message that the FFPB "was never fair and it was never neutral" and that Major Sprague "had clear intent to remove [Capt Ashley] from the beginning of the process."

c. Maj Sprague did not allow Capt Ashley to be present when the FFPB interviewed witnesses, so Capt Ashley was unable to respond to witness comments about his performance.

d. Capt Ashley asserts that the FFPB report created by Maj Sprague contained errors and incorrect data that Capt Ashley rebutted and attempted to have corrected. However, when Capt Ashley pointed out errors, Maj Sprague "continually added subjective (and wrong) information to the report to make [Capt Ashley's] performance look much worse than it was." Capt Ashley asserts that Maj Sprague created a subjective grading system of tally marks to analyze Capt Ashley's performance, and that this demonstrates "completely intentional and bias [*sic*] evalution with the goal to remove [Capt Ashley]."

**Plaintiff's Exhibit 15**

Subj: DETERMINATION OF EQUAL OPPORTUNITY COMPLAINT AGAINST MAJ ERIK T.
SPRAGUE, USMC

e. Maj Sprague told Capt Ashley not to fight the FFPB process because the FFPB had recommended transition to another platform, and that Capt Ashley may not be allowed to fly at all if he fought the process.

f. Capt Ashley asserts that the content of the "Pure Bloods" chat makes it clear that Maj Sprague did not want Capt Ashley, "a black man, to complete the program and move on into the F/A-18 community of mostly white men." Capt Ashley asserts that his FFPB was influenced by social and racial bias because he was referred to as an eggplant. Capt Ashley asserts that the board was purposely composed of officers who "knew [him] as an eggplant . . . and with the intent to remove him from training."

4. Capt Ashley's formal EO complaint also references his 21 November 2017 Memorandum for the Record to the U.S. Fleet Forces Command Inspector General. The 21 November 2017 Memorandum contains the same substantive allegations against Maj Sprague that are on the face of the NAVPERS 5354/2 form and makes the following additional allegations:

a. The FFPB only interviewed white witnesses, with the exception of one minority, who was Capt Ashley's assigned mentor.

b. Maj Sprague instructed Capt Ashley to sign a document that VFA-106 had created as a basis for Capt Ashley's fifth Signal of Difficulty (SOD). When Capt Ashley protested that he did not fly an event to trigger the fifth SOD, Maj Sprague told Capt Ashley that the squadron could fail him for anything.

5. After a thorough review of references (b) through (d) and consultation with a judge advocate, I find that the evidence does not substantiate a finding of race discrimination as defined by reference (e). The complaint is hereby unsubstantiated. This determination is made based on the following findings:

a. Reference (d) determined that Capt Ashley's FFPB results were not predicated upon race discrimination.

b. Appendix C to reference (e) defines race discrimination as "treating someone unfavorably because he or she is of a certain race or because of personal characteristics associated with race (such as hair texture, skin color, or certain facial features)."

c. Appendix C to reference (e) defines the reasonable person standard as "an objective test to determine if behavior meets the legal test for harassment or unlawful discrimination. The test requires a hypothetical exposure of a reasonable person to the same set of facts and circumstances. If the behavior would have been offensive to a reasonable person, then the test is met. The reasonable person standard considers the complainant's perspective and does not rely upon stereotyped notions of acceptable behavior within that particular work environment."

d. Despite Capt Ashley's procedural concerns about his FFPB, the Flight Status Selection Board found that the procedures of the FFPB were in accordance with all relevant orders and directives. Reference (c), enclosure (12) pertains.

e. The "Pure Bloods" chat consisted of VFA-106 IPs who were U.S. Naval Academy graduates, and the chat group name was not race based. Reference (c), finding of fact (FF) 34 pertains.

f. Maj Sprague did not use the eggplant emoji. The IPs who used the eggplant emoji in the "Pure Bloods" chat intended it to represent a penis. Maj Sprague understood the eggplant emoji to represent a penis, and did not understand it as having possible racial connotation. Reference (c), FFs 47-48 and enclosure (12) pertain. Based on the evidence and the full context of the WhatsApp chat, I find that the eggplant emoji coupled with a popping champagne bottle represented a crude joke and reference to male masturbation and was not race based or intended as a racial slur. The IPs were discussing Capt Ashley's

Subj: DETERMINATION OF EQUAL OPPORTUNITY COMPLAINT AGAINST MAJ ERIK T. SPRAGUE, USMC

performance as a student aviator. One IP used a black hand emoji as a matter of description in response to an IP inquiring whether they were talking about a "White dude." Though the use of the eggplant and black hand emojis were inappropriate, there is no credible evidence that Maj Sprague or any of the IPs on the chat had actual racial animus. Accordingly, Capt Ashley's underlying challenge to the FFPB based on board member and IP racial bias is without merit.

   g. Reference (d) opined that "regardless of actual intent, a reasonable person could conclude the eggplant emoji used in the 'Pure Bloods' group chat was racially offensive and discriminatory." I concur but I also find that the use of the eggplant emoji did not amount to race discrimination within the meaning of reference (e), which requires treating someone unfavorably based on race. Capt Ashley articulates no unfair treatment stemming from the WhatsApp chat, and given the chronology of events, there is no evidence of unfair treatment as a result of the chat or any time thereafter. Capt Ashley's FFPB occurred on 31 March 2016. Capt Ashley checked out of VFA-106 on 1 June 2016. The WhatsApp chat occurred on 11 September 2017. In the absence of some unfavorable treatment, there can be no finding of race discrimination.

6. The investigation also concluded that Maj Sprague made inappropriate and unprofessional remarks about Capt Ashley in the "Pure Bloods" group chat, and I concur. Specifically, on 11 September 2017, Maj Sprague sent the following message in the "Pure Blood" WhatsApp chat: "That's the price to pay in this community. You do stupid shit, you get made fun of. Or you kill self/others. His attrition was his small price to pay. Frankly, we did his ass (and the community's) a favor. But his bullshit makes me professionally embarrassed." Reference (c), findings of fact (FFs) 43-44 and enclosure (12) pertain. These remarks about Capt Ashley concerned performance, not race.

7. (b) (6)

8. In reference (c), the investigating officer opined, and I concur, that administrative and procedural errors occurred in the conduct of Capt Ashley's FFPB. However, I find that any errors that are attributable to Maj Sprague are not the result of race discrimination.

9. By copy of this letter, Commander, Naval Air Force Atlantic (N01L) shall cause the appropriate entries to be made on reference (b), and ensure that the parties are debriefed on this determination and informed of their right to request higher level review by Commander, U.S. Fleet Forces Command, in accordance with reference (e).

10. My point of contact for this matter is LCDR Barbara Colberg, JAGC, USN. She can be reached at (757) 836-9920 or barbara.j.colberg@navy.mil.

R. J. KELLEY

Copy to:
Maj Sprague
Capt Ashley