UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
------------------------------------------------------X
STEVEN E. SHAW,
      Plaintiff,

      v.                                  Docket No. 1:20-cv-00410-RDM

THE HONORABLE KENNETH
BRAITHWAITE, *et al.*,
      Defendants.
------------------------------------------------------X

## DEFENDANT TIMOTHY C. PARLATORE'S RESPONSE TO PLAINTIFF'S FIRST REQUESTS FOR ADMISSION

Defendant Timothy Parlatore, *pro se*, hereby submits his answers, pursuant to Fed.R.Civ.P. 36 to Plaintiff's First Request for Admission.

## OBJECTIONS

These requests for admission largely represent an improper attempt by Plaintiff to interfere with the attorney-client relationship between the undersigned and four of my clients, LtCol Michael Nesbitt, USMC(ret.), CDR Brandon Scott, USN(ret.), CDR Martin Weyenberg, USN(ret.) and CDR Bryan Roberts, USN.  This action was initially filed with an emergency motion for a preliminary injunction to prevent the undersigned from continuing to advocate on behalf of his clients.  Although this initial brazen attempt was quickly rejected and withdrawn, Plaintiff's improper actions are continuing through his misuse of discovery devices.

The majority of these requests for admission require the undersigned to provide information that is privileged or confidential, as those terms are defined by the New York Rules of Professional Conduct, as well as parallel provisions in virtually every other jurisdiction in the country.  Specifically, Plaintiff is seeking to probe what counsel is aware of and what documents

**ATTACHMENT C**           **001**

are contained within his file, along with the sources of that information and documents, while counsel is still actively representing his clients in matters directly adverse to Plaintiff.

It is well known that Plaintiff, LT Steven Shaw, has been widely despised within the Naval Aviation community since well before the undersigned became involved in the case.  There are no shortage of Naval Aviators willing to provide information about LT Shaw's serious and dangerous misconduct and the undersigned has received information from his former students, peers, and superior officers, in addition to several documents that were anonymously provided.  However, to use this frivolous defamation case as a vehicle to collaterally engage in a fishing expedition through counsel's file is entirely improper.  It is impossible for the undersigned to fully answer the majority of these requests without violating his ethical responsibilities and therefore objects to doing so, absent a Court Order.

For these reasons, the undersigned is unable to answer any request which seeks the disclosure of privileged or confidential information, regardless of whether the response would be privileged/confidential or not.  For example, if the undersigned answered several requests by stating that the information or documents at issue were obtained through a third-party and then only invoked the privilege as to certain requests, the invocation itself would serve as an admission that the information was obtained from the clients.

For these reasons, Defendant generally objects to these requests.

## RESPONSES TO REQUESTS FOR ADMISSION

### REQUEST 1:

Admit that on or before January 16, 2020 you were retained by Michael Nesbitt, Martin Weyenberg, and Bryan Roberts.

**Answer: Admit that I have been representing the named individuals, in addition to**

**ATTACHMENT C** **002**

CDR Brandon Scott since well before January 16, 2020.

**REQUEST 2:**

Admit that you were retained by Michael Nesbitt, Martin Weyenberg, and Bryan Roberts to defend them against disciplinary action, administrative or criminal, that might arise from the findings or conclusions of the Department of Defense Inspector General (DoD IG) investigation 20180516-051435-CASE-01, and to assist in trying to undo the findings or conclusions of DoD IG investigation 20180516-051435-CASE-01.

**Answer: Object to this request to define the specific scope of the representation, as it requires the disclosure of privileged and/or confidential information.**

**REQUEST 3:**

Admit that a Command Directed Investigation into Lt. Shaw was convened in May of 2018, with Cmdr. Bryan Roberts appointed as its Investigating Officer.

**Answer: Deny personal knowledge of the events described and, to the extent that Plaintiff seeks information that I may have obtained through privileged and confidential communications, I object. However, notwithstanding the foregoing, documents indicate that CDR Roberts was assigned to investigate LT Shaw for his significant and dangerous misconduct.**

**REQUEST 4:**

Admit that the Report of the Command Directed Investigation was authored by Cmdr. Bryan Roberts.

**Answer: Deny personal knowledge of the events described and, to the extent that Plaintiff seeks information that I may have obtained through privileged and confidential communications, I object. However, notwithstanding the foregoing, documents indicate that**

**ATTACHMENT C** **003**

the Report of the CDI, which found significant evidence and serious and dangerous misconduct by LT Shaw was signed by CDR Roberts.

**REQUEST 5:**

Admit that the Report of the Command Directed Investigation was reviewed by Cmdr. Brandon Scott and Lieutenant Colonel (Lt. Col.) Michael Nesbitt.

**Answer: Deny personal knowledge of the events described and, to the extent that Plaintiff seeks information that I may have obtained through privileged and confidential communications, I object.**

**REQUEST 6:**

Admit that in about July of 2018, Cmdr. Bryan Roberts forwarded a draft of his Report of Command Investigation to a civilian email address, civilians, and non-DoD personnel.

