IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN E. SHAW, ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE HONORABLE KENNETH ) <br> BRAITHWAITE, *et al.,* ) <br>     Defendants. ) <br> _____ ) | Civil Action No. 1:20-cv-00410-RDM |

### **PLAINTIFF'S SUPPLEMENTAL NOTICE OF DISCOVERY DISPUTES**[1]

Pursuant to the Court's August 28, 2020 Order, Plaintiff hereby supplements his notice of unresolved discovery issues to be discussed during a teleconference on September 10, 2020, at 2:00 p.m. As previously indicated, Defendant Parlatore is improperly attempting to use the attorney-client privilege to withhold responsive documents and relevant admissions about when he obtained the government documents from government officials. Defendant Parlatore has withheld the documents and admissions about his improper receipt of such documents from one or more government officials under the attorney-client privilege.[2]

---

[1] Plaintiff maintains his objections to the relevance and "fishing expedition" nature of many of the Requests for Admission propounded by Defendant Parlatore (*see* Doc. 41). Here, however, he supplements his challenges to Defendant Parlatore's refusal to respond to Plaintiff's discovery requests on the basis of the attorney-client privilege.

[2] *See* **Attachments A-C** to Doc. 41. Defendant Braithwaite appears to have shelved some responses while awaiting a resolution of this issue. *See* Attachment D at 7 ("The Navy determined that this litigation is best suited to determine legal issues regarding alleged unauthorized disclosures from client to attorney."); *Id.* at 10 (withholding production of emails between Defendant Parlatore and his clients "pending resolution of any claim of privilege asserted by Mr. Parlatore."). When a party claims a privilege as the basis for withholding documents, that party "bears the burden of proving the communications are protected." *Felder v. Washington Metro. Area Transit Auth.*, 153 F. Supp. 3d 221, 224 (D.D.C. 2015) (internal quotation marks omitted) (quoting *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998)). To carry that burden, the party asserting the privilege must "present the underlying facts demonstrating the existence of the privilege," and "conclusively prove each element of the privilege." *Lindsey*, 158 F.3d at 1270 (internal quotation marks and citations omitted). "[T]he proponent of a privilege … 'must offer more than just conclusory statements, generalized assertions, and unsworn averments of its counsel.'" *United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 127 (D.D.C. 2012) (internal quotation marks omitted) (quoting *In re Veiga*, 746 F. Supp. 2d 27, 33–34 (D.D.C. 2010)). If the party asserting the privilege fails to present sufficient facts to allow the Court to "state with reasonable certainty that the privilege applies, this burden is not met." *FTC v. TRW, Inc.*, 628 F.2d 207, 213 (D.C. Cir. 1980) (emphasis added).

Defendant Parlatore is both a witness in the Privacy Act case against Defendant Braithwaite (upon information and belief he received certain protected documents from Naval officials), and a defendant in a libel *per se* case in which he wrongfully accused Plaintiff of criminal misconduct: of stealing a copy of another naval official's notes from that person's office and/or conspiring with an investigator to illegally obtain a copy of such notes when Defendant Parlatore knew the notes were provided to Lt. Shaw as attachments to a report that the Navy could lawfully share with Lt. Shaw (but not, without redactions, share with Defendant Parlatore).

### A. Documents "Owned by the Government" Cannot Become Privileged Communications With Attorney Parlatore.

In order to prove both the Privacy Act violation against the government, and the libel claim against Defendant Parlatore, as part of the discovery Plaintiff issued to Defendant Parlatore, Plaintiff Shaw requested "all Documents between (a) you or your law firm and (b) a person you or your law firm was representing as a client when the Documents were created that concern provision of any of the following documents to you or to your law firm."[3] Clearly, this discovery request did not seek all documents that may ever have been provided by one or more clients of Mr. Parlatore to him. Instead, the discovery request was carefully tailored to require responses to: (1) provision of four government documents because the provision of any of these four government documents to a civilian, would appear to violate Lt. Shaw's Privacy Act rights; and (2) provision of any documents showing the circumstances of the transmission of the four particular government documents to Mr. Parlatore. The four government documents listed in the discovery request were documents created by and "owned by" the government. The documents were not created by any of Parlatore's clients—themselves government officials—in order to obtain legal advice from Mr. Parlatore.

---

[3] *See* **Attachment A** to Doc. 41 at 5 (emphasis added).

