```
UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
------------------------------------------------------------------------X
STEVEN SHAW,
                        Plaintiff,                  Docket No.: 20-cv-410

        -against-

THE HONORABLE KENNETH BRAITHWAITE, and
TIMOTHY C. PARLATORE, ESQ.

                        Defendants.
------------------------------------------------------------------------X
```

### DEFENDANT'S MEMORANDUM IN RESPONSE TO COURT ORDER

Defendant, Timothy C. Parlatore, Esq., *pro se*, hereby submits this memorandum outlining the legal issues identified by the Court at the August 28, 2020 telephone conference, specifically whether the act of a client providing documents to his or her attorney to assist in his or her own defense could constitute a violation of the Privacy Act.[1]

The issues presented largely overlap with the Navy's pending motion for a judgment on the pleadings (Docket # 33), as the only Privacy Act violations alleged in the complaint were disclosures made to the undersigned, as part of my defense of several government officials.[2] Thus, the arguments raised by the Navy in that motion are incorporated herein and, moreover, it is respectfully submitted that the Court should consider both the Government's motion, as well as the discovery dispute simultaneously, as the result of one necessarily resolves the other. Moreover, the extreme remedy that Plaintiff seeks – piercing of the attorney client privilege, should not be exercised lightly, especially in a case where the relevant causes of action are insufficiently pleaded.

---

[1] Interestingly, Plaintiff's submission completely avoids any discussion of the sole issue identified by this Court for briefing. This is likely because Plaintiff has no non-frivolous arguments to argue on this point.

[2] Factual discussions in this submission are based on Plaintiff's allegations and nothing in this document should be construed as an admission or agreement with the Plaintiff's allegations, nor the disclosure of attorney-client privileged or confidential information.

1

The case at bar presents an ironic circumstance where Plaintiff violated direct orders from his superiors, as well as numerous safety and security protocols, then flagrantly disseminates private information, including secretly recorded conversations, inspector general reports, and the results of adverse personnel actions, all while claiming the privilege of being a whistleblower. Yet, when the officers who he defames and whose careers he wrongfully destroys use documents that they are in lawful possession of to counter Plaintiff's false narrative, Plaintiff attempts to prevent the truth from being revealed through a misapplication of the Privacy Act.

Plaintiff is now seeking to pierce the attorney-client privilege to discover what documents are contained in counsel's file and from what source they were obtained.  Specifically, Plaintiff has identified three[3] documents that he has reason to believe are in counsel's file:

1. The report of a Command Directed Investigation ("CDI"), which Plaintiff alleges was provided by the drafter to his own attorney after being brought up on charges related to the drafting of that very document;

2. The results of a command climate survey, which Plaintiff alleges was provided to counsel by one of his clients and which was used to successfully defend his client; and

3. The transcript of one witness' testimony at an administrative hearing, which Plaintiff alleges was provided by the witness to his own attorney after the Plaintiff's counsel lied to this Court and materially misrepresented the contents of his testimony.

While Plaintiff is correct that the documents themselves are not privileged, the process by which counsel obtained them, and the communications surrounding them, are both privileged and confidential.

---

[3] Plaintiff's memorandum references an unidentified fourth document.  However, the complaint only identifies these three.

**Disclosure of the CDI Does Not Violate the Privacy Act**

Plaintiff complains that, as attorney for CDR Bryan Roberts, I should not have had a copy of the CDI report that he authored. However, this position is without merit, as Plaintiff's own actions properly placed this document into attorney files.

CDR Roberts was assigned to conduct an investigation into the illegal conduct of Plaintiff. Before he had even begun the investigation, Plaintiff had already filed a complaint against him with the DoD Inspector General. That complaint led to a deeply flawed IG Report and potential charges against CDR Roberts related to the preparation of that report.

Under Plaintiff's theory, CDR Roberts should have been forced to defend himself without allowing his attorneys to review the document that he was facing potential charges for creating. Alternatively, Plaintiff apparently believes that the Government should not have provided a copy of this document to the defense as part of any anticipated disciplinary action or to file an appropriate rebuttal to the IG Report. Both theories are without merit or support. In fact, this is exactly the type of "routine use" contemplated in the regulations cited by the Navy in their submission.