**Answer: Deny personal knowledge of the events described and, to the extent that Plaintiff seeks information that I may have obtained through privileged and confidential communications, I object.**

**REQUEST 7:**

Admit that in about July of 2018, when Cmdr. Bryan Roberts forwarded a draft of his Report of Command Investigation to a civilian email address, he wrote in his email: "Let the light at the end of the tunnel be a train. May this attachment be that train."

**Answer: Deny personal knowledge of the events described and, to the extent that Plaintiff seeks information that I may have obtained through privileged and confidential communications, I object.**

**REQUEST 8:**

Admit that in his Report of the Command Directed Investigation, Cmdr. Bryan Roberts

**ATTACHMENT C** **004**

recommended that criminal action be taken against Plaintiff.

**Answer: Denies this claim.  There is a discussion of potential UCMJ charges included in his recommendation, but there is no indication that he was recommending that these charges be brought through court martial, rather than by non-judicial punishment, which is administrative, not criminal.  In fact, the inclusion of a recommendation of administrative separation, pursuant to MILPERSMAN 1611-010 indicates that his recommendation was for the charges to be handled at NJP, not court martial.**

**REQUEST 9:**

Admit that David Ursini was the lead investigator in DoD IG investigation 20180516-051435-CASE-01.

**Answer: Admits.**

**REQUEST 10:**

Admit that DoD IG investigator David Ursini indicated in his report of this investigation concerning DoD IG investigation 20180516-051435-CASE-01 that Lt. Col. Michael Nesbitt, Cmdr. Martin Weyenberg, and Cmdr. Bryan Roberts had retaliated against Lt. Shaw based on their participation in either convening or investigating the Command Directed Investigation.

**Answer: This was Mr. Ursini's finding, however this finding was thoroughly rejected by the chain-of-command, once they had the opportunity to review all of the evidence that Mr. Ursini refused to consider or include in his deeply flawed report.  Moreover, it is important to note that Mr. Ursini did not determine that the findings of the CDI that LT Shaw committed serious and dangerous misconduct were, in any way, incorrect.**

**REQUEST 11:**

Admit that Cmdr. Roberts and/or Lt. Col. Michael Nesbitt and/or Cmdr. Brandon Scott

**ATTACHMENT C**          **005**

gave you a copy of the Report of Command Directed Investigation on or before January 16, 2020.

**Answer: Objects to this request as it seeks disclosure of privileged and/or confidential information.**

**REQUEST 12:**

Admit that you attached a copy of the Report of Command Directed Investigation to your letter sent on about January 24, 2020 to United States Representative Elaine Luria in Washington, DC.

**Answer: Admit**

**REQUEST 13:**

Admit that Lt. Col. Michael Nesbitt testified in the FNAEB of Lt. Shaw, conducted in October 2018.

**Answer: Deny personal knowledge of the events described and, to the extent that Plaintiff seeks information that I may have obtained through privileged and confidential communications, I object.  However, notwithstanding the foregoing, the transcript of his testimony indicates that he did.**

**REQUEST 14:**

Admit that in October 2018 Lt. Col. Michael Nesbitt was asked by the members of the FNAEB to provide a copy of his personal notebook wherein, he testified at the FNAEB, he had recorded details of some prior interactions he had with Lt. Shaw.

**Answer: Deny personal knowledge of the events described and, to the extent that Plaintiff seeks information that I may have obtained through privileged and confidential communications, I object.  However, notwithstanding the foregoing, the transcript of his testimony contains such a request.**

**ATTACHMENT C**                                                                 **006**

**REQUEST 15:**

Admit that Lt. Col. Michael Nesbitt provided a copy of what he said were the notes contained in his personal notebook to the FNAEB members in October 2018, prior to the conclusion of the FNAEB in October 2018.

**Answer: Deny personal knowledge of the events described and, to the extent that Plaintiff seeks information that I may have obtained through privileged and confidential communications, I object.**

**REQUEST 16:**

Admit that the notes Lt. Col. Michael Nesbitt provided to the FNAEB's members were included as an enclosure to the FNAEB report of proceedings.

**Answer: Deny personal knowledge of the events described and, to the extent that Plaintiff seeks information that I may have obtained through privileged and confidential communications, I object.  However, notwithstanding the foregoing, the FNAEB documents indicate that such an attachment exists at Enclosure 42, however I have no knowledge of the specific contents of this enclosure and whether it is similar to the copies of LtCol Nesbitt's notes that were provided to Mr. Ursini or the copies that LT Shaw sent to members of the media.**

**REQUEST 17:**

Admit that the FNAEB's report of proceedings contained, as an enclosure, a record of Lt. Col. Michael Nesbitt's testimony during which he was asked to provide a copy of his notebook excerpt, and that this transcript was signed by Lt. Col. Michael Nesbitt.

**Answer: Admits that the report does contain such an enclosure.**

**REQUEST 18:**

**ATTACHMENT C**          **007**

Admit that Cmdr. Brandon Scott reviewed the FNAEB report of proceedings in its entirety, to include all enclosures, in order to endorse the report in November 2018.

**Answer: Deny personal knowledge of the events described and, to the extent that Plaintiff seeks information that I may have obtained through privileged and confidential communications, I object.**

<u>**REQUEST 19:**</u>

Admit that Cmdr. Brandon Scott had access to the report and all enclosures on or before January 16, 2020.