The elements of the attorney-client privilege are: (1) a client, (2) a lawyer, (3) a retainer for the purpose of rendering legal advice, (4) a communication between them, and (5) an intent that the communication be confidential.[4] As to protected communications, however, the attorney-client privilege protects only the communication between the attorney and the client; it does not protect underlying facts from disclosure. As the Supreme Court stated in *Upjohn v. United States*, 449 U.S.383 (1981):[5]

> [T]he protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, "what did you say or write to the attorney?" but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

*Id.* at 395-96 (citations omitted).[6] It is clear that the facts surrounding how and when *independently created government documents* were transmitted to Defendant Parlatore are not shielded from discovery by the attorney-client privilege. It also is clear that documents that do not themselves represent

---

[4] In *In re Sealed Case*, 737 F.2d 94 (D.C. Cir. 1984), the D.C. Circuit articulated the attorney-client privilege as follows:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Sealed Case*, 737 F.2d at 98-99 (*Quoting United States v. United Shoe Machinery Corp.*, 89 F. Supp. 357, 358–59 (D.Mass.1950)). The D.C. Circuit further added that "Communications from attorney to client are shielded if they rest on confidential information obtained from the client[,]" and conversely that "when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." *Id.* at 99 (citations omitted). The D.C. Circuit also recognized that: "It remains the claimant's burden . . . to present to the court sufficient facts to establish the privilege; the claimant must demonstrate with reasonable certainty . . . that the lawyer's communication rested in significant and inseparable part on the client's confidential disclosure." *Id.* (citation omitted).

[5] 449 U.S.383 (1981).

[6] *See also United States v. O'Malley*, 786 F.2d 786, 794 (7th Cir. 1986); *United States v. Covington & Burling*, 430 F. Supp. 1111, 1121 (D.D.C. 1977) (communications between the lawyer and an accounting firm used as a consultant in preparing a negotiating position for the client were deemed privileged only to the extent that they revealed client confidences). Thus, absent special circumstances, a client's identity, date of consultation, and fee information are not privileged.

confidential communications to a lawyer do not become privileged merely by transmitting them to a lawyer. Documents created and existing independently of the attorney-client relationship that may have been provided to (and examined by) counsel are not themselves protected from discovery.[7] For example, and clearly pertinent here, it has long been settled that underlying corporate documents "examined by counsel" are not themselves protected from discovery through invocation of the attorney-client privilege.[8]

Related to his request for production of documents, Plaintiff Shaw also requested from Defendant Parlatore his admission that one or more naval officers (whom he also may have been representing) provided him the Privacy Act protected documents concerning Plaintiff.[9] This admission remains relevant to Plaintiff's claim that his Privacy Act rights were violated when information concerning Plaintiff was provided to Mr. Parlatore, a civilian, *by one or more government officials* in violation of the Privacy Act.[10] Should Defendant Parlatore continue to refuse to produce

---

[7] *See, e.g.*, *American Med. Sys., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Inc.*, 1999 WL 970341 (E.D. La. Oct.22, 1999) ("[L]etters that merely transmit documents to or from an attorney, even at the attorney's request for purposes of rendering legal advice to the client, are neither privileged nor attorney work-product"); *United States v. Doe*, 959 F.2d, 1158, 1165 (2d Cir. 1992) (law firm in possession of client's telephone bills must produce them to grand jury because "[d]ocuments created by and received from an unrelated third party and given by the client to his attorney in the course of seeking legal advice do not thereby become privileged"); *Fisher v. United States*, 425 U.S. 391, 403-04 (1976) ("preexisting documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice").

[8] *See, e.g., Neuder v. Battelle Pac. N.W. Nat'l Lab.*, 194 F.R.D. 289, 293 (D.D.C. 2000) (attorney's attendance at committee meeting did not render documents produced during the meeting subject to the attorney-client privilege); *United States v. Motorola, Inc.,* 1999 WL 552553 (D.D.C. 1999) (ordering production of minutes of meeting of board of directors despite an attorney's presence); *Diversified Indus. v. Meredith*, 572 F.2d 596, 611 (8th Cir. 1978) (en banc).

[9] *See* **Attachment C** to Doc. 41.