Whether the document was produced to his attorney by CDR Roberts, or by the Navy, as part of the IG Report or discovery related to proposed disciplinary actions, the immutable fact is that CDR Roberts' attorney was in rightful possession of the document to defend his client. It is not a justification for Plaintiff to pierce the attorney-client privilege to search through counsel's file and his successful representation of CDR Roberts.[4]

---

[4] Ultimately, CDR Roberts was not charged with any violations and was approved for honorable retirement, at the rank of Commander.

**Disclosure of the Command Safety Survey Does Not Violate the Privacy Act**

As quoted in the Navy's Motion for a Judgment on the Pleadings, "A system of records exists only if the information contained within the body of material is both retrievable by personal identifier and actually retrieved by personal identifier." *Maydak v. U.S.*, 630 F.3d. 166, 178 (D.C. Cir. 2010)(emphasis in original).  It is undeniable that the Safety Survey is titled with the command name and date and not anyone's individual personal identifier.

In his opposition to the Navy's motion, Plaintiff made no effort to dispute this.  In his proposed Second Amended Complaint, Plaintiff makes reference to an instruction that ensures proper notice and consent to the individuals completing the survey, but is inapplicable to the content of their answers, which may reference specific individuals.

As there are no allegations that the survey can be "retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual," it is outside of the statutory definitions of 5 U.S.C. § 552a(a)(5).  Thus, even if Plaintiff's assertions were true, it is not a violation of the Privacy Act.

**Disclosure of the Transcript of a Witness' Testimony to his own Attorney Does Not Violate the Privacy Act**

On February 13, 2020, Mr. Montalvo stood before this Court and falsely accused LtCol Nesbitt of perjury.  This false accusation came amid an entirely fabricated tale of Mr. Montalvo cross-examining LtCol Nesbitt in an administrative hearing.  The reality is that Mr. Montalvo intentionally misrepresented the circumstances and substance of that hearing to this Court.  Plaintiff's theory here seems to be that if LtCol Nesbitt was in lawful possession of a copy of his

own testimony, he is prohibited from sharing that with his attorney to rebut the false accusation of perjury[5], or to correct the materially false statements that were made to this Court.[6]

As with the CDI, the Privacy Act does not prohibit LtCol Nesbitt from sharing a transcript of his own testimony with his attorney, especially in the wake of an accusation of perjury. Moreover, any privacy interest that Plaintiff may have had in the contents of that transcript were obliterated the moment his attorney stood before this Court to mischaracterize the testimony. This District has previously dismissed Privacy Act claims where the Defendants demonstrated that "disclosure was necessary… to rebut any mistaken impression created by [Plaintiff's mischaracterizations]." *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

Separately, Plaintiff's theory also fails to satisfy the "retrieval rule," because if Ltcol Nesbitt provided his personal copy of his own testimony, this was clearly not a copy that was contained within a system of records and actually retrieved.

In his First Amended Complaint, Plaintiff alleged, without any factual basis that the record of his Field Naval Aviator Examination Board ("FNAEB") "in its entirety" was provided to the undersigned. However, in his motion for leave to file this amended complaint, Plaintiff relies solely upon an email from the undersigned which states, in relevant part:

> I have a transcript of you telling Judge Moss that you cross-examined LtCol Nesbitt at the FNAEB, the FNAEB instruction saying that attorneys are prohibited from cross-examining witnesses at FNAEBs and **a transcript of LtCol Nesbitt not being cross-examined by you** or asked any questions about his notebook.

---

[5] Plaintiff has made references to this being a solicitation, not a legitimate effort to represent my clients. However, at the time that these events were occurring, LtCol Nesbitt was still fighting to keep his full pension through a retirement grade determination, as outlined in the letter from Assistant Secretay Slavonic. As these proceedings were initiated at the request of Plaintiff, the fact that Plaintiff was falsely accusing him of perjury was a relevant issue to defend against.

[6] In emails between counsel, Mr. Montalvo steadfastly refused to correct his material misrepresentations to the Court and only relented after being informed that I had a copy of the transcript demonstrating his unethical and dishonest behavior.