**Answer: Deny personal knowledge of the events described and, to the extent that Plaintiff seeks information that I may have obtained through privileged and confidential communications, I object.**

<u>**REQUEST 20:**</u>

Admit that Cmdr. Brandon Scott provided a full copy of the FNAEB report, including all enclosures and including Lt. Col. Nesbitt's notes, to Lt. Shaw.

**Answer: Deny personal knowledge of the events described and, to the extent that Plaintiff seeks information that I may have obtained through privileged and confidential communications, I object.**

<u>**REQUEST 21:**</u>

Admit that Lt. Col. Michael Nesbitt's notes were neither referenced by, nor included in, DoD IG report 20180516-051435-CASE-01.

**Answer: Neither admits nor denies, as the copy of the report provided to me by DoD IG was so heavily redacted, without any of the underlying documentation attached, that I cannot be sure. However, I am aware that LtCol Nesbitt sent his notes to David Ursini by**

**ATTACHMENT C**                                                          **008**

email on September 10, 2018 and that the scans sent to Mr. Ursini are identical to the scans that were later sent by LT Shaw to members of the new media.

**REQUEST 22:**

Admit that Lt. Col. Michael Nesbitt's notes were neither referenced by, nor included in, the Command Directed Investigation.

**Answer: Deny personal knowledge of the events described and, to the extent that Plaintiff seeks information that I may have obtained through privileged and confidential communications, I object.  However, notwithstanding the foregoing, the CDI does indicate a signed statement and witness interview with LtCol Nesbitt, as well as a volume of miscellaneous documentary evidence.**

**REQUEST 23:**

Admit that a copy of Lt. Col. Michael Nesbitt's notebook was not appended to DoD IG report 20180516-051435-CASE-01.

**Answer: I have no knowledge of this, as the DoD IG refused to provide an unredacted copy of the report or any of the referenced documents.**

**REQUEST 24:**

Admit that on or before January 16, 2020, you reviewed DoD IG report 20180516-051435-CASE-01 in its entirety.

**Answer: Denies the allegation, as DoD IG refused to provide either an unredacted copy, or any of the documents referenced in the report.**

**REQUEST 25:**

Admit that on January 16, 2020, in a letter to the DoD IG, located in Alexandria, Virginia, the content of which addressed DoD IG report 20180516-051435-CASE-01, you stated that, "It is

**ATTACHMENT C**            **009**

unknown how LT Shaw came to possess a copy of LtCol Nesbitt's notebook in the first place." You then alleged that LT Shaw either "unlawfully searched LtCol Nesbitt's office to make copies for himself or received copies from [the DoD IG investigator]. Either possibility is a very serious and deeply concerning issue."

> **Answer: Admits this allegation, however the full quote was:**
>
> > **It is unknown how LT Shaw came to possess a copy of LtCol Nesbitt's notebook in the first place.  It appears that he either unlawfully searched LtCol Nesbitt's office to make copies for himself or received copies from Mr. Ursini.  Either possibility is a very serious and deeply concerning issue.**

**This was a request for the DoD IG to investigate whether David Ursini had improperly given copies of LtCol Nesbitt's notebook, and potentially other documents, to LT Shaw, a follow up to an email that I sent to August 26, 2019 to the DoD IG's Office of General Counsel "about Mr. Ursini's misconduct in releasing private documents to LT Shaw."**

**REQUEST 26:**

Admit that before January 26, 2020, you knew that a full copy of the FNAEB report, including all enclosures and including Lt. Col. Michael Nesbitt's notes, had been provided to Lt. Shaw after the conclusion of the FNAEB proceedings.

> **Answer: Denies this claim.**

**REQUEST 27:**

Admit that Cmdr. Brandon Scott ordered a Command Climate Survey of VFA-106 in August 2019 following the (temporary) relief of Lt. Col. Michael Nesbitt as Executive Officer of VFA-106.

> **Answer: Deny personal knowledge of the events described and, to the extent that Plaintiff seeks information that I may have obtained through privileged and confidential**

**ATTACHMENT C**                    **010**

communications, I object.

**REQUEST 28:**

Admit that on or before January 16, 2020 Cmdr. Brandon Scott and/or Lt. Col. Michael Nesbitt provided you an unredacted copy of the Command Climate Survey conducted of VFA-106 in August 2019.

**Answer: Objects to this request as it seeks disclosure of privileged and/or confidential information.**

**REQUEST 29:**

Admit that on or after January 16, 2020, you published the January 16, 2020 letter you sent to the DoD IG to one or more third-parties not employed with the DoD IG.

**Answer: Admits that this letter was included as an exhibit to correspondence sent to my clients' elected representative.**

Dated: July 6, 2020
Falls Church, Virginia

Timothy C. Parlatore, Esq.
*Defendant, Pro Se*
Parlatore Law Group, LLP
One World Trade Center, Suite 8500
New York, New York 10007
212-679-6312
212-202-4787 Facsimile
timothy.parlatore@parlatorelawgroup.com

**ATTACHMENT C**                                                                              **011**