[10] That the government officials, without authority to make a disclosure determination, involved in the unlawful disclosure of Privacy Act protected information concerning Lt. Shaw to Mr. Parlatore may also have been clients of Mr. Parlatore when they provided government documents to him in no way excuses the Privacy Act violation. And, unless the government disputes Mr. Parlatore's anticipated admission that he received such information directly from government officials, securing such an admission from the actual civilian recipient serves to remove this issue from further contention for purposes of proving a Privacy Act violation.

the requested evidence showing that he came into possession of one or all of the four government documents at issue for Plaintiff's Privacy Act claim in a manner prohibited by the Privacy Act, (which evidence would include both copies of the relevant documents and copies of any documents showing how the four relevant government documents came into his possession, as well as related admissions to the same), a motion to compel production will be required.

### B. Any Conceivable Privilege Has Been Waived through Mr. Parlatore's Publications.

As discussed above, one seeking to invoke the attorney-client privilege must show not just that the communication is of the type warranting protection, he also must show an intent that the communications remain confidential or else the privilege will have been waived. "A waiver can be expressed or implied." *Western Trails Inc. v. Camp Coast to Coast, Inc.*, 139 F.R.D. 4, 8 (D.D.C. 1991).[11] "Both inadvertent and deliberate disclosure of privileged communications waives the privilege." *Id.* Furthermore, the privilege is waived even if only part of the communications is disclosed. *See Navajo Nation v. Peabody Holding Co., Inc.*, 255 F.R.D. 37, 48 (D.D.C. 2009) ([*A*]*ny* disclosure of attorney-client material will be considered a waiver of the privilege as to all communications relating to the same subject matter.") (emphasis in original).

In this case, Defendant Parlatore published unredacted copies of the Command Directed Investigation, Command Climate Survey, and Assistant Secretary of the Navy's letter[12] of December

---

[11] In *Western Trails*, this Court said that even if certain documents defendant created and provided to its attorney could be deemed privileged, the privilege was waived when defendant discussed these documents in a published report. *See* 139 F.R.D. at 11. Although defendant alleged the report was prepared at the direction and under the supervision of the attorney for the purpose of assisting him in rendering legal advice, this Court said the privilege was nevertheless waived because even "an inadvertent disclosure of the confidential communication from the client to the attorney is a waiver of the privilege." *Id.* at 11 (citing *In re Sealed Case*, 877 F.2d at 980).

[12] Consistent with how other protected government documents are disclosed to third parties, the government appears to have produced its ASN letter post-redaction. But Lt. Shaw failed to receive require notice of these disclosures whereby he could have objected because the ASN's letter directed that certain records be removed from Lt. Shaw's file. Although the government and Mr. Parlatore knew of the directed removal, inaccurate records were disseminated to well over 30 known persons lacking a "need to know." "To merit protection under The Privacy Act's "routine use" exception, an agency must demonstrate that its disclosure of a particular record satisfies three statutory criteria: the agency must

16, 2019 in his letter to Congresswoman Luria dated January 24, 2019 and also forwarded this same information to the Project for Government Oversight on February 20, 2019.[13] Mr. Parlatore subsequently represented during the pendency of the instant case that he is in receipt of certain portions of the Field Naval Aviator Evaluation Board report[14] Privilege has been waived through purposeful disclosures of the information Defendant Parlatore now suggests he should be permitted to shield: documents the government created and owns and information about how those documents were disclosed to a civilian.

### C. Any Properly-Produced Privilege Log Would Have Repudiated Attorney Parlatore's Privilege Claim.

Even if the requested discovery could have somehow been deemed protected by the attorney-client privilege, however, and even if a voluntary disclosure of some of the supposed privileged information had not already occurred and thus vitiated any claim of privilege, the privilege still should be deemed waived through failure to produce a proper privilege log.

Although proper assertion of a privilege is grounds for refusing to produce requested documents under Rule 26(b)(1), if the party responding to a document request does not provide an adequate "privilege log," the privilege also can be deemed waived. This is because, as discussed above, the party asserting the attorney-client privilege (or work-product doctrine) has the burden,

---

publish advance notice of the routine use in the Federal Register, the agency must provide a separate notice detailing the routine use to the individual whose information it plans to disclose, and the putative routine use itself must be compatible with the purpose for which the record being disclosed was collected. 5 U.S.C.A. § 552a(a)(7), (b)(3), (e)(3)(C), (e)(4)(D)." *Doe v. U.S. Dept. of Labor*, 451 F. Supp. 2d 156 (2006). *See also infra* note 19.