Docket #20-3 (emphasis added).[7] In his Memorandum submitted today, Plaintiff has walked this false "in its entirety" claim back to admit that I am only "in receipt of certain portions" of the FNAEB – specifically, LtCol Nesbitt's testimony.

There was never any suggestion that the entire FNAEB was ever disclosed to the undersigned, as the only portion relevant to these proceedings at the time was the transcript of LtCol Nesbitt's testimony to rebut the materially false statements that Mr. Montalvo, counsel for the Plaintiff, had made at the initial appearance in this matter. It would be entirely improper to allow Plaintiff to pierce the attorney-client privilege to go fishing for documents that they have no factual basis to believe were ever disclosed.

The full, unredacted FNAEB report will have to be disclosed later by Plaintiff in discovery. *Lohrenz v. Donnelly*, 187 F.R.D. 1 (D.D.C. 1999), ruling that where, as here, a naval aviator sued for Privacy Act violations and defamation, had to turn over her unredacted FNAEB report without the benefit of a protective order:

> Although her statutorily protected interests must be appropriately protected, plaintiff cannot be allowed to keep information out of the public domain simply because a government agency has a matching record that would, from the government's perspective, be covered by the Privacy Act. Put another way, a litigant cannot be allowed to bring a lawsuit making a certain set of documents relevant to the court's discovery process and central to the public allegations made but then pick and choose which documents she would like released by pointing to a Privacy Act justification, even though that statute does not apply. Justice simply does not require such an order.

*Id.* at 10.

---

[7] This is the only reference to the possibility that the undersigned had a copy of the transcript and the transcript itself was never transmitted or disclosed in any way. Ironically, it was Plaintiff who then chose to put a redacted version of the transcript on PACER. Docket #13-3.

**Even if the Alleged Disclosure was Unauthorized, it is Not Actionable**

Even if this Court is unwilling to set a precedent that government officials in lawful possession of documents may share them with their attorneys to assist in their own defense, the alleged disclosures at issue here are still not actionable, as the involved parties all believed the disclosure to be lawful and necessary to properly defend the clients of the undersigned and prevent further abuses by Plaintiff.

In *Laningham v. U.S. Navy*, the Plaintiff filed a Privacy Act case against the Navy after Privacy Act protected documents were disclosed by the Navy to the Department of Justice, who was defending the Navy in the Court of Federal Claims. Strikingly similar to this case, the Navy argued that disclosure of the documents was necessary "to rebut any mistaken impression created by Laningham's partial submissions from the same set of documents" *Id.* at 1242.  The Court went on to explain:

> [A Privacy Act] violation must be so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful.  Therefore, to meet its burden, the plaintiff must prove that the offending agency acted without grounds for believing its actions lawful or that if flagrantly disregarded the rights guaranteed under the Privacy Act.

*Id.* at 1242, *citing Wisdom v. Department of Hous. Urban Dev.,* 713 F.2d 422, 425 (8th Cir. 1983); *Chapman v. National Aeronautics Space Admin.,* 736 F.2d 238, 242-43 (5th Cir. 1984); *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984).

The *Laningham* court did not have to reach the issues, as framed in this case because the defendants' belief that disclosure was lawful to rebut false information put out by Plaintiff was sufficiently fatal to the claims.  Thus, even if this Court declines to set a precedent that government officials are permitted to share documents that they are in lawful possession of to their attorneys

to assist in their own defense, Plaintiff will never be able to establish that Defendant's clients knew that they were not permitted to defend themselves and flagrantly disregarded their obligations here.

## Conclusion

For all of the reasons stated herein, Plaintiff cannot establish that the alleged disclosures at issue in this case were made in violation of the Privacy Act, a necessary step before this Court can even consider piercing the attorney-client privilege. It appears that Plaintiff recognizes this as well, given that their submission completely ignores the sole issue that the Court asked the parties to brief. If, however, the Court finds any of the arguments that Plaintiff chose to brief in lieu of the ordered issue to be persuasive, Defendant respectfully requests an opportunity to respond.

Dated: September 8, 2020
Falls Church, Virginia

Respectfully submitted,

Timothy C. Parlatore, Esq.