[13] *See* Doc. 2-5 (footnote 4 (CDI), 9 (Command Climate Survey), and 10 (ASN ltr), of Defendant Parlatore's letter to Congresswoman Luria dated January 24, 2019 (the date of this letter is in error and should be January 24, 2020 based on the attachments Defendant Parlatore included in his correspondence).

[14] *See* Doc. 13-7 at 1 (in an email addressed to Mr. Montalvo, Defendant Parlatore wrote, "I have a transcript of you telling Judge Moss that you cross-examined LtCol Nesbitt at the FNAEB, the FNAEB instruction saying that attorneys are prohibited from cross-examining witnesses at FNAEBs and *a transcript of LtCol Nesbitt* not being cross-examined by you or asked any questions about his notebook. I also have a transcript of you claiming that LT Shaw got a NAM for his velocity vector training method and the citation showing that not to be true.") (emphasis added); Doc. 2-5 at 8, fn. 4.

under Rule 26(b)(5)(A), of establishing that the privilege exists. The Rules specify what a party must do in response to a request for production of documents. "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). A written response must be served within 30 days of service of the request, unless otherwise stipulated or ordered by the court. FED. R. Civ. P. 34(b)(2)(A). Where the objection to producing the requested documents is based on privilege or attorney work-product, however, "the party (i) must expressly make the claim; and (ii) describe the nature of the documents, communications, or other tangible things not produced or disclosed-and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)((5)(A). In other words, the privilege claimant must prepare "a privilege log." *See Avery Dennison Corp. v. Four Pillars,* 190 F.R.D. 1 (D.D.C. 1999) ("Filing a privilege log has become the "universally accepted mean [s] of asserting privileges in discovery in the federal courts."); *United States v. KPMG, LLP*, 237 F. Supp. 2d 35, 38 (D.D.C. 2002) ("The essential function of a privilege log is to permit the opposing party, and ultimately the court, to evaluate a claim of privilege.").

> To properly demonstrate that a privilege exists, the privilege log should contain a brief description or summary of the contents of the document, the date the document was prepared, the person or persons who prepared the document, the person to whom the document was directed, or for whom the document was prepared, the purpose in preparing the document, the privilege or privileges asserted with respect to the document, and how each element of the privilege is met as to that document. The summary should be specific enough to permit the court or opposing counsel to determine whether the privilege asserted applies to that document.

*Carty v. Gov't of V.I.*, 203 F.R.D. 229, 230 (D.V.I. 2001); *Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 577 (D. Md. 2010) (holding that "terse" descriptions, such as "confidential employee records," were insufficient to establish privilege); *see also Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010) ("The information provided [in a privilege log] must be sufficient to enable the court to determine

7

whether each element of the asserted privilege or protection is satisfied."

In this case, a proper log of documents for which Mr. Parlatore (or his clients) claim privilege required Defendant Parlatore to identify: (1) the date of each "privileged" document; (2) the type of each document (e.g., notes, memo, notebook, letter, or email); (3) the number of pages of each document; (4) the author of each document; (5) the recipient of each document; (6) the subject matter of each document; (7) the particular privilege(s) claimed for each document; and (8) the Bates number(s) of each document. Defendant Parlatore's failure to produce a privilege log here was likely deliberate: production of a proper log would have demonstrated on its face the absurdity of the claim that documents his clients did not author for their attorney or their attorney did not write to his clients, could ever become confidential attorney-client communications.[15] A proper privilege log would have made crystal clear that (1) none of the government documents transmitted to Defendant Parlatore were created by government officials *for their attorney*, and (2) the documents did not include *provision of legal advice from attorney Parlatore*. Likewise, a proper privilege log would have shown that any attorney-client confidences contained within existing transmission document(s) (documents showing how and when government documents were provided to Defendant Parlatore) could easily have been redacted from the transmission documents (possibly cover letters, but likely emails).[16]

### D.  The Crime Fraud Exception Constitutes A Further Privilege Waiver.

Finally, any existing privilege here has been waived through the crime-fraud exception.[17]

---

[15] "[T]he Court has discretion to determine that a party has waived privilege when that party fails to produce a privilege log." *Smith v. Cafe Asia*, 256 F.R.D. 247, 250-51 (D.D.C. 2009) (citing *Four Pillars*, 190 F.R.D. at 2).

[16] An adequate privilege log enables the Court "to determine ... that the documents withheld are privileged and "cannot be produced in a redacted form." *U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp.*, 222 F. Supp. 3d 38, 42-43 (D.D.C. 2016) (quoting *Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*, 267 F.R.D. 1, 4 (D.D.C. 2010) (internal quotation marks omitted).

[17] *See Hicks v. Bush*, 452 F. Supp. 2d 88, 100 (D.D.C. 2006) (citing *United States v. Zolin*, 491 U.S. 554, 562-63 (1989) ("The

Application of this exception requires the movant to show, by "believable evidence," (1) the existence of an ongoing or imminent crime; and (2) that the attorney was consulted for the purpose of committing the crime or fraud.[18]

If Defendant Parlatore's clients (all government employees) provided Privacy Act protected documents to attorney Parlatore through improper channels, these clients violated a criminal provision of the Privacy Act. The Privacy Act prohibits (1) the willful disclosure of Privacy Act protected documents by a government official who has access to the documents; and (2) the intentional solicitation of release of protected documents under false pretenses. 5 U.S.C. §§ 552a(i)(1), (3). If the documents were provided to Defendant Parlatore by one of his naval official clients at attorney Parlatore's request (outside of the Freedom of Information Act or Privacy Act), attorney Parlatore may have also violated the Privacy Act.[19]

Defendant Parlatore, during the instant case, has seemingly solicited additional Privacy Act information in the form the FNAEB and unknown (because presently being withheld) documents provided by non-client government officials to be used in his own defense against libel and not in the furtherance of his client's interests.[20] There is no valid basis for withholding these documents.

---

privilege does not apply to communications made in furtherance of a crime.").

[18] *In re Sealed Case*, 107 F.3d 46, 50-51 (D.C. Cir. 1997).

[19] Indeed, Cmdr. Roberts, the author of the Command Directed Investigation, was found to have previously disclosed The Privacy Act protected document. *See* Doc. 2-2 (noting that on July 19, 2018, Cmdr. Roberts emailed a draft copy of the Command Directed Investigation to a personal email account, writing, "Let the light at the end of the tunnel be a train. May this attachment be that train.").

[20] "There are [sic] no shortage of Naval Aviators willing to provide information about LT Shaw's serious and dangerous misconduct and the undersigned has received information from his former students, peers, and superior officers, in addition to several documents that were anonymously provided." Doc 41-3 (Attachment C). During the February 13, 2020 preliminary injunction hearing, Mr. Parlatore said: "As far as the FNAEB is concerned, we don't have a copy of that." Transcript page 14 Line 5. *But see supra*, note 14. In both instances Mr. Parlatore appears to be acquiring documents in his own defense, possibly in violation of The Privacy Act, and certainly not pursuant to a client's representation.

Regardless, these disclosed documents should have been included in a privilege log. In the event the Court determines a credible claim of privilege may exist, it should conduct an in-camera review to determine whether any privileged information can be redacted. It should not accept the complete nondisclosure—a stonewalling—that has occurred here.

WHEREFORE, Plaintiff requests this Court find (1) that the attorney-client privilege does not apply to the provision of non-privileged documents; or (2) that if the privilege does apply, it has been waived through dissemination of much of the information claimed to be privileged and/or by failure to provide a privilege log, or waived under the crime-fraud exception to the privilege.

At a minimum, Plaintiff requests in-camera review of the documentation (to include the transmittal document(s)) to determine if redaction of any protectable communications can occur and if, not, whether the crime-fraud exception applies.[21]

Respectfully submitted,

/s/ *Eric S. Montalvo*
Eric S. Montalvo
DC Bar No. 993206
THE FEDERAL PRACTICE GROUP
1750 K Street, N.W., Suite 900
Washington, DC 20006
(202) 862-4360
(888) 899-6053 facsimile
Emontalvo@fedpractice.com

/s/ *William R. Cowden*
William R. Cowden
DC Bar No. 426301
WILLIAM COWDEN LLC
1750 K Street, N.W., Suite 900
Washington, DC 20006
(202) 808-2140
(888) 899-6053 facsimile
Wcowden@cowenllc.com
*Attorneys for Plaintiff*

---

[21] *Zolin*, 491 U.S. at 565.

## CERTIFICATE OF SERVICE

  I hereby certify that on September 8, 2020, a copy of the foregoing filing was filed electronically via this Court's Electronic Court Filing system. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

               */s/ Eric S. Montalvo*
               Eric S. Montalvo