# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STEVEN E. SHAW, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-00410-RDM |
| | ) | |
| CARLOS DEL TORO, | ) | |
| Secretary of the Navy, *et al.*, | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINITFF'S NOTICE OF EXPERT WITNESS

Plaintiff, by and through undersigned counsel, pursuant to this Court's August 1, 2022

Order, hereby designates his expert in accordance with Federal Rule of Civil Procedure

26(a)(2)(B).  Plaintiff states further that he will supplement this designation, and produce his

expert's report, in accordance with that rule, and pending the deadline relief requested in

Plaintiff's motion to extend discovery, filed more or less concurrently herewith.

### I.      Rule 26(a)(2)(A) -- Disclosure of Expert Testimony

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(A), Plaintiff hereby discloses Mr.

Kit Darby, President of KitDarby.com Aviation Consulting, LLC, as an expert witness. Plaintiff

intends Mr. Darby to provide expert testimony during trial to present evidence under Federal

Rule of Evidence 702, 703, and 705. Mr. Darby is expected to testify on the following subjects:

the dissemination of privacy act protected information, the resulting actions taken by Navy

officials as a result of the dissemination and a damages model accounting for its financial impact

upon a post active-duty career as a commercial pilot.

### II.     Rule 26(a)(2)(B) -- Witnesses Who Must Provide a Written Report

Mr. Darby is required to provide a written report pursuant to Federal Rule of Civil

Procedure 26(a)(2)(B). Under this Court's August 1, 2022 Order extending discovery deadlines,

that report is currently due by September 9, 2022.  However, although the designated expert

witness is required to provide a written report, he is unable to do so at this time due to the

Defendants' failure to fulfill their discovery obligations. At present, neither the Government nor

Co-Defendant Parlatore have provided complete discovery responses. As a result, Plaintiff's

expert does not have responsive information upon which he may rely to create his written report.

     For these reasons, and as set forth more extensively therein, Plaintiff is filing his motion

to extend discovery more or less concurrently with this notice. Plaintiff will supplement his

expert witness designation appropriately in accordance with Rule 26.

Dated: September 8, 2022          Respectfully submitted,

                    */s/ Eric S. Montalvo*
                    Eric S. Montalvo
                    DC Bar #993206
                    FEDERAL PRACTICE GROUP
                    1750 K Street, N.W., Suite 900
                    Washington, DC  20006
                    (202) 862-4360 (office) / (888) 899-6053 (fax)
                    emontalvo@fedpractice.com
                    *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

     I hereby certify that on September 8, 2022, I caused a true and correct copy of
PLAINTIFF'S NOTICE OF EXPERT WITNESS to be served via electronic mail, per the
parties' agreement, to the following:

     BRENDA A. GONZALEZ-HOROWITZ
     Assistant United States Attorney, Civil Division
     601 D Street N.W.
     Washington, D.C.  20530
     202-252-2512
     Brenda.gonzalez.horowitz@usdoj.gov
     *Counsel for Defendant Secretary of the Navy*

     TIMOTHY C. PARLATORE
     Defendant, *Pro Se*
     Parlatore Law Group, LLP
     One World Trade Center, Suite 8500
     New York, NY  10007
     212-679-6312
     Timothy.parlatore@parlatorelawgroup.com
     *Defendant*

# Exhibit B

## Eric Montalvo

| | |
|---|---|
| **From:** | Timothy Parlatore, Esq. <timothy.parlatore@parlatorelawgroup.com> |
| **Sent:** | Friday, July 1, 2022 6:57 PM |
| **To:** | wcowden@cowdenllc.com |
| **Cc:** | Brenda; Eric Montalvo; Carol Thompson; Cristina Lagarde |
| **Subject:** | RE: [EXTERNAL] Shaw v. Secretary Navy, et al.; Amended Rule 30(b)(6) Deposition Notice |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Bill, in a case so rife with dishonesty and misconduct by your colleague Montalvo, and the Court rejecting the majority of your arguments attempting to pierce privilege, do you really think that sending me an email whining in all-caps is appropriate?   YES I AM TIRED OF ATTORNEYS WHO THINK ITS OK TO FILE FRIVOLOUS SUITS AND LIE TO FEDERAL JUDGES.



CONFIDENTIAL NOTICE: This E-mail (including any attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received the message in error, please reply to notify the sender and then delete the message. Thank you.

https://lcardapp.com/lcard/timothy.parlatore-51814

On Fri, Jul 1 2022 at 17:45, <wcowden@cowdenllc.com> wrote:

Brenda,

You may represent to the Court that Plaintiff will not oppose a request for extension of the discovery deadline. Please tell the Court in your motion that Plaintiff has tried several times, and for months, to secure a date for a 30(b)(6) deposition. Please explain that your schedule has not been able to accommodate it and that you now have a trial about to commence. Please confirm whether Mr. Parlatore also will consent to the government's motion. When we see the motion we will cancel the existing deposition.

But, before you file your motion, also please provide us with several dates for a 30(b)(6) deposition that will work for the government's counsel and its designee(s). We want the Court to know there is an actual date set for this deposition in August that will work.

Separately, what is the status of the missing production of documents that DOJ said in its initial responses last year it had identified but was withholding until the privilege issue was resolved? According to DOJ's discovery responses last year, these documents were identified and segregated. Unless that representation was false, these documents should have been produced by now: we are weeks past the Court's rejection of the privilege claim. It's important that we have

these documents so we can see how me might revise question 7. It may be that the documents DOJ said it located, segregated, and thus far withheld may be most of what we need.

Tim,

Like the government, you also alleged last year that you had responsive documents you were withholding on the basis of an a/c privilege the Court rejected. The Court decided these documents should have been produced last year. Again, these responsive documents certainly should have been produced by now.

Tim and Brenda,

We need responses from you both as to when these previously identified and withheld documents will be produced. THIS IS MY SECOND REQUEST FOR A RESPONSE SINCE THE COURT'S RULING AND AS YOU BOTH KNOW MY FIRST REQUEST WAS IGNORED BY YOU BOTH. (YES, I AM GETTING TIRED OF ASKING ATTORNEYS TO COMPLY WITH COURT RULINGS AND RULES.)

If we don't have the improperly withheld documents by 5 p.m. NEXT TUESDAY, JULY 5, or a reasonable explanation as to when they will arrive, we will call the Court on the morning of July 6 to ask it to set up a call with Judge Moss. We will explain that none of the withheld documents have been produced and will ask for a hearing where you both can explain how you think discovery works.

Best,

Bill


*WILLIAM R. COWDEN*

WILLIAM COWDEN LLC

1750 K Street N.W., Suite 900

Washington, DC 20006

Main (202) 862-4360

Direct (202) 808-3140

Mobile (202) 642-0209

wcowden@cowdenllc.com

---

**From:** Gonzalez Horowitz, Brenda (USADC) <Brenda.Gonzalez.Horowitz@usdoj.gov>
**Sent:** Friday, July 1, 2022 8:56 AM
**To:** Cristina Lagarde <clagarde@fedpractice.com>; Timothy Parlatore <timothy.parlatore@parlatorelawgroup.com>
**Cc:** Eric Montalvo <emontalvo@fedpractice.com>; 'wcowden@cowdenllc.com' <wcowden@cowdenllc.com>; Carol Thompson <CThompson@fedpractice.com>
**Subject:** RE: [EXTERNAL] Shaw v. Secretary Navy, et al.; Amended Rule 30(b)(6) Deposition Notice

Cristina,

Apologies, it has been a crazy week. The last week of July is off the table for me, given that I have a Title VII trial starting before Judge Moss on August 1 that is expected to go an entire week. To that end, could we seek a brief extension of 30 days until the end of August or shortly after Labor Day for completion of discovery?

I am also working on objections to the revised 30(b)(6) notice that Plaintiff served. Is Plaintiff intending on revising its request for production (No. 7) in light of the Court's ruling? It would be helpful for the agency to have narrowed parameters for conducting its email search, and it would be in everyone's interest to have that completed before depositions.

Best,

Brenda

**BRENDA GONZÁLEZ HOROWITZ**

Assistant United States Attorney

Ph: (202) 252-2512 | Brenda.Gonzalez.Horowitz@usdoj.gov

---

**From:** Cristina Lagarde <clagarde@fedpractice.com>
**Sent:** Thursday, June 30, 2022 11:55 AM
**To:** Gonzalez Horowitz, Brenda (USADC) <BGonzalezHorowitz@usa.doj.gov>; Timothy Parlatore

<timothy.parlatore@parlatorelawgroup.com>
**Cc:** Eric Montalvo <emontalvo@fedpractice.com>; 'wcowden@cowdenllc.com' <wcowden@cowdenllc.com>; Carol Thompson <CThompson@fedpractice.com>
**Subject:** Re: [EXTERNAL] Shaw v. Secretary Navy, et al.; Amended Rule 30(b)(6) Deposition Notice
**Importance:** High

Counsel,

Good morning.

I would like to follow up with you regarding my email below. Please advise of your availability for the proposed dates below. I would like to get the dates nailed down to avoid any conflicts.

Thank you.

Sincerely,



Cristina Lagarde | Executive Assistant
1750 K Street, NW, Suite 900 | Washington, DC 20006
202-862-4360 | Fax: 888-899-6053 | www.FedPractice.com
CELEBRATING 10 YEARS OF DIVERSITY AND LEADERSHIP IN THE PRACTICE OF LAW

   

**Attorney/Client Privileged, Protected and Confidential Communication. Confidentiality / Privilege Notice:** This transmission, including attachments, is intended solely for the use of the designated recipient(s). This transmission, including attachments, is intended solely for the use of the designated recipient(s). This transmission may contain information that is confidential and/or privileged and/or otherwise protected from disclosure. If you are not the intended recipient of this e-mail, or the employee or agent responsible for delivering such to the intended recipient, you are hereby notified that any use, disclosure or copying of this e-mail and any attachments is strictly prohibited. This transmission, including attachments, may be covered by the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.*, and any unlawful interceptions of such may be actionable under 18 U.S.C. § 2520. If you are not an intended recipient of this transmission, please immediately destroy all copies received and notify the sender.

**From:** Cristina Lagarde <clagarde@fedpractice.com>
**Sent:** Monday, June 27, 2022 4:12 PM
**To:** Gonzalez Horowitz, Brenda (USADC) <Brenda.Gonzalez.Horowitz@usdoj.gov>; Timothy Parlatore
<Timothy.parlatore@parlatorelawgroup.com>
**Cc:** Eric Montalvo <emontalvo@fedpractice.com>; 'wcowden@cowdenllc.com' <wcowden@cowdenllc.com>; Carol
Thompson <CThompson@fedpractice.com>
**Subject:** Fw: [EXTERNAL] Shaw v. Secretary Navy, et al.; Amended Rule 30(b)(6) Deposition Notice


Ms. Horowitz and Mr. Parlatore,


Good afternoon.


I am responding on Mr. Montalvo's and Mr. Cowden's behalf regarding deposition dates in reference to the
above captioned matter. Plaintiff is available on July 27-29 for the deposition.  Please advise.


Thank you.


Sincerely,




   

**Attorney/Client Privileged, Protected and Confidential Communication.  Confidentiality / Privilege Notice:**  This transmission, including attachments, is intended solely for the use of the designated recipient(s). This transmission, including attachments, is intended solely for the use of the designated recipient(s). This transmission may contain information that is confidential and/or privileged and/or otherwise protected from disclosure.  If you are not the intended recipient of this e-mail, or the employee or agent responsible for delivering such to the intended recipient, you are hereby notified that any use, disclosure or copying of this e-mail and any attachments is strictly prohibited.  This transmission, including attachments, may be covered by the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.*, and any unlawful interceptions of such may be actionable under 18 U.S.C. § 2520.  If you are not an intended recipient of this transmission, please immediately destroy all copies received and notify the sender.

**From:** Gonzalez Horowitz, Brenda (USADC) <Brenda.Gonzalez.Horowitz@usdoj.gov>
**Sent:** Tuesday, June 14, 2022 2:13 PM
**To:** wcowden@cowdenllc.com <wcowden@cowdenllc.com>; 'Timothy Parlatore, Esq.'
<timothy.parlatore@parlatorelawgroup.com>
**Cc:** Eric Montalvo <emontalvo@fedpractice.com>; Carol Thompson <CThompson@fedpractice.com>; Cristina Lagarde
<clagarde@fedpractice.com>
**Subject:** RE: [EXTERNAL] Shaw v. Secretary Navy, et al.; Amended Rule 30(b)(6) Deposition Notice

Bill – I have conflicts July 14th and 15th. I would suggest the 18th or 19th, but if you are seeking documents, I suspect you will want them before the deposition, which is going to be a nearly impossible timeframe for the Navy given that searches need to be run, documents need to be reviewed, etc. I think we will likely need to look beyond that week, especially considering that I will be in trial starting August 1 and will therefore be unavailable the week before trial.

I am dropping Bradley from this email communication since he was just covering the case in my absence.

Brenda

BRENDA GONZÁLEZ HOROWITZ

Assistant United States Attorney

Ph: (202) 252-2512 | Brenda.Gonzalez.Horowitz@usdoj.gov

**From:** wcowden@cowdenllc.com <wcowden@cowdenllc.com>
**Sent:** Tuesday, June 14, 2022 1:45 PM
**To:** Gonzalez Horowitz, Brenda (USADC) <BGonzalezHorowitz@usa.doj.gov>; Silverman, Bradley (USADC)
<BSilverman@usa.doj.gov>; 'Timothy Parlatore, Esq.' <timothy.parlatore@parlatorelawgroup.com>
**Cc:** Eric Montalvo <emontalvo@fedpractice.com>; Carol Thompson <CThompson@fedpractice.com>; Cristina Lagarde
<clagarde@fedpractice.com>
**Subject:** [EXTERNAL] Shaw v. Secretary Navy, et al.; Amended Rule 30(b)(6) Deposition Notice

Brenda/Bradley/Tim,

Good afternoon.

See attached Rule 30(b)(6) deposition notice that sets the deposition for July 14. If that date doesn't work, we can do the 13th or possibly the 15th. Please identify any conflicts this week because schedules are filling daily.

I have pared the notice but it's necessary to mention here that although DOJ has suggested to the court on several occasions it has withheld responsive documents only until the court ruled on the privilege issue Mr. Parlatore might (and then did) assert, this case concerns more than the disclosure(s) government officials made to Mr. Parlatore. The DOD-IG investigation determined that CDR Roberts widely disseminated Plaintiff's PA protected info to individuals before any disclosures to Mr. Parlatore occurred. According to Mr. Parlatore, he was hired by Roberts and others requiring his representation after these Naval officials prior disclosures of protected info were highlighted in the IG's report (which also suggested they be disciplined for misconduct). IG determined misconduct occurred through review of Roberts' and others' email systems, and from statements he and the others provided to the IG or to their superiors. Those documents have always been readily available to you given that they were already collected, they were never plausibly part of Mr. Parlatore's privilege claim involving later transmissions to him, and the government has failed to produce any of these other responsive documents. When can we expect to receive these other documents?

As to responsive documents concerning the transmission of the CDI and FNAEB to Mr. Parlatore/his agents, including the documents actually being transmitted (other than privileged redactions, of course), when can we expect to receive these materials—both from the Navy and from Mr. Parlatore? Presumably, these documents were collected some time ago.

Thank you.

Bill

*WILLIAM R. COWDEN*

WILLIAM COWDEN LLC

1750 K Street N.W., Suite 900

Washington, DC 20006

Main (202) 862-4360

Direct (202) 808-3140

Mobile (202) 642-0209

wcowden@cowdenllc.com

# Exhibit C

**Eric Montalvo**

| | |
|---|---|
| **From:** | Timothy Parlatore, Esq. <timothy.parlatore@parlatorelawgroup.com> |
| **Sent:** | Wednesday, August 24, 2022 12:31 PM |
| **To:** | Eric Montalvo |
| **Cc:** | Brenda; wcowden@cowdenllc.com; Carol Thompson; Cristina Lagarde; Daisy Chung; Laura Berry |
| **Subject:** | RE: [EXTERNAL] RE: Shaw v. Secretary Navy, et al.; Amended Rule 30(b)(6) Deposition Notice |

To be clear, you haven't really made any efforts to discuss availability with me on this deposition.  I can't imagine that it would last more than 20 minutes, due to the privilege issues, and I don't really need to do anything to prepare, so we can schedule it any time that I am available.  Do you want to discuss scheduling or just keep shooting in the dark?



CONFIDENTIAL NOTICE: This E-mail (including any attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received the message in error, please reply to notify the sender and then delete the message. Thank you.

https://lcardapp.com/lcard/timothy.parlatore-51814

On Wed, Aug 24, 2022 at 10:27 AM, Timothy Parlatore, Esq. <timothy.parlatore@parlatorelawgroup.com> wrote:
FYI, I just received an invite to a remote deposition tomorrow.  My understanding was that you were pushing these to the week of 9/12.  I am unavailable tomorrow and therefore declined the invitation.



CONFIDENTIAL NOTICE: This E-mail (including any attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received the message in error, please reply to notify the sender and then delete the message. Thank you.

https://lcardapp.com/lcard/timothy.parlatore-51814

On Wed, Aug 24, 2022 at 10:13 AM, Timothy Parlatore, Esq. <timothy.parlatore@parlatorelawgroup.com> wrote:
Is this a joke?  We all know that you have minimal understanding of attorney ethics and the Rules of Professional Conduct, but did you also miss the judge's decision the last time you tried to invade the attorney client file or raise privilege log issues? If you have a serious supplemental request, let me know, but this document is a frivolous effort to needlessly prolong and increase the costs of litigation.



CONFIDENTIAL NOTICE: This E-mail (including any attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received the message in error, please reply to notify the sender and then delete the message. Thank you.

https://lcardapp.com/lcard/timothy.parlatore-51814

On Tue, Aug 23, 2022 at 11:04 PM, Eric Montalvo <emontalvo@fedpractice.com> wrote:

ALCON:

Please see the attached.

R/

Eric S. Montalvo
Founding Partner



   

**Attorney/Client Privileged, Protected and Confidential Communication. Confidentiality / Privilege Notice:** This transmission, including attachments, is intended solely for the use of the designated recipient(s). This transmission, including attachments, is intended solely for the use of the designated recipient(s). This transmission may contain information that is confidential and/or privileged and/or otherwise protected from disclosure. If you are not the intended recipient of this e-mail, or the employee or agent responsible for delivering such to the intended recipient, you are hereby notified that any use, disclosure or copying of this e-mail and any attachments is strictly prohibited. This transmission, including attachments, may be covered by the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.*, and any unlawful interceptions of such may be actionable under 18 U.S.C. § 2520. If you are not an intended recipient of this transmission, please immediately destroy all copies received and notify the sender.

**From:** Timothy Parlatore, Esq. <timothy.parlatore@parlatorelawgroup.com>
**Sent:** Friday, August 19, 2022 6:00 AM
**To:** Eric Montalvo <emontalvo@fedpractice.com>
**Cc:** Brenda <Brenda.Gonzalez.Horowitz@usdoj.gov>; wcowden@cowdenllc.com; Carol Thompson <CThompson@fedpractice.com>; Cristina Lagarde <clagarde@fedpractice.com>; Daisy Chung

<[DChung@fedpractice.com](mailto:DChung@fedpractice.com)>; Laura Berry <[lberry@fedpractice.com](mailto:lberry@fedpractice.com)>
**Subject:** RE: [EXTERNAL] RE: Shaw v. Secretary Navy, et al.; Amended Rule 30(b)(6) Deposition Notice

Brenda has asked REPEATEDLY for Plaintiff's availability, so that we could amicably schedule these depositions. Are you now admitting that you intentionally refused to provide it so that you could go forward with unilateral scheduling? Obviously, such dishonest behavior would not surprise me from an attorney who thinks it is appropriate to show up in court and tell fabricated stories to the judge.



CONFIDENTIAL NOTICE: This E-mail (including any attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received the message in error, please reply to notify the sender and then delete the message. Thank you.

https://lcardapp.com/lcard/timothy.parlatore-51814

On Fri, Aug 19 2022 at 00:13, Eric Montalvo <[emontalvo@fedpractice.com](mailto:emontalvo@fedpractice.com)> wrote:

On August the 10th Mr. Cowden provided you via email the attached which you have acknowledged.  I do not recognize the "No" objection under the rules.  In other words – there is no such objection.  The deposition will proceed as noticed.  If you have counsel representing, you for the purpose of the deposition please advise.  If you are not present Plaintiff will seek appropriate relief.

Eric S. Montalvo
Founding Partner



   

**Attorney/Client Privileged, Protected and Confidential Communication. Confidentiality / Privilege Notice:** This transmission, including attachments, is intended solely for the use of the designated recipient(s). This transmission, including attachments, is intended solely for the use of the designated recipient(s). This transmission may contain information that is confidential and/or privileged and/or otherwise protected from disclosure. If you are not the intended recipient of this e-mail, or the employee or agent responsible for delivering such to the intended recipient, you are hereby notified that any use, disclosure or copying of this e-mail and any attachments is strictly prohibited. This transmission, including attachments, may be covered by the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.*, and any unlawful interceptions of such may be actionable under 18 U.S.C. § 2520. If you are not an intended recipient of this transmission, please immediately destroy all copies received and notify the sender.

**From:** Timothy Parlatore, Esq. <timothy.parlatore@parlatorelawgroup.com>
**Sent:** Thursday, August 18, 2022 11:09 PM
**To:** Eric Montalvo <emontalvo@fedpractice.com>
**Cc:** Brenda <Brenda.Gonzalez.Horowitz@usdoj.gov>; wcowden@cowdenllc.com; Carol Thompson <CThompson@fedpractice.com>; Cristina Lagarde <clagarde@fedpractice.com>; Daisy Chung <DChung@fedpractice.com>
**Subject:** RE: [EXTERNAL] RE: Shaw v. Secretary Navy, et al.; Amended Rule 30(b)(6) Deposition Notice

No, we will do plaintiff's first. As we all know, no competent lawyer would ever let Shaw go under oath to answer questions on the subject matter of this litigation. While I am looking forward to the amusement of watching Montalvo struggle to form coherent questions for me, I have no desire to waste time being deposed when the likelihood is that this case will be withdrawn or settled for the nuisance value before plaintiff can be deposed. Then again, Plaintiff did decide to hire Montalvo instead of a competent lawyer, so maybe you are dumb enough to let him be deposed…



CONFIDENTIAL NOTICE: This E-mail (including any attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received the message in error, please reply to notify the sender and then delete the message. Thank you.

https://lcardapp.com/lcard/timothy.parlatore-51814

On Thu, Aug 18 2022 at 23:03, Eric Montalvo <emontalvo@fedpractice.com> wrote:

Mr. Parlatore,

Good evening.  I did have a misunderstanding.  I was informed that you had made an objection but upon review this objection is not valid and therefore we will proceed next week as noticed.

Daisy/ Cristina – please make sure the logistics are taken care of.

R/

Eric S. Montalvo
Founding Partner



   

**Attorney/Client Privileged, Protected and Confidential Communication. Confidentiality / Privilege Notice:** This transmission, including attachments, is intended solely for the use of the designated recipient(s). This transmission, including attachments, is intended solely for the use of the designated recipient(s). This transmission may contain information that is confidential and/or privileged and/or otherwise protected from disclosure.  If you are not the intended recipient of this e-mail, or the employee or agent responsible for delivering such to the intended recipient, you are hereby notified that any use, disclosure or copying of this e-mail and any attachments is strictly prohibited.  This transmission, including attachments, may be covered by the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.*, and any unlawful interceptions of such may be actionable under 18 U.S.C. § 2520.  If you are not an intended recipient of this transmission, please immediately destroy all copies received and notify the sender.

**From:** Timothy Parlatore, Esq. <timothy.parlatore@parlatorelawgroup.com>
**Sent:** Thursday, August 18, 2022 7:17 AM
**To:** Eric Montalvo <emontalvo@fedpractice.com>
**Cc:** Brenda <Brenda.Gonzalez.Horowitz@usdoj.gov>; wcowden@cowdenllc.com; Carol Thompson <CThompson@fedpractice.com>; Cristina Lagarde <clagarde@fedpractice.com>
**Subject:** RE: [EXTERNAL] RE: Shaw v. Secretary Navy, et al.; Amended Rule 30(b)(6) Deposition Notice

As stated multiple times, you can depose me after Plaintiff's deposition.

CONFIDENTIAL NOTICE: This E-mail (including any attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received the message in error, please reply to notify the sender and then delete the message. Thank you.

https://lcardapp.com/lcard/timothy.parlatore-51814

On Thu, Aug 18 2022 at 03:43, Eric Montalvo <emontalvo@fedpractice.com> wrote:

Ms. Gonzalez/ Mr. Parlatore:

1. We will notice the depositions for the week of September 12th.  I have another proceeding with the DC bar that week and will need to deconflict.  You will receive the updated notice by Friday.  Most likely the 15th or 16th.
2. I will also be noticing Mr. Parlatore on one of those days.  If there is an objection to that week indicate as much and provide your availability or we will have to notice you again.
3. Provide your availability after the week of the 12th and I will send dates that work for Plaintiff
4. I will be sending another meet and confer letter today which will address, inter alia, the failure of the government to provide discovery.  Please provide your availability to telephonically confer.

Daisy – please get with me regarding the updated notices.

R/

ESM

Eric S. Montalvo
Founding Partner



   

**Attorney/Client Privileged, Protected and Confidential Communication. Confidentiality / Privilege Notice:** This transmission, including attachments, is intended solely for the use of the designated recipient(s). This transmission, including attachments, is intended solely for the use of the designated recipient(s). This transmission may contain information that is confidential and/or privileged and/or otherwise protected from disclosure. If you are not the intended recipient of this e-mail, or the employee or agent responsible for delivering such to the intended recipient, you are hereby notified that any use, disclosure or copying of this e-mail and any attachments is strictly prohibited. This transmission, including attachments, may be covered by the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.*, and any unlawful interceptions of such may be actionable under 18 U.S.C. § 2520. If you are not an intended recipient of this transmission, please immediately destroy all copies received and notify the sender.

**From:** Gonzalez Horowitz, Brenda (USADC) <Brenda.Gonzalez.Horowitz@usdoj.gov>
**Sent:** Tuesday, August 16, 2022 7:18 PM
**To:** wcowden@cowdenllc.com; 'Timothy Parlatore, Esq.' <timothy.parlatore@parlatorelawgroup.com>
**Cc:** Eric Montalvo <emontalvo@fedpractice.com>; Carol Thompson <CThompson@fedpractice.com>; Cristina Lagarde <clagarde@fedpractice.com>
**Subject:** RE: [EXTERNAL] RE: Shaw v. Secretary Navy, et al.; Amended Rule 30(b)(6) Deposition Notice

Bill – received. The date proposed by Plaintiff does not work for either me or the agency deponent. We are largely available the week of September 12. Please let me know if there is a date that week that is agreeable.

Please also provide dates for Plaintiff's deposition, or I will notice it for a date that works with my schedule.

Thanks,

Brenda

**BRENDA GONZÁLEZ HOROWITZ**

Assistant United States Attorney

Ph: (202) 252-2512 | Brenda.Gonzalez.Horowitz@usdoj.gov

---

**From:** wcowden@cowdenllc.com <wcowden@cowdenllc.com>
**Sent:** Wednesday, August 10, 2022 12:40 PM
**To:** Gonzalez Horowitz, Brenda (USADC) <BGonzalezHorowitz@usa.doj.gov>; 'Timothy Parlatore, Esq.'
<timothy.parlatore@parlatorelawgroup.com>
**Cc:** 'Eric Montalvo' <emontalvo@fedpractice.com>; 'Carol Thompson' <CThompson@fedpractice.com>; 'Cristina
Lagarde' <clagarde@fedpractice.com>
**Subject:** [EXTERNAL] RE: Shaw v. Secretary Navy, et al.; Amended Rule 30(b)(6) Deposition Notice

Brenda/Tim,

Good afternoon.

See attached Rule 30(b)(6) deposition notice that sets the deposition for Wednesday, August 24, 2022. If that date
doesn't work, we can set it for the next day, Thursday, August 25th.

Other than resetting the date from July 2022 to August 2022 (and dropping Mr. Silverman from the cert. of service),
this Notice is identical to the notice served almost two months ago, on June 14, 2022.

Regards,

Bill

*WILLIAM R. COWDEN*

WILLIAM COWDEN LLC

1750 K Street N.W., Suite 900

Washington, DC 20006

Main (202) 862-4360

Direct (202) 808-3140

Mobile (202) 642-0209

wcowden@cowdenllc.com

---

**From:** wcowden@cowdenllc.com <wcowden@cowdenllc.com>
**Sent:** Tuesday, June 14, 2022 1:45 PM
**To:** Gonzalez Horowitz, Brenda (USADC) <Brenda.Gonzalez.Horowitz@usdoj.gov>; 'Silverman, Bradley (USADC)' <Bradley.Silverman@usdoj.gov>; 'Timothy Parlatore, Esq.' <timothy.parlatore@parlatorelawgroup.com>
**Cc:** Eric Montalvo <emontalvo@fedpractice.com>; Carol Thompson <CThompson@fedpractice.com>; Cristina Lagarde <clagarde@fedpractice.com>
**Subject:** Shaw v. Secretary Navy, et al.; Amended Rule 30(b)(6) Deposition Notice

Brenda/Bradley/Tim,

Good afternoon.

See attached Rule 30(b)(6) deposition notice that sets the deposition for July 14. If that date doesn't work, we can do the 13th or possibly the 15th. Please identify any conflicts this week because schedules are filling daily.

I have pared the notice but it's necessary to mention here that although DOJ has suggested to the court on several occasions it has withheld responsive documents only until the court ruled on the privilege issue Mr. Parlatore might (and then did) assert, this case concerns more than the disclosure(s) government officials made to Mr. Parlatore. The DOD-IG investigation determined that CDR Roberts widely disseminated Plaintiff's PA protected info to individuals before any disclosures to Mr. Parlatore occurred. According to Mr. Parlatore, he was hired by Roberts and others requiring his representation after these Naval officials prior disclosures of protected info were highlighted in the IG's report (which also suggested they be disciplined for misconduct). IG determined misconduct occurred through review of Roberts' and others' email systems, and from statements he and the others provided to the IG or to their superiors. Those documents have always been readily available to you given that they were already collected, they were never plausibly part of Mr. Parlatore's privilege claim involving later transmissions to him, and the government has failed to produce any of these other responsive documents. When can we expect to receive these other documents?

As to responsive documents concerning the transmission of the CDI and FNAEB to Mr. Parlatore/his agents, including the documents actually being transmitted (other than privileged redactions, of course), when can we expect to receive these materials—both from the Navy and from Mr. Parlatore? Presumably, these documents were collected some time ago.

Thank you.


Bill


*WILLIAM R. COWDEN*

WILLIAM COWDEN LLC

1750 K Street N.W., Suite 900

Washington, DC 20006

Main (202) 862-4360

Direct (202) 808-3140

Mobile (202) 642-0209

wcowden@cowdenllc.com

# Exhibit D

**FPG**

# Federal Practice Group
## Aggressive ● Innovative ● Global

Eric S. Montalvo
Lic: DC, PA, NJ
emontalvo@fedpractice.com

October 15, 2021

**VIA ELECTRONIC MAIL**
Brenda Gonzalez Horowitz
Assistant United States Attorney
Civil Division, U.S. Attorney's Office for the District of Columbia
555 Fourth Street, NW | Washington, D.C. 20530
Ph: (202) 252-2512 | Brenda.Gonzalez.Horowitz@usdoj.gov

      Re:    **Discovery Meet and Confer**

Ms. Horowitz:

      The purpose of this correspondence is to respond to your continuing objections to our discovery requests.

      The Privacy Act prohibits: (1) the intentional or willful disclosure by any means of communication to any person, or to another agency (2) of any record about an individual or the contents of any such record (3) without prior written consent (4) the disclosure of which caused the individual to suffer actual damages (5) unless the disclosure is pursuant to one of twelve statutory exceptions.

      Defendant Navy has previously responded as follows:

      If you are claiming that that any "disclosure" fell within one or more of the exceptions stated in 5 U.S.C Section 552a(b)(1)-(12), state which exception that you are claiming and why. Response: **Based on current knowledge and subject to the right to supplement the interrogatories, the Navy does not currently claim any exception.**

      Defendant Navy has identified the following individuals as having discoverable information that may have information supporting its claims:

      **CDR Bryan C. Roberts**, USN— c/o Parlatore Law Group, LLP, One World Trade Center, Suite, 8500, New York, New York 10007; 212-679-6312. CDR Roberts conducted an investigation into Plaintiff. He has information regarding that investigation.

      **CDR Martin L. Weyenberg**, USN (Retired)—c/o Parlatore Law Group, LLP, One World Trade Center, Suite, 8500, New York, New York 10007; 212-679-6312. Mr. Weyenberg is a former commanding officer of Strike Fighter Squadron ONE ZERO SIX

(VFA-106). He has information regarding the investigations into Plaintiff.

**Lt. Col. Michael C. Nesbitt**, USMC (Retired) —c/o Parlatore Law Group, LLP, One World Trade Center, Suite, 8500, New York, New York 10007; 212-679-6312. Mr. Nesbitt is a former executive officer of Strike Fighter Squadron ONE ZERO SIX (VFA-106). He has information regarding the investigations into Plaintiff.

**CAPT Marc S. Rosen**, JAGC, USN—CAPT Rosen has been the Force Judge Advocate for Commander, Naval Air Force Atlantic, since July 23, 2019. He has information regarding the Navy's investigations into LT Shaw. 6.

**CAPT Peter D. Galindez**, JAGC, USN—CAPT Galindez was the Force Judge Advocate for Commander, Naval Air Force Atlantic, prior to July 23, 2019. He has information regarding the Navy's investigations into LT Shaw.

Defendant Navy responded to the initial disclosures as follows:

**The Navy continues to process the whistleblower reprisal case referenced in the complaint.** The Navy has not conducted separate criminal and/or administrative investigations in response to Plaintiff's complaint alleging unlawful disclosure of his Privacy Act protected information. Plaintiff alleges unauthorized disclosures to an attorney, co-defendant Mr. Parlatore. **The Navy determined that this litigation is best suited to determine legal issues regarding alleged unauthorized disclosures from client to attorney.**

Cmdr. Bryan Roberts was found to have done the following:

instances of CDR Roberts disclosing to at least 20 witnesses or personnel the Complainant's filing of congressional and IG complaints, and communicating that there was a high probability the Complainant was going to file another complaint;

**CDR Roberts transmitting and receiving CDI information containing For Official Use Only (FOUO), Personally Identifiable Information (PII), Controlled but Unclassified, and Sensitive but Unclassified materials to or through private e-mail accounts of DoN civilian and military personnel;**

**CDR Roberts sending FOUO CDI details or evidence to military, DoN civilian, and non-DoD personnel who had no need to know; CDR Roberts requesting multiple "offline" conversations with senior naval personnel in positions that**

October 16, 2021
PAGE 3 OF 4

> **could influence the Complainant's career or future assignment about their awareness of the Complainant's reputation, or whether they would want him assigned to their squadron; and**
>
> On July 2, 2018, CDR Roberts e-mailed a draft copy of the CDI report to Ms. Priest.
>
> On July 19, 2018, CDR Roberts emailed LCDR Colberg a draft copy of the CDI from his personal e-mail account. In his e-mail, CDR Roberts stated, **'Let the light at the end of the tunnel by a train. May this attachment be that train.**

DoDIG Report dtd June 12, 2019 20180516-051435-CASE-01 (IG Report). Further the IG Report found the following:

> Commander (CDR) Martin Weyenberg, USN, VFA-106 former Commanding Officer (CO), and Lieutenant Colonel (LtCol) Michael Nesbitt, United States Marine Corps (USMC), VFA-106 Executive Officer (XO), removed his instructional duties.
> • CDR Weyenberg and LtCol Nesbitt reassigned the Complainant to a position that was not commensurate with his grade.
> • LtCol Nesbitt threatened the Complainant with disciplinary action.
> • LtCol Nesbitt requested the conduct and scope, CDR Weyenberg initiated, and CDR Bryan Roberts, USN, Strike Fighter Wing Atlantic (SFWL) Staff Officer, NAS Oceana, conducted a retaliatory investigation for the primary purpose of punishing, harassing, or ostracizing the Complainant.
> • CDR Weyenberg issued the Complainant an unfavorable Fitness Report (FITREP
>
> We also recommend the Secretary of the Navy take appropriate action against CDR Weyenberg, LtCol Nesbitt, and CDR Roberts for reprising against the Complainant.

The discovery requested is specifically focused on the communications generated by the offending individuals who reprised against Lt. Shaw by, *inter alia*, in unlawful disclosures for the specified purpose of ruining his reputation and building a false record to prosecute him. These disclosures have had their affect to the point of a major industry airline community website which has been a top website for airline professionals openly discussing the protected material and calling for him to be blackballed while suggesting how to ensure that happens. Several individuals listed in our discovery requests were identified as having responsive material. All of their communications had during the investigation and unlawful disclosures predate any attorney-client relationship and were not made to an attorney – they were made to each other. Their conduct was determined to be unlawful and likely criminal by the IG.

October 16, 2021
PAGE 4 OF 4

      Requests for disciplinary actions relating to these disclosures and conduct, as well as the communications that embodied this unlawful conduct are evidence of the intentional and willful disclosure, the records and information that was disclosed, that there was no prior written consent, and that no statutory exception applies which has been admitted by Defendant Navy. None of these requests is irrelevant, overbroad, or overly burdensome.  They are the evidence within the Navy's possession that are properly discoverable.

      The Navy has withheld these communications under the guise of some privilege asserted by Mr. Parlatore.  This is without basis in law.  These non-clients cannot later cloak their criminal conduct or claim privilege by hiring an attorney and sending him/her the information. The communications that existed and were reviewed by the DODIG and the Navy are discoverable.  They are direct evidence of the violations.  No privilege has been asserted or exists for the Navy.

      SECNAVINST 5211.5F states that "any misuse or unauthorized disclosure of PII may result in **both civil and criminal penalties**. All collection, use, maintenance, or dissemination of PII will be in accordance with the Privacy Act of 1974, as amended (reference (a)) and this document.  As stated, the offending communications and distributions were between other Navy officials and civilian for the purpose of "kamikaze" Lt. Shaw.  See USA00077.  Further, notwithstanding several requests, the additional investigation into the wrongful disclosures has not been produced.  The existence of this second DODIG investigation was confirmed as recently by May 19, 2021 AUSA Schaefer.  Defendant Navy cannot claim that the discovery requests are irrelevant, overboard, or unduly burdensome when Defendant Navy concedes their relevance in their own responses and has just recently propounded similar requests upon Plaintiff.

      The requested material must be produced.

               Respectfully submitted,

               Eric S. Montalvo

# Exhibit E

**Eric Montalvo**

| | |
|---|---|
| **From:** | Eric Montalvo |
| **Sent:** | Saturday, October 16, 2021 12:13 PM |
| **To:** | Gonzalez Horowitz, Brenda (USADC) |
| **Cc:** | 'wcowden@cowdenllc.com'; Carol Thompson; Cristina Lagarde |
| **Subject:** | Shaw v. Navy et al., Navy's Discovery - Meet and Confer - PROTECTED MATERIAL |
| **Attachments:** | Meet and Confer.pdf |

NOTE – There is protected material contained within the document.

R/

Eric S. Montalvo
Founding Partner



   

**Attorney/Client Privileged, Protected and Confidential Communication. Confidentiality / Privilege Notice:** This transmission, including attachments, is intended solely for the use of the designated recipient(s). This transmission, including attachments, is intended solely for the use of the designated recipient(s). This transmission may contain information that is confidential and/or privileged and/or otherwise protected from disclosure. If you are not the intended recipient of this e-mail, or the employee or agent responsible for delivering such to the intended recipient, you are hereby notified that any use, disclosure or copying of this e-mail and any attachments is strictly prohibited. This transmission, including attachments, may be covered by the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.*, and any unlawful interceptions of such may be actionable under 18 U.S.C. § 2520. If you are not an intended recipient of this transmission, please immediately destroy all copies received and notify the sender.

# Exhibit F

**Eric Montalvo**

| | |
|---|---|
| **From:** | Gonzalez Horowitz, Brenda (USADC) <Brenda.Gonzalez.Horowitz@usdoj.gov> |
| **To:** | Eric Montalvo |
| **Sent:** | Saturday, October 16, 2021 12:47 PM |
| **Subject:** | Read: [EXTERNAL] Shaw v. Navy et al., Navy's Discovery - Meet and Confer - PROTECTED MATERIAL |

Your message

 To:
 Subject: Shaw v. Navy et al., Navy's Discovery - Meet and Confer - PROTECTED MATERIAL
 Sent: Saturday, October 16, 2021 4:47:07 PM (UTC+00:00) Monrovia, Reykjavik

 was read on Saturday, October 16, 2021 4:46:54 PM (UTC+00:00) Monrovia, Reykjavik.

# Exhibit G

**Federal Practice Group**
Aggressive ◗ Innovative ◗ Global

Eric S. Montalvo
Lic: DC, PA, NJ
emontalvo@fedpractice.com

July 9, 2022

**VIA ELECTRONIC MAIL**
Brenda Gonzalez Horowitz
Assistant United States Attorney
Civil Division, U.S. Attorney's Office for the District of Columbia
555 Fourth Street, NW | Washington, D.C. 20530
Ph: (202) 252-2512 | Brenda.Gonzalez.Horowitz@usdoj.gov

> Re:     **Discovery Meet and Confer**

Ms. Horowitz:

The purpose of this correspondence is to respond to your continuing objections to our discovery requests.

In Defendant Navy's most recent email dated July 5, 2022 you stated the following:

> I believe you are misinterpreting the government's response to plaintiff's discovery request no. 7. In the portion you highlighted, we merely stated that we were preserving emails – as in, the email boxes, not that we had conducted a search for the responsive records and had set them aside. **Your belief that we conducted a search for responsive records and withheld them for a year makes no sense** given that we have consistently stated that the entire request was overbroad and unduly reasonable based on the broad nature of the search terms, the timeframes, and the custodians.

(Emphasis mine.)

Yet, this is precisely what the Government stated in its first responses and objections to Plaintiff's first set of document requests.  The Government's Response and Objections to Plaintiff's First Set of Interrogatories and Document Requests in response to request no. 7 is as follows:

> Produce all correspondence from a .mil electronic mail address, beginning November 1, 2017 through present, which references "Steven," "Shaw," "Ashely," "Savage," "VFA-106 (or the full name of the Squadron)," either individually or any combination therewith in the subject line, in the body of the email, or in any attachment to the email, and in which the following individuals were on the "To", "From," "CC," or "BCC" line: a. Cmdr. Bryan Roberts b. Cmdr. Martin Weyenberg c. Cmdr. Brandon Scott d. Lt. Col. Michael Nesbitt e. Captain Christopher Boyle (Commodore) f. Captain Kevin McLaughlin (Commodore) g. Captain Brian Becker (Commodore) h. Captain Ted Ricciardella (Assist. Commodore) i. Vice Admiral Bruce Lindsey (CNAL) j. Rear Admiral Roy Kelley (CNAL) k. Rear Admiral John Meier (CNAL) l. Vice Admiral DeWolfe Miller (CNAF) m. Admiral Christopher Grady (USFF) n. Admiral John

July 9, 2022
PAGE 2 OF 3

Richardson (CNO) o. Admiral Michael Gilday (CNO) p. Lieutenant Commander Barbara Colberg (SJA) q. Captain Peter Galindez (SJA) r.

Commander Brandon Keith (SJA) s. Lieutenant Commander Ingrid Paige (SJA) Response: Defendant objects as irrelevant, overboard, and overly burdensome. **To the extent that emails from Cmdr. Bryan Roberts, Cmdr. Martin Weyenberg, Cmdr. Brandon Scott, and Lt. Col. Michael Nesbitt to Mr. Parlatore could be relevant to Plaintiff's Privacy Act claim, <u>Defendant has preserved available emails pending resolution of any claim of privilege asserted by Mr. Parlatore.</u>**

(Emphasis mine.)

The Navy continues to process the whistleblower reprisal case referenced in the complaint. The Navy has not conducted separate criminal and/or administrative investigations in response to Plaintiff's complaint alleging unlawful disclosure of his Privacy Act protected information. Plaintiff alleges unauthorized disclosures to an attorney, co-defendant Mr. Parlatore. **The Navy determined that this litigation is best suited to determine legal issues regarding alleged unauthorized disclosures from client to attorney.**

These responses clearly demonstrate that searches were performed and discovery withheld as described *supra*, not as alleged in the above referenced email.

Defendant Navy then goes on to state, "Amongst all of this back and forth, and representations from Mr. Montalvo over a year ago that Plaintiff would revise Request No. 7 – I have yet to actually receive a revised request for documents."

Once again this is a false statement and a clear misrepresentation to the Court. *See* Encls (1-2). A meet and confer statement was served on Defendant Navy on or about October 16, 2021 ("Letter") and the Navy has yet to respond. The Letter is attached again here for reference and narrows the scope of discovery. This request can be satisfied almost entirely by the Government producing the investigative file associated with the DoDIG Report of Investigation (ECF No. 2-2). This report/investigation describes in detail conduct by Defendant Navy that relates to the unlawful release by Defendant of Plaintiff's Privacy Act Protected Information. This information should have been provided based on one or all of the additional Plaintiff's requests for production, all of which the Government has likewise ignored, including:

3. Produce all documents referred to in the answer to the complaint and other pleadings, as the word "pleadings" is defined in Fed. R. Civ. P. 7(a).

9. Produce all documents (including, but not limited to, correspondence, notes, memoranda, journal entries, and all forms of electronic communication) which relate to, describe, summarize, or make any material reference to the following: a. Shaw CDI b. FNAEB c. Command Climate Survey d. ASN Letter e. Second Shaw CDI.

11. Produce all reports or investigations conducted by Defendant, from November 1, 2017 to present, relating to the unlawful release of Privacy Act protected information by Defendant. Response: Subject to and without waiving its General Objections, Defendant responds by stating that after

July 9, 2022
PAGE 3 OF 3

reasonable inquiry, it did not locate any records responsive to this request.

12. Produce all reports and investigations conducted by Defendant, from November 1, 2017 to present, relating to the unlawful distribution of Plaintiff's Privacy Act protected information as alleged in the Complaint.

As described in the attached meet and confer statement of October 16, 2021, the information sought is clear, the source identified, and relevant. It is also noteworthy that Defendant Navy has propounded the following requests for production to Plaintiff:

Request No. 3: All documents including but not limited to emails and text messages allegedly prepared, transmitted or received by CDR Weyenberg, CDR Roberts, CDR Scott and/or LtCol Nesbitt including but not limited to those identified or referenced in the Complaint from January 1, 2018 until January 1, 2020.

Request No. 14: Produce all documents that support your contention that CDR Roberts 14 published or disseminated the CDI to individuals who did not have a "need to know" as alleged in paragraph sixteen (16) of the Complaint.

Request No. 15: All documents that support your contention that a copy of the CDI was distributed to members of the commercial airline industry.

Setting aside the obvious conflict with Defendant Navy's asserted position regarding Plaintiff's requests in terms of scope, the Navy's own requests demonstrate Defendant Navy's acknowledgement that they are relevant. Defendant Navy must produce the requested discovery without further delay. Nothing in the attached meet and confer or this correspondence overrides Mr. Cowden's email of June 14, 2022 found at Encl (3) and indeed is consistent and also failed to be responded to.

Given the extended delay in provision of Defendant's discovery all milestones need to be adjusted. As such, discovery must be produced, and Defendant Navy draft a Joint Stipulation outlining the new dates for review.

Respectfully submitted,

Eric S. Montalvo

Enclosures: 1. Email btw Plaintiff and Defendant Navy dtd Oct 16, 2022.
2. Meet and Confer Letter dtd Oct 16, 2022 – Also attachment to Encl 1.
3. Email btw Plaintiff and Defendant Navy/ Parlatore dtd Jun 14, 2022.
4. Email read receipt Gonzalez Horowitz dtd October 16, 2021.

# Exhibit H

**Eric Montalvo**

| | |
|---|---|
| **From:** | Gonzalez Horowitz, Brenda (USADC) <Brenda.Gonzalez.Horowitz@usdoj.gov> |
| **To:** | Eric Montalvo |
| **Sent:** | Sunday, July 10, 2022 2:52 PM |
| **Subject:** | Read: RE: [EXTERNAL] Shaw v. Secretary Navy, et al.; Amended Rule 30(b)(6) Deposition Notice |

Your message

  To:
  Subject: [EXTERNAL] Shaw v. Secretary Navy, et al.; Amended Rule 30(b)(6) Deposition Notice
  Sent: Sunday, July 10, 2022 6:52:21 PM (UTC+00:00) Monrovia, Reykjavik

 was read on Sunday, July 10, 2022 6:52:08 PM (UTC+00:00) Monrovia, Reykjavik.

# Exhibit I



Eric S. Montalvo
Lic: DC, PA, NJ
emontalvo@fedpractice.com

August 23, 2022

**VIA ELECTRONIC MAIL**
Brenda Gonzalez Horowitz
Assistant United States Attorney, Civil Division
601 D Street N.W.
Washington, D.C. 20530
(202) 252-2512
Brenda.gonzalez.horowitz@usdoj.gov

   Re: **Discovery Meet and Confer**

Ms. Horowitz:

The purpose of this correspondence is to meet and confer regarding several issues pertaining to discovery that need immediate resolution.

On June 10, 2022, the Court granted in part Plaintiff's motion to compel. Per Defendant Navy's request to extend discovery, the parties entered into a Joint Stipulation in which the Court ordered the following on August 1, 2022:

> MINUTE ORDER: Upon consideration of the parties' joint motion for extension of time to complete discovery and plaintiff's motion to extend the discovery deadline, it is hereby ORDERED that the motion is GRANTED. Discovery shall close on October 31, 2022. It is further ORDERED that all Parties' experts shall be designated, and any designating Party shall provide a written report consistent with Fed. R. Civ. P.
>
> 26(a)(2)(B) no later than September 9, 2022 and that any rebuttal experts shall be designated no later than September 30, 2022, and the designating party shall provide a written report consistent with Fed. R. Civ. P. 26(a)(2)(B) no later than that date. Any expert depositions shall be completed on or before October 31, 2022. Signed by Judge Randolph D. Moss on 08/01/2022.

**Motion to Compel**

Since August 5, 2020 no additional discovery has been provided by Defendant. Given the recent indications that the discovery will be redacted there is serious concern that The Government's responses to any and all requests have been untimely. Worse – by your own admission – no search had even begun as of last month. There are a minimum of three thousand pages of responsive material that exist.

August 22, 2022
PAGE 2 OF 3

On June 10, 2022 you were ordered to provide additional discovery. On June 14, 2022 and then again July 26, 2022 you indicated via email that you would be providing the discovery in compliance with the court's order. In total it has now been over ten weeks with **NO** discovery produced.

If the full production of discovery is not accomplished by **COB August 26, 2022**, we will be requesting a hearing before the Court, motion to compel, and seek sanctions.  The failure of the Government to provide discovery is prejudicing the Plaintiff and will prevent Plaintiff from being able to comply with the new milestones.  Defendant Navy refused to extend discovery out beyond October 31, 2022.  The Court has placed the parties on a strict/ tight schedule in line with what Defendant Navy demanded.  We will also be seeking an extension of Plaintiff's discovery.

> Here, the plaintiffs' document requests sought to capture the reasons for particular decisions to promote or not promote agents which are highly relevant to establishing an employer's discriminatory motive. Given that the defendant has failed to fully comply with the obligation to locate and produce these relevant decisionmaker documents, and the finding that this failure continued a pattern and practice of obduracy in discovery production, the magistrate did not err in finding that, despite the significant volume of discovery already produced, the plaintiffs have been prejudiced by the defendant's failure to search adequately for and produce decisionmaker documents.  Similarly, the defendant's suggestion that the magistrate judge had no basis to conclude that the plaintiffs wasted time, money, and effort in pursuit of the defendant's cooperation lacks merit. The plaintiffs filed and successfully litigated a motion to compel the defendant to conduct reasonable searches for documents, and yet, as is discussed above, the plaintiffs still have not received the defendant's full cooperation. The plaintiffs engaged in months of inevitably costly discovery efforts lacking the documents that could have sharpened or sped *182 their inquiries.

*Moore v. Napolitano*, 723 F.Supp.2d 167, 181-2 (2010).  The failure to search for discovery two years into the case, failure to agree to a reasonable extension of discovery to ensure proper production, and a disregard of the Court's order for Defendant's to produce discovery ten weeks and counting has prejudiced Plaintiff.  The Plaintiff has been prejudiced by the Defendant's failure to search adequately for and produce discovery.  Plaintiff has "wasted time, money, and effort in the pursuit of Defendant's cooperation." [1]  Plaintiff is now also prejudiced given that there are over three thousand documents pending provision and requiring review to facilitate its expert review.  The failure to produce timely discovery is also prejudicing the Plaintiff's ability to properly prepare and conduct its noticed depositions.

**30(b)(6) Document Authentication**

Please see the attached list of documents that require authentication and verification of status of personnel by the deponent.  *See* encl (1).

---

[1] *Danik v. U.S. Department of Justice*, 463 F.Supp.3d 1 (2020)(Where Ms. Gonzales as counsel for the FBI has presided over a similar frustration of discovery).

August 22, 2022
PAGE 3 OF 3


Please provide your availability to Ms. Lagarde clagarde@fedpractice.com to coordinate a call to discuss.

Regards,

Eric S. Montalvo

Enclosures: 1. Authentication/ Verification List
　　　　　　2. Deposition Notice


cc: Timothy Parlatore, Esq.

# Exhibit J



**Federal Practice Group**
Aggressive ● Innovative ● Global

CELEBRATING 10 YEARS OF DIVERSITY AND LEADERSHIP IN THE PRACTICE OF LAW

Eric S. Montalvo
Lic: DC, PA, NJ
emontalvo@fedpractice.com

August 26, 2022

**<u>VIA ELECTRONIC MAIL ONLY</u>**

Brenda Gonzalez Horowitz
Assistant United States Attorney, Civil Division
601 D Street N.W.
Washington, D.C. 20530
(202) 252-2512
Brenda.gonzalez.horowitz@usdoj.gov

Timothy C. Parlatore, Esq.
One World Trade Center, Suite 8500
New York, NY  10007
timothy.parlatore@parlatorelawgroup.com

Re:     <u>Docket No. 20-cv-410 – Objection to Notice of Deposition and Invitation To Meet
         and Confer</u>

Ms. Gonzalez and Mr. Parlatore:

Pursuant to Fed. R. Civ. P. 26(c)(1) and LCvR 7(m), please accept this letter as notice of Plaintiff Steven Shaw's objection to your August 19, 2022 and August 25, 2022 Notice of Deposition to depose Lt. Shaw on September 12, 2022 by virtual means, and September 14, 2022 as an invitation to meet and confer regarding resolution of this matter prior to seeking a Protective Order from the Court.

As you will note from the Objection to Notice of Deposition enclosed herein, Lt. Shaw objects to the deposition as noticed due to unavailability of counsel on these dates. Unfortunately, other matters before the D.C. Bar demand the attention of counsel and were scheduled in advance of the receipt of the Notice of Deposition. These matters are not subject to being rescheduled.

I noted this in my August 18, 2022 stating in response to the Government's requests for Lt. Shaw's availability "[p]rovide your availability after the week of the 12th and I will send dates that work for Plaintiff."  This was completely disregarded along with my three previous meet and confer letters which are hereby referenced and incorporated within.  Mr. Parlatore's deposition was properly notice.  No proper objection was made and Mr. Parlatore failed to show. Please see a second notice attached for Mr. Parlatore's deposition.

August 26, 2022
PAGE 2 OF 3

These notices were propounded without any prior consultation regarding availability of counsel or Lt. Shaw to sit for deposition on that date and time. The Court's demand that counsel make all efforts to resolve discovery matters prior to availing the court.  While there is currently no rule requiring you to do so, you are no doubt aware that it has become the *de facto* procedure in our profession to discuss deposition dates with counsel prior to issuing a notice of deposition. Adherence to this practice allows parties to avoid this very situation.

The widespread nature of this practice is due, in no small part, to the frustration expressed by courts to the disputes that invariably arise when this practice is not adhered to (disputes which the courts are then called upon to resolve). In particular, as one D.C. District Court Magistrate Judge noted, if a party "never bothered to confer with his opponent prior to noticing a deposition, is it really surprising that [the noticed parties] were, on several occasions, unable to attend?" *Caldwell v. Ctr. For Corr. Health,* 228 F.R.D. 40, 42 (D.D.C. June 3, 2005). More directly, courts have found that noticing a deposition "without first conferring . . . on a date was not a preferred practice and is not an approach that any counsel here should repeat[.] *Andra Group, LP v. JDA Software Group, Inc.,* 2015 U.S. Dist. LEXIS 123804, *9 (N.D. Tex., Apr. 13, 2015).

Once again, the requested discovery has not been provided in this case.  Mr. Parlatore provided three documents in discovery and no privilege log.  The Government has been absent. These deliberate failures to provided discovery have prejudiced Plaintiff as articulated in the August 23, 2022 meet and confer.  If discovery is not provided then this will also be addressed to the Court.

In an attempt to resolve this dispute without the necessity of burdening the Court with a motion for a Protective Order, I invite you to meet and confer in an attempt to resolve this situation. As time is of the essence, I am requesting that you make contact to schedule a meet and confer prior to 5:00 p.m. ET on August 29, 2022. Should you decline to engage in the meet and confer prior to that time, or should a conference fail to resolve the situation, we will move forward with a Motion for Protective Order.

Mr. Parlatore, please be advised that in my view you have run afoul of Rule 3.4 of the DC Rules of Professional Conduct which have sworn to abide by, and ethics rules require you to given that the jurisdiction you are practicing in is the District of Columbia – a jurisdiction you hold yourself out to be a member of as well.  I encourage you to consider this rule prior to making any further statements in this case or any other within the District of Columbia.

Please confirm your availability for the meet and confer with Ms. Lagarde and Counsel at clagarde@fedpractice.com.

August 26, 2022
PAGE 3 OF 3

Regards,

Eric S. Montalvo

Enclosures:

1. Objection to Notice of Deposition dated August 26, 2022

# Exhibit K

## Eric Montalvo

| | |
|---|---|
| **From:** | Gonzalez Horowitz, Brenda (USADC) <Brenda.Gonzalez.Horowitz@usdoj.gov> |
| **Sent:** | Friday, August 26, 2022 2:04 PM |
| **To:** | Eric Montalvo |
| **Cc:** | Daisy Chung; William Cowden; Timothy Parlatore; Carol Thompson; Cristina Lagarde; Laura Berry; James Asbill |
| **Subject:** | RE: Shaw Deposition Notice |
| **Attachments:** | RE: [EXTERNAL] Shaw v. Secretary Navy, et al.; Amended Rule 30(b)(6) Deposition Notice; RE: [EXTERNAL] RE: Shaw v. Secretary Navy, et al.; Amended Rule 30(b)(6) Deposition Notice |

Eric,

Your assertion that that the government "unilaterally" set the date for Mr. Shaw's deposition is belied by the record of communications between the parties. Please see the two attached emails – the first on July 26 and the second on August 16 wherein I requested availability for Mr. Shaw to sit for his deposition. Despite my repeated requests that you provide me with availability for both you and your client, you have yet to do so. The record amply establishes that I have tried to confer with you on this issue but you refuse to provide dates wherein you are available, instead sending unsupported letters like the one below. Indeed, you went ahead and unilaterally set the depositions of Mr. Parlatore, as well as Michael Nesbitt and Bryan Roberts, without ever conferring with the government regarding its availability. You are under an obligation under the Federal Rules of Civil Procedure to make your client available to sit for testimony under oath.

Provide Mr. Shaw's availability for the week of September 12 by close of business on Monday August 29, or provide your availability for a status conference before Judge Moss so that I may move to compel your client's appearance.

Best,
Brenda

**BRENDA GONZÁLEZ HOROWITZ**
Assistant United States Attorney
Ph: (202) 252-2512 | Brenda.Gonzalez.Horowitz@usdoj.gov

---

**From:** Eric Montalvo <emontalvo@fedpractice.com>
**Sent:** Friday, August 26, 2022 10:13 AM
**To:** Gonzalez Horowitz, Brenda (USADC) <BGonzalezHorowitz@usa.doj.gov>
**Cc:** Daisy Chung <DChung@fedpractice.com>; William Cowden <WCowden@fedpractice.com>; Timothy Parlatore <timothy.parlatore@parlatorelawgroup.com>; Carol Thompson <CThompson@fedpractice.com>; Cristina Lagarde <clagarde@fedpractice.com>; Laura Berry <lberry@fedpractice.com>; James Asbill <jasbill@fedpractice.com>
**Subject:** [EXTERNAL] RE: Shaw Deposition Notice

Counsel,

See attached.

Eric S. Montalvo
Founding Partner



   

**Attorney/Client Privileged, Protected and Confidential Communication. Confidentiality / Privilege Notice:** This transmission, including attachments, is intended solely for the use of the designated recipient(s). This transmission, including attachments, is intended solely for the use of the designated recipient(s). This transmission may contain information that is confidential and/or privileged and/or otherwise protected from disclosure. If you are not the intended recipient of this e-mail, or the employee or agent responsible for delivering such to the intended recipient, you are hereby notified that any use, disclosure or copying of this e-mail and any attachments is strictly prohibited. This transmission, including attachments, may be covered by the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.*, and any unlawful interceptions of such may be actionable under 18 U.S.C. § 2520. If you are not an intended recipient of this transmission, please immediately destroy all copies received and notify the sender.

**From:** Gonzalez Horowitz, Brenda (USADC) <Brenda.Gonzalez.Horowitz@usdoj.gov>
**Sent:** Thursday, August 25, 2022 9:07 AM
**To:** Eric Montalvo <emontalvo@fedpractice.com>
**Cc:** Daisy Chung <DChung@fedpractice.com>; William Cowden <WCowden@fedpractice.com>; Timothy Parlatore <timothy.parlatore@parlatorelawgroup.com>; Carol Thompson <CThompson@fedpractice.com>; Cristina Lagarde <clagarde@fedpractice.com>
**Subject:** Shaw Deposition Notice

Counsel,

Please see attached. Please note that this deposition will occur in person.

Best,
Brenda

**BRENDA GONZÁLEZ HOROWITZ**
Assistant United States Attorney
Civil Division, U.S. Attorney's Office for the District of Columbia
601 D Street, NW | Washington, D.C. 20530
Ph: (202) 252-2512 | Brenda.Gonzalez.Horowitz@usdoj.gov

# Exhibit L

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STEVEN E. SHAW, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-00410-RDM |
| | ) | |
| CARLOS DEL TORO, | ) | |
| Secretary of the Navy, *et al.*, | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S SUPPLEMENTAL REQUESTS FOR PRODUCTION TO DEFENDANT PARLATORE

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Lieutenant (Lt.) Steven E. Shaw propounds these supplemental requests for production ("Requests"), to which Defendant Timothy Parlatore ("Defendant Parlatore") shall respond within the time prescribed by the Federal Rules of Civil Procedure, in accordance with the Instructions and Definitions set forth herein. Defendant Parlatore shall provide responses to the following interrogatories upon undersigned counsel at either 1750 K St. NW, Suite 900, Washington, D.C. 20006 or emontalvo@fedpractice.com. This Request supplements all previous requests for production propounded upon Defendant.

## DEFINITIONS

A.    "Plaintiff" shall refer to Lt. Shaw.

B.    "Defendant" shall refer to Timothy Parlatore.

C.    As used herein, "you" or "your" means Defendant Parlatore.

D.    "VFA-106" shall refer to Navy Strike Fighter Squadron ONE ZERO SIX.

E.    "Command Directed Investigation" and "Shaw CDI" shall refer to the command directed investigation conducted by Commander (Cmdr.) Bryan Roberts in 2018 as further

described in paragraphs 29 and 30 of Plaintiff's Complaint.

      F.      "Report of Command Directed Investigation" and "Report of Shaw CDI" shall refer to the report of the Shaw CDI generated by Cmdr. Roberts in 2018, which included his findings of facts, opinions, recommendations, and enclosures.

      G.      "FNAEB" shall refer to Field Naval Aviator Evaluation Board conducted of Lt. Shaw in October 2018.

      H.      "Command Climate Survey" shall refer to the (ACASS) Naval Aviation Climate Assessment Survey System Summary Report that was conducted of VFA-106 in August 2019.

      I.      "ASN Letter" shall refer to the letter authored by Assistant Secretary of the Navy Slavonic on December 16, 2019, regarding corrective action to be taken following substantiation of whistleblower reprisal in DoD IG Case # 20180516-051435-CASE-01 and DoD IG Case # 20180516-051435-Case-03.

      J.      "Second Command Directed Investigation" and "Second Shaw CDI" shall refer to the command directed investigation convened by Admiral Christopher Grady with Cmdr. Charles Hampton as the Investigating Officer in January 2020.

      K.      "All" includes "each and every."

      L.      "And" and "or" are to be construed both conjunctively and disjunctively, as necessary to give each request its broadest possible meaning.

      M.      "Anyone acting on your behalf" means all persons including your agents, employees, attorneys, and investigators.

      N.      "Complaint" refers to the Complaint and all amendments thereto.

      O.      "Communication" includes all oral, visual, written, or other sensory means of transmitting information or statements.

P.      "Document" means all materials so defined in the broadest sense, including the original, or a copy of the original, if you do not possess the original, and all non-identical copies of any medium upon which intelligence or information is recorded, or from which intelligence or information can be retrieved, regardless of original or present location or custody, including, but not limited to, papers, letters, telegrams, telexes, memoranda, notes, sound recordings, minutes, periodicals, newspapers, pamphlets, advertisements, articles, internal correspondence, electronic mail, reports, records, studies, contracts, statements, logs, audits, charts, legal instruments, declarations, filings, drafts, plans, diagrams, pictures, circulars, announcements, directives, schedules, specifications, standards, instructions, manuals, photographs, negatives, brochures, publications, statistical records, desk calendars, appointment books, diaries, computer disks, computer tapes, computer printouts, data processing program libraries, data processing input and output, computer memories, microfilms, accounts, budgets, journals, ledgers, bills, invoices, orders, bids, checks, receipts, and the like, whether handwritten, typed, printed, coded, tape recorded, photographed, or otherwise made, including information stored, made or maintained by electronic, mechanical or magnetic means. The term "document" includes each and every draft, excerpt, revision, or amendment of the above.

Q.      "Identify" or "identification," when used with reference to a natural person, shall mean, without limitation, to state each of the following: (1) the person's full name; (2) the person's present address; (3) the person's present phone number; (4) the person's present employer, title, and business address; and (5) the person's employer, title, substantive responsibilities, and business address during the period covered by the request in which such person's identification is sought.

R.      "Identify" or "identification," when used with reference to a fact or occurrence of

3

any kind, shall mean, without limitation, to state each of the following: (1) the date, time, and place (including street address where appropriate) of the fact or occurrence; (2) a description of the circumstances surrounding the fact or occurrence; (3) an identification of all persons who were present at or have any personal knowledge of the fact or occurrence; and (4) the substance of the fact or the occurrence.

   S.  "Identify" or "identification," when used with reference to a document, shall mean to state each of the following: (1) a description of the nature of the document; (2) an identification of the person(s) who authored or originated the document; (3) the person(s) to whom the document was sent; (4) an identification of the plaintiff(s) or other person(s) who has possession of the original document; and (5) if the document has been or will be produced by you in this litigation, the identifying number stamped on the document.

   T.  "Person" means any natural or artificial person, including business entities and other legal entities.

   U.  "Possession" includes as that term is defined with respect to your obligations under Rule 34, including possession, custody, or control; or, that you own in whole or in part; or have a right by contract, statute, or otherwise to use, inspect, examine, or copy on any terms; or that you have, as a practical matter, the ability to use, inspect, examine, or copy.

   V.  "Relating to," "relate to," "related to," and "relates to" means in any way concerning, containing, describing, constituting, referring to, evidencing, mentioning, reflecting, identifying, refuting, contradicting, supporting, connected with or in any way pertaining to the subject, in whole or in part.

   W.  "Requests" refers to this document, and each and every request for documents contained within this document.

4

X.      "You/Your" includes the person(s) to whom these requests are addressed, and all of that person's agents, representatives, and attorneys.

Y.      The present tense includes the past and future tenses.  The singular includes the plural, and the plural includes the singular.  "All" means "any and all;" "any" means "any and all." "Including" means "including but not limited to."  "And" and "or" encompass both "and" and "or."  Words in the masculine, feminine, or neuter form shall include each of the other genders.

Z.      If the requested documents are maintained in a file, the file folder is included in the request for production of those documents.

## INSTRUCTIONS

AA.     Pursuant to Rule 34(b)(2), if you object to a request, the grounds for each objection must be stated with specificity.  Also pursuant to that Rule, if you intend to produce copies of documents or of electronically stored information instead of permitting inspection, you must so state.

BB.     If, in responding to these Requests, You encounter any ambiguities when construing a request or definition, the response shall set forth the matter deemed ambiguous and the construction used in responding.

CC.     Pursuant to Rule 34(b)(2)(C), an objection must state whether any responsive materials are being withheld on the basis of that objection.

DD.     Whenever in this Request You are asked to identify or produce a document which is deemed by You to be properly withheld from production for inspection or copying:

        i.      If you are withholding the document under claim of privilege (including, but not limited to, the work product doctrine), please provide the information required by Fed. R. Civ. P. 26(b)(5).  For electronically stored

information, a privilege log (in searchable and sortable form, such as a spreadsheet, matrix, or table) complying with Rule 26 and generated by litigation review software, containing metadata fields that generally correspond to the above paragraph is permissible, provided that it also discloses whether transmitting, attached or subsidiary ("parent-child") documents exist and whether those documents have been produced or withheld.

ii.   If you are withholding the document for any reason other than an objection that it is beyond the scope of discovery, identify as to each document and please state the reason for withholding the document.   If you are withholding production on the basis that electronically stored information is not reasonably accessible because of undue burden or cost, provide the facts supporting your contention.

EE.   When a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material.   If a privilege is asserted with regard to part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed.   When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration.   Any redaction must be clearly visible on the redacted document.

FF.   It is intended that this Request will not solicit any material protected either by the attorney/client privilege or by the work product doctrine which was created by, or developed by,

counsel for the responding party after the date on which this litigation was commenced.  If any Request is susceptible of a construction which calls for the production of such material, that material need not be provided and no privilege log pursuant to Fed. R. Civ. P. 26(b)(5) will be required as to such material.

## SUPPLEMENTAL REQUESTS FOR PRODUCTION

**Produce any and all discovery that Defendant relied upon in making statements 1 through 56, listed below:**

*Letter to the Office of Inspector General, Dated January 16, 2020*

1. "During his time at VFA-106, LT Shaw never completed a single qualification."

2. "After the success of the "bottle bet" complaint, LT Shaw even told squadron leadership that he was going to start filing more IG complaints, but refused to speak with squadron leadership about what issues her perceived, so that they could attempt to rectify those issues."

3. "Additionally, most of these complaints were ultimately unsubstantiated."

4. "Asks students to sneak him back into those same secured spaces after his clearance is suspended."

5. "The difficulty that my clients faced was the fact that LT Shaw had a demonstrated track record of weaponizing the IG complaint process to wrongfully attack senior officers and attempt to immunize himself from responsibility."

6. "It is undisputed that LT Shaw failed to qualify in any instructor module during his entire tour with VFA-106, despite being onboard for over 2.5 years, while the average is 6-months, with many instructors getting qualified within 3 months. LT Shaw's lack of any qualifications (and lack of any complaint that he was improperly prevented from getting qualified) should have been important to Mr. Ursini for a number of reasons, not the least of which being that it is a legitimate, non-retaliatory reason for him to receive unfavorable FITREPs."

7. "In addition to the articles in which he is featured, LT Shaw also surreptitiously leaks information to the press to further his personal agenda, at the expense of the Navy. For example, we have received inquiries from reporters regarding a significant amount of private information that LT Shaw has released to the media, including several surreptitiously recorded conversations with LtCol Nesbitt, as well as copies of LtCol Nesbitt's personal notes."

***Letter to Congresswoman Elaine G. Luria, Dated January 24, 2022***

8. "Multiple flag officers reviewed the DoD OIG report, together with the materials from my clients that DoD OIG refused to consider, and recognized both significant danger that LT Shaw poses, as well as the incontrovertible fact that my clients were acting in the interests of safety, not some invented desire to reprise."

9. "I have also been informed that your office had advocated on behalf of LT Shaw to ASN M&RA's office. My clients do not wish to criticize your decision to do so, as we are fully aware of LT Shaw's track record of deception and telling only part of the story to fit his needs."

10. "In contrast to my clients, LT Shaw is a relatively inexperienced F/A-18 pilot, having only a single deployment that was cut short after approximately five weeks after he injured himself during an alcohol fueled night of liberty in a foreign port. Despite his inexperience, he somehow circumvented the normal squadron vetting process and received orders to become an Instructor Pilot (IP) at VFA-106.Throughout his time at VFA-106, he made no effort to get qualified to instruct a single phase of the curriculum, instead focusing his efforts on undermining squadron leadership criticizing the Navy's training curriculum."

11. "LT Shaw unlawfully took unauthorized electronic devices into classified spaces to film videos for his unauthorized curriculum and then posted those videos on the internet using Google Drive, DropBox and emailed it to over 100 students using his personal gmail account."

12. "After being told by CDR Weyenberg to stop instructing students, he called CDR Scott, then the incoming CO, to ask for permission to continue to "teach on the side" and that his CQ methods had a 100% success rate."

13. "Despite clear directives to submit any suggestions or proposed syllabus changes for review and approval, he instead hid these materials from his Chain-of-Command and all of the qualified instructors, while secretly sharing these unauthorized materials with students, telling them that his techniques were better than the approved syllabus."

14. "Additionally, he provided several private documents to members of the media, such as scans of LtCol Nesbitt's personal notebook."

15. "Log records for his access badge showed he continued to swipe into the Student Ready Room multiple times after this order."

16. "At one point, he migrated his entire unauthorized curriculum to the Google Drive account of one of the students rather than his own, presumably to avoid detection."

17. "After his security clearance was revoked for sneaking a camera into secured spaces, he attempted to pressure students to illegally sneak him into the simulator building."

18. "At one point, VFA-106 even had to issue a Hazard Report (HAZREP) to notify the fleet that several student aviators, and potentially recently qualified aviators, had been exposed to his dangerous training."

19. "Thereafter, he reached out to Military.com to publicize IG complaints that he had coached former students into filing, alleging racial discrimination. Although these complaints were ultimately found unsubstantiated…"

20. "The SJA, cognizant of the fact that whistleblower status does not immunize LT Shaw from accountability, directed them to initiate a Command Directed Investigation (CDI). This CDI

was assigned to CDR Roberts, who conducted a thorough investigation, under the guidance of the SJA's office. Upon being assigned the investigation, CNAL SJA explicitly told CDR Roberts that he should expect an IG complaint on the backside."

21. "My clients, and others, informed LT Shaw numerous times that if he really did think that he had a better technique to improve safety or performance, he should submit it for review by any number of official Subject Matter Experts including the LSO School, NAWCTSD, VX-23, or even qualified members of his own command for possible implementation. (FOOTNOTE 5: LT Shaw cannot credibly claim ignorance of these procedures because, in addition to the directions given by my clients, his twin sister was assigned as a test pilot at the Naval Air Warfare Center at that time."

22. "Moreover, it appears that Mr. Ursini illegally provided investigative materials to LT Shaw."

23. "DoD OIG did not cite any [factual inaccuracies or misrepresentations in the CDI] because there were no factual inaccuracies or misrepresentations in the CDI. Although not included in the report, Mr. Ursini did make this explicit admission to CDR Scott during their interview."

24. "…when in fact, the security clearance had been suspended before the issuance of the CDI report and ultimately revoked based on evidence that LT Shaw took a camera into the secured spaces. Additionally, during his clearance renewal, multiple members of the squadron, who LT Shaw had listed as references, told the DODCAF investigator they did not trust him. Moreover, after his security clearance had been suspended, LT Shaw unlawfully attempted to persuade students to illegally sneak him back into the facility."

25. "Assistant Secretary Slavonic also improperly invalidated the Fleet Naval Aviator Evaluation Board (FNAEB), which fairly and appropriately reviewed the evidence against LT Shaw and determined that he should be removed from flight status and subsequent endorsers

recommended he should lose his wings for discrediting Naval Aviation…The FNAEB did not

rely on CDR Roberts' CDI report, but rather took testimony from direct eyewitnesses and

original documents."

26. "…without regard to the undisputed aspects of his removal from instructor duties or his

significant failure to obtain any qualifications, well below the performance of his peers."

27. "As it has become common knowledge that ASN M&RA has reversed all actions as they relate

to LT Shaw…"

28. "…this restriction immunizes LT Shaw from the larger scope of his misconduct including

orders violations, unlawful outside employment, theft of intellectual property, and conflicts of

interest."

***ECF No. 39, Defendant Parlatore's Response to Motion to File Second Amended Complaint***

29. "The only allegation, which was supported by an exhibit to Plaintiff's motion, was that I

suggested to Mr. Montalvo in an email that I had a copy of this transcript."

30. "This suggestion finally led Mr. Montalvo to correct his materially false representations to this

Court that he had cross examined my client at the FNAEB administrative hearing. Docket

#13."

***ECF No. 41, Joint Notice of Discovery Disputes***

31. "Plaintiff dismay that countless witnesses have come forward to provide information about

Plaintiff's unlawful activities can hardly be considered a Privacy Act violation. The passage

cited by Plaintiff refers to "Naval Aviators willing to provide information about LT Shaw's

serious and dangerous misconduct," not the provision of any Privacy Act protected

documents."

***Defendant Parlatore's Response to Request for Admissions***

32. "It is well known that Plaintiff, LT Steven Shaw, has been widely despised within the Naval Aviation community since well before the undersigned became involved in the case. There are no shortage of Naval Aviators willing to provide information about LT Shaw's serious and dangerous misconduct and the undersigned has received information from his former students, peers, and superior officers, in addition to several documents that were anonymously provided."

33. "However, notwithstanding the foregoing, documents indicate that CDR Roberts was assigned to investigate LT Shaw for his significant and dangerous misconduct."

34. "However, notwithstanding the foregoing, documents indicate that the Report of the CDI, which found significant evidence and serious and dangerous misconduct by LT Shaw was signed by CDR Roberts."

35. "This was Mr. Ursini's finding, however this finding was thoroughly rejected by the chain-of-command, once they had the opportunity to review all of the evidence that Mr. Ursini refused to consider or include in his deeply flawed report. Moreover, it is important to note that Mr. Ursini did not determine that the findings of the CDI that LT Shaw committed serious and dangerous misconduct were, in any way, incorrect."

36. "Deny personal knowledge of the events described and, to the extent that Plaintiff seeks information that I may have obtained through privileged and confidential communications, I object. However, notwithstanding the foregoing, the FNAEB documents indicate that such an attachment exists at Enclosure 42, however I have no knowledge of the specific contents of this enclosure and whether it is similar to the copies of LtCol Nesbitt's notes that were provided to Mr. Ursini or the copies that LT Shaw sent to members of the media."

37. "Neither admits nor denies, as the copy of the report provided to me by DoD IG was so heavily redacted, without any of the underlying documentation attached, that I cannot be sure. However, I am aware that LtCol Nesbitt sent his notes to David Ursini by email on September 10, 2018 and that the scans sent to Mr. Ursini are identical to the scans that were later sent by LT Shaw to members of the new media."

### *Defendant Parlatore's Response to Request for Interrogatory*

38. Identify all persons with whom you communicated, directly, in writing, or through other forms of communications, regarding any fact alleged in the complaint or in your answer to the complaint, as well as the nature, content, and form of each communication.  "Any persons with whom Defendant communicated regarding the facts of this case was done in the scope of his representation of his clients and is therefore prohibited from being disclosed."

39.    "Moreover, it is not relevant to any claim that Plaintiff has raised in this case. Much like the ASN letter, no unredacted copy of this document was ever distributed to anyone. Its only relevant relation to these proceedings is that, after Mr. Montalvo knowingly lied to the U.S. District Court judge and refused to correct his materially false statement, the threat that another party may have a copy of a transcript proving the falsity of his statement finally brought Mr. Montalvo to file papers with the Court correcting his knowingly false statements. In fact, the only party that ever publicly released this document is Plaintiff himself."

### *ECF No. 44, Defendant Parlatore's Response to Discovery Disputes*

40. "The case at bar presents an ironic circumstance where Plaintiff violated direct orders from his superiors, as well as numerous safety and security protocols, then flagrantly disseminates private information, including secretly recorded conversations, inspector general reports, and the results of adverse personnel actions, all while claiming the privilege of being a

13

whistleblower. Yet, when the officers who he defames and whose careers he wrongfully destroys use documents that they are in lawful possession of to counter Plaintiff's false narrative, Plaintiff attempts to prevent the truth from being revealed through a misapplication of the Privacy Act."

41. "It also cannot go without mention that the recipients of the letters from Defendant Parlatore were the congressional representatives who represent his clients, as well as the Project on Government Oversight, all of whom the Plaintiff had previously misled into advocating on his behalf before the Assistant Secretary of the Navy for Manpower & Reserve Affairs."

42. "The inescapable reality is that Plaintiff was an absolute pariah in the Naval Aviation community well before any alleged Privacy Act violation."

***ECF No. 51, Joint Status Report***

43. "Additionally, there is concern that some of the discovery sought by Plaintiff may contain classified information, as he is currently under investigation for illegally taking a camera into a secured facility, where photos may have captured classified information."

***ECF No. 52, Defendant Parlatore's Answer***

44. "Denies the allegations contained in paragraph 22 and states affirmatively that Plaintiff is deliberately misrepresenting the contents of this letter in an effort to manufacture a false defamation claim. In fact, the letter requested the DODIG investigate whether their investigator had improperly provided LT Shaw with copies of LtCol Nesbitt's notebook and suggested that the only innocent explanation for the investigator's conduct would be if LT Shaw (who surreptitiously recorded his superior officers, repeatedly disobeyed lawful orders, illegally snuck a camera into a secured facility, and illegally attempted to convince a student to sneak

him into a secured facility after his security clearance had been revoked) could have possibly snuck into LtCol Nesbitt's office to take photos of his notebook."

45. "Denies the allegations contained in paragraph 25 and states affirmatively that, due to heightened security screenings required by TSA, LT Shaw's misconduct would have been disclosed to the airlines and disqualified him regardless of any alleged disclosures."

*ECF No. 62, Defendant Parlatore's Response to Motion to Compel*

46. "His misconduct as well known and alienated substantially the entire Naval Aviation community against him."

47. "Plaintiff wrongfully destroyed the careers of four very well respected senior Naval Aviators, two of whom had screened for promotion to Captain and Command of an Air Wing."

48. "Defendant quickly set about vigorously defending his clients which, necessarily, required exposing Plaintiff for his pattern of illegal conduct and persistent dishonesty."

49. "One of the many avenues that Plaintiff pursued in furtherance of his improper goals was to lie to various elected officials to fraudulently induce them to advocate on his behalf. Chief among these defrauded elected officials was Rep. Elaine Luria, the Congresswoman representing Virginia's 2nd District, where all of Defendant's clients reside. As a result of Plaintiff's dishonest conduct with Rep. Luria, he fraudulently induced her to write a letter to ASN M&RA demanding that Plaintiff's record be cleared, that he be promoted and put back on flight status. Thereafter, ASN M&RA issued a letter reversing all actions taken against Plaintiff, permitting a second investigation, and ordering that two of Defendant's clients be subjected to a Retirement Grade Determination before him. A copy of this letter was lawfully provided to Defendant as counsel for those two officers."

50. "Among many other things, he surreptitiously recorded conversations with his superior officers, including those he has not yet met, such as CDR Scott. He collected screenshots of group chats that he was not a participant in. His reputation had already been so badly that any allegation of copying LtCol Nesbitt's notebook would be superfluous."

51. "The remainder of the discovery shows negative social media comments in response to the Navy Times article about this case, which was initiated and promoted by Mr. Montalvo, not any of the Defendants."

***Court Transcript***

52. "We received information from media outlets that Lieutenant Shaw was going out and providing troves of documents, including copies of my client's personal notebook, conversations that he had surreptitiously recorded between himself and several other members of the command, and all sorts of other private documents that we really had no idea where these things were coming from, and it all appeared to be things that he either had created himself or he had gotten from the inspector general. So we filed a complaint with the DoD inspector general to say please look at whether your investigator provided these wrongfully to Lieutenant Shaw. Yes, in a footnote, I did provide that there was a possibility that it wasn't provided by the investigator, that instead, because Lieutenant Shaw was clearly in the habit of surreptitiously recording his superiors, was it possible that he might have gotten it through some other means. As far as the FNAEB is concerned, we don't have a copy of that. I was not representing Lieutenant Colonel Nesbitt at the time. I did not have the benefit of what Mr. Montalvo had being there. But my understanding from the scans that were provided to the media and the scans that were provided to the inspector general is that those were identical scans, that his separate type of scan that went through the FNAEB. So therefore, we certainly

had a good faith basis to believe that and to ask that the inspector general investigate whether

this particular investigator had committed misconduct, because we had identified a whole other

host of misconduct that was conducted at the time."

*ECF No. 41*

53. "An alternative definition also recognized in this district is where "true statements in a

particular publication have so badly damaged a plaintiff's reputation that minor false

accusations within the same publication cannot result in further meaningful injury."

*ECF No. 62*

54. "Although this cause of action plainly fails to state a cause of action, Defendant chose to file

an answer as opposed to a motion to dismiss to avail himself of the discovery process because

the same issues which were relevant to his defense would also be useful in defending his clients

in their various disciplinary and administrative proceedings. However, at this point, Defendant

has successfully completed all of those proceedings and his clients have all honorably retired

with the full pensions which they earned and moved on to successful post-service flying

careers."

Respectfully submitted,

August 23, 2022                                         */s/ Eric S. Montalvo*
                                                        Eric S. Montalvo
                                                        DC Bar #993206
                                                        FEDERAL PRACTICE GROUP
                                                        1750 K Street, N.W., Suite 900
                                                        Washington, DC  20006
                                                        (202) 862-4360 (office) / (888) 899-6053 (fax)
                                                        emontalvo@fedpractice.com

                                                        */s/ William R. Cowden*
                                                        William R. Cowden

17

DC Bar #426301
WILLIAM COWDEN LLC
1750 K Street, N.W., Suite 900
Washington, DC  20006
(202) 808-3140 (office) / (888) 899-6053 (fax)
wcowden@cowdenllc.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2022, I caused a true and correct copy of PLAINTIFF'S SUPPLEMENTAL REQUESTS FOR PRODUCTION TO DEFENDANT PARLATORE to be served via electronic mail, per the parties' agreement, to the following:

BRENDA A. GONZALEZ-HOROWITZ
Assistant United States Attorney, Civil Division
601 D Street N.W.
Washington, D.C.  20530
202-252-2512
Brenda.gonzalez.horowitz@usdoj.gov

*Counsel for Defendant Secretary of the Navy*

TIMOTHY C. PARLATORE
Defendant, *Pro Se*
Parlatore Law Group, LLP
One World Trade Center, Suite 8500
New York, NY  10007
212-679-6312
Timothy.parlatore@parlatorelawgroup.com

*Defendant*

*/s/ Eric S. Montalvo*
Eric S. Montalvo

# Exhibit M

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                              )
STEVEN SHAW,                                  )
                    Plaintiff,                )
                                              )
        v.                                    )       Civil Action No. 20-0410-RDM
                                              )
CARLOS DEL TORO,                              )
        Acting Secretary,                     )
        United States Navy, *et al.*,         )
                    Defendants.               )
_____          )

**PLAINTIFF'S NOTICE OF DEPOSITION**

TO: DEFENDANT TIMOTHY PARLATORE:

PLEASE TAKE NOTICE that, pursuant to Rule 30 of the Federal Rules of Civil
Procedure, Plaintiff Steven Shaw, by and through his counsel, will take the deposition upon oral
examination of Defendant Timothy Parlatore.

The deposition shall take place on Tuesday, **September 16, 2022 at 9:30 a.m.,** at the offices
of Plaintiff's counsel, 1750 K Street, N.W., Suite 900, Washington, DC 20006, or shall be done
remotely through ZOOM, WebEx or similar platform as the court reporting service employed for
this purpose so advises. The deposition will be recorded by stenography and is being taken for
purposes of discovery or trial and may also be used for any other purpose authorized by the Federal
Rules or Local Rules. The deposition shall continue from day to day until completed.

Dated: August 26, 2022

                                    Respectfully Submitted,

                                    /s/  *Eric S. Montalvo*
                                    Eric S. Montalvo (D.C. Bar No. 993206)
                                    THE FEDERAL PRACTICE GROUP
                                    1750 K Street, N.W., Suite 900
                                    Washington, D.C.  20006
                                    Telephone:  202-862-4360
                                    Facsimile:  888-899-6053
                                    emontalvo@fedpractice.com

                                    /s/  *William R. Cowden*
                                    William R. Cowden (DC Bar No. 426301)
                                    WILLIAM COWDEN LLC
                                    1750 K Street, N.W., Ste 900
                                    Washington, DC 20006
                                    (202) 808-3140 / (888) 899-6053 (fax)
                                    wcowden@cowdenllc.com

                                    *Counsel for Plaintiff*

**<u>Certificate of Service</u>**

I hereby certify that on August 26, 2022, I served the foregoing via email on the following:

> Brenda González Horowitz
> Assistant United States Attorney
> U.S. Attorney's Office, Civil Division
> 601 D Street, NW
> Washington, DC 20530
> Tel: (202) 252-2512
> Brenda.Gonzalez.Horowitz@usdoj.gov
> Counsel for Defendant Navy
>
> Timothy C. Parlatore
> PARLATORE LAW GROUP, LLC
> One World Trade Center, Suite 8500
> New York, New York 10007
> Tel: (212) 679-6312 / Facsimile: (212) 202-4787
> Timothy.parlatore@parlatorelawgroup.com
> Defendant, Pro Se

> */s/ Eric S. Montalvo*
> Eric S. Montalvo

# Exhibit N

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
STEVEN SHAW,                              )
                    Plaintiff,            )
                                          )
        v.                                )        Civil Action No. 20-0410-RDM
                                          )
CARLOS DEL TORO,                          )
        Secretary,                        )
        United States Navy, *et al.*,     )
                    Defendants.           )
_____)

## PLAINTIFF'S NOTICE OF RULE 30(b)(6) DEPOSITION

TO: DEFENDANT CARLOS DEL TORO AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil
Procedure, Plaintiff Steven Shaw, by and through his counsel, will take the deposition upon oral
examination of the United States Navy ("Agency") through one or more officers, directors, agents
or other representatives who shall be designated to testify on the Agency's behalf regarding all
information known or reasonably available to the Agency with respect to the subject matters
identified in Attachment 1 ("Deponent"). In addition, Deponent shall bring to the deposition the
documents and tangible things listed in Attachment 1. Plaintiff requests that the Agency provide at
least five (5) business days before the deposition the documents and tangible things responsive to
this notice, and written notice of the name(s) and employment position(s) of the individual(s)
designated to testify on the Agency's behalf.

The deposition shall take place on September 15, 2022 at 10:00 a.m., at the offices of Plaintiff's
counsel, The Federal Practice Group, 1750 K Street, N.W., Suite 900, Washington, DC  20006, or
shall be conducted remotely through Zoom, WebEx, or similar platform as the court reporting
service employed for this purpose so advises. The deposition will be recorded by stenography and is
being taken for purposes of discovery or trial and may also be used for any other purpose authorized
by the Federal Rules or Local Rules. The deposition shall continue from day to day until completed.

Dated: August 23, 2022

                              Respectfully Submitted,

                              /s/  *Eric S. Montalvo*
                              Eric S. Montalvo, D.C. Bar No. 993206
                              THE FEDERAL PRACTICE GROUP
                              1750 K Street, N.W., Suite 900
                              Washington, DC  20006
                              Telephone:  202-862-4360

Facsimile:  888-899-6053
emontalvo@fedpractice.com

/s/ *William R. Cowden*
William R. Cowden, D.C. Bar No. 426301
WILLIAM COWDEN LLC
1750 K Street, N.W., Suite 900
Washington, DC  20006
Telephone:  202-808-3140
Facsimile:  888-899-6053
wcowden@cowdenllc.com

*Counsel for Plaintiff*

2

## **Certificate of Service**

I hereby certify that on August 23, 2022, I served the foregoing via email on the following:

> Brenda González Horowitz, Esq.
> Assistant United States Attorney
> U.S. Attorney's Office, Civil Division
> 601 D Street, NW
> Washington, DC  20530
> Tel: (202) 252-2512
> Brenda.Gonzalez.Horowitz@usdoj.gov
> Counsel for Defendant U.S. Navy

> Bradley Silverman, Esq.
> Assistant United States Attorney
> U.S. Attorney's Office, Civil Division
> 601 D Street, NW
> Washington, DC  20530
> Tel: (202) 252-2575
> Bradley.silverman@usdoj.gov
> Counsel for Defendant U.S. Navy

> Timothy C. Parlatore, Esq.
> PARLATORE LAW GROUP, LLC
> One World Trade Center, Suite 8500
> New York, NY  10007
> Tel: (212) 679-6312 / Facsimile: (212) 202-4787
> Timothy.parlatore@parlatorelawgroup.com
> Defendant, *pro se*

> /s/ Eric S. Montalvo
> Eric S. Montalvo

**ATTACHMENT 1**
**Topics for Preparation of Witness (or Witnesses)**
**for Rule 30(b)(6) Deposition Testimony**
**and Document Request**

1. Testimony concerning whether:
   a. federal Defendants maintain that The Privacy Act governs the Navy's disclosure of the information contained in the 2018 Command Directed Investigation of Plaintiff Shaw (the "2018 CDI Report") or the 2018 Shaw Field Naval Aviator Evaluation Board Report (the "FNAEB Report") or both, and
   b. if not, the reasons why not.

2. Testimony concerning whether (and if so which) federal official(s) or federal employee(s) provided co-defendant Timothy C. Parlatore with (or with portions of, or information from) the 2018 CDI Report or the FNAEB Report, or both.

3. Testimony concerning whether Defendant Navy contends that any legal authority existed within the Privacy Act for such disclosure(s) of the 2018 CDI Report or FNAEB Report, if made, to Timothy C. Parlatore.

4. Testimony concerning whether any disclosures of the 2018 CDI Report or FNAEB Report to Mr. Parlatore were made in compliance with law, or whether the Navy believed that any such disclosures were made in compliance with the law, and if so, all bases for the Navy so concluding.

5. Testimony concerning which portions of the 2018 CDI Report or the FNAEB Report, or both, were provided by such federal official(s) or federal employee(s) to Timothy C. Parlatore, including when, by what method(s), and under what circumstances such materials were so provided.

6. Testimony about whether, as has been described in paragraph 23 of the Complaint, a copy of Lt. Col. Nesbitt's journal was included with the FNAEB Report as part of the FNAEB Report.

7. Testimony concerning completion of each of the responses in the Navy's Answer to the Third Amended Complaint (Document 53-1) wherein Defendant asserted a denial or lack of sufficient knowledge or information to form a belief as to the truth of the matters alleged in a particular paragraph of the Complaint. Defendants' witness(es) should be prepared with sufficient information to respond with an admission of the allegations set forth in each such paragraph or a denial of each such paragraph's particular allegation(s) as well as the basis (or bases) for each of the Defendants' denials of each such paragraph's particular allegation(s).

4

8. Testimony concerning whether the federal Defendants dispute the validity of the DoD-IG findings and conclusions, or agree as to their accuracy, and if disputed, which findings and conclusions they dispute and the basis for such dispute. Complaint ¶ 15 (DoD-IG report; Exhibit 3).

9. Testimony concerning the DODIG findings regarding CDR Roberts relating to his conduct of the CDI to include:

   a. CDR Roberts disclosing to at least twenty witnesses or personnel the Complainant's filing of congressional and IG complaints, and communicating that there was a high probability the Complainant was going to file another complaint;

   b. CDR Roberts transmitting and receiving CDI information containing For Official Use Only (FOUO), Personally Identifiable Information (PII), Controlled but Unclassified, and Sensitive but Unclassified materials to or through private e-mail accounts of DoN civilian and military personnel;

   c. CDR Roberts sending FOUO CDI details or evidence to military, DoN civilian, and non-DoD personnel and whether such recipients had a need to know such disclosed information consistent with the Privacy Act;

   d. CDR Roberts e-mailing a draft copy of the CDI report to Ms. Priest on or about July 2, 2018;

   e. Testimony confirming that on or about July 19, 2018, CDR Roberts emailed LCDR Colberg a draft copy of the CDI from CDR Roberts' personal e-mail account; and

   f. Testimony confirming that in CDR Roberts' e-mail referenced in the immediately preceding subsection, CDR Roberts stated (directly or in other words to the effect of): 'Let the light at the end of the tunnel be a train. May this attachment be that train."

10. Testimony concerning whether the Navy took any adverse action or instituted any disciplinary action against any person it identified as making an unlawful disclosure of Privacy Act covered information relating to Lt. Shaw, the type of action taken, or if no adverse action or disciplinary action was taken, the reasons for declining to take any such action in light of the DODIG recommending the following: "we also recommend the Secretary of the Navy take appropriate action against CDR Weyenberg, LtCol Nesbitt, and CDR Roberts for reprising against the Complainant."

11. Testimony concerning what Defendants maintain are the proper processes and procedures triggered upon discovering that an unlawful disclosure of Privacy Protected information has occurred, to include any notification provided to the Complainant upon discovery of the

unlawful disclosures and any actions taken to prevent further disclosures, the dates those actions occurred, and who directed the corrective actions.

12. DOCUMENTS: Please produce to Plaintiff, at least five (5) business days prior to the deposition, all documents the designee(s) reviewed in preparing for their testimony and all documents upon which the designee(s) rely in support of their testimony.

# Exhibit O

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVEN E. SHAW | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 1:20-cv-00410-RDM |
| | ) |
| LLOYD J. AUSTIN III, | ) |
| Secretary of Defense, and | ) |
| CARLOS DEL TORO, | ) |
| Secretary of the Navy, | ) |
| | ) |
| and | ) |
| | ) |
| TIMOTHY C. PARLATORE, | ) |
| | ) |
| Defendants. | ) |

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Plaintiff, Lieutenant (Lt.) Steven E. Shaw ("Lt. Shaw"), hereby objects to Defendant Timothy C. Parlatore's ("Parlatore") and Defendant Navy's Notices of Deposition to Plaintiff Steven Shaw ("Notice"). Lt. Shaw's objections have been timely and properly served prior to the deposition date unilaterally set by Parlatore for the deposition of Lt. Shaw. Specifically, Lt. Shaw objects to the Notice on the following grounds:

1.      On August 19, 2022, Parlatore served Lt. Shaw's counsel with a "Notice of Deposition" stating that Parlatore intended to depose Lt. Shaw by virtual deposition on September 12, 2022, at 9:30 a.m. (attached as Exhibit A). Parlatore neglected to consult Lt. Shaw's counsel regarding the availability of September 12, 2022 as a deposition date.

2.      Lt. Shaw's counsel is unavailable for Lt. Shaw's deposition neither on September 12, 2022, as noticed unilaterally by Parlatore, nor on September 14, 2022. Counsel Eric S. Montalvo has other, previously-scheduled obligations on that date before the D.C. Bar which necessitate his appearance, and render his attendance at Lt. Shaw's deposition an impossibility. See August 18, 2022 email from Eric Montalvo, ¶ 1 (attached as Exhibit B).

3.      Defendant Navy similarly disregarded undersigned counsel's request for dates after the week of September 12 prior to propounding its notice.

4.      Courts expect the parties to be reasonable and accommodating when scheduling depositions. Here, Parlatore unilaterally noticed Lt. Shaw's deposition without any consultation with Lt. Shaw's counsel regarding scheduling. While there is no formal provision in the Federal Rules of Civil Procedure requiring parties to confer regarding dates prior to noticing a deposition, doing so has generally become standard and accepted practice across jurisdictions. Indeed, this Court's own Local Rules adopt and incorporate as "Appendix A" to the Local Civil Rules the

"D.C. Bar Voluntary Standards for Civility in Professional Conduct," which provides in paragraph 8 that the parties will endeavor to schedule so as to "avoid creating calendar conflicts for other participants in the legal process."

5.      Requiring Lt. Shaw to appear for deposition without his chosen counsel of record would subject him to an "undue burden," for which reason he objects to Parlatore's Notice of Deposition.

6.      This objection to Parlatore's and Defendant Navy's Notices of Deposition are made in good faith and not for any improper purpose, or to delay proceedings.

Dated: August 26, 2022                              Respectfully Submitted,

                                                    /s/ Eric S. Montalvo
                                                    Eric S. Montalvo
                                                    DC Bar #993206
                                                    FEDERAL PRACTICE GROUP
                                                    1750 K Street, N.W., Suite 900
                                                    Washington, DC 20006
                                                    (202) 862-4360 (office) / (888) 899-6053 (fax)
                                                    emontalvo@fedpractice.com

                                                    Counsel For Plaintiff

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 26, 2022, a true and correct copy of the foregoing was delivered to the following parties by First Class Mail, email, and/or facsimile:

Brenda Gonzalez Horowitz
Assistant United States Attorney, Civil Division
601 D Street N.W.
Washington, D.C. 20530
(202) 252-2512
Brenda.gonzalez.horowitz@usdoj.gov

Timothy C. Parlatore
One World Trade Center, Suite 8500
New York, NY 10007
timothy.parlatore@parlatorelawgroup.com

*/s/ Eric S. Montalvo*
Eric S. Montalvo

# Exhibit P

**List of Documents for Authentication**

| Nomenclature | Date | Comments |
|---|---|---|
| Field Naval Aviator Evaluation Board (FNAEB) Report ICO Lt. Steven Shaw with all attachments, enclosures, and endorsements | October 31, 2018 | |
| First Command Directed Investigation ICO Lt. Steven Shaw with all attachments, enclosures, and endorsements | July 19, 2018 | |
| Second Command Directed Investigation ICO Lt. Steven Shaw with all attachments, enclosures, and endorsements | July 14, 2020 | |
| (ACASS) Naval Aviation Climate Assessment Survey System Summary Report (Command Safety Assessment) for VFA-106 (Instructors Only) | August 27, 2019 | |
| Command Safety Assessment Access Login Website | Last Accessed: August 15, 2022 | https://safetyclimatesurveys.org/command/login |
| Tailhook 2019 Flag Panel Live Stream | September 6, 2019 | |
| Rep. Elaine Luria Letter to Secretary of the Navy Richard Spencer ICO Lt. Steven Shaw with all attachments, enclosures, and endorsements | November 6, 2019 | |
| Secretary of the Navy Thomas Modly Letter to Rep. Elaine Luria ICO Lt. Steven Shaw with all attachments, enclosures, and endorsements | January 10, 2020 | |
| 2018 Strike Fighter Ball Video created by VFA-106 Instructor Lt. Alex Bowman | Uploaded November 30, 2018 | https://www.youtube.com/watch?v=02f7b9_Tlk8 |
| Memorandum for the Record SUBJ: Formal Suspension of Access for Pending Legal Matters ICO Lt. Steven Shaw | July 3, 2018 | |
| Department of Defense Inspector General Whistleblower Reprisal Investigation, Case Number 20180516-051435-CASE-01 with all reports, attachments, enclosures, summaries of interviews conducted, and any document acquired during the course of the investigation | June 12, 2019 | |
| Department of Defense Inspector General Whistleblower Reprisal Investigation, Case Number 20180516-051435-CASE-03 with all reports, attachments, enclosures, summaries of interviews conducted, and any document acquired during the course of the investigation | June 12, 2019 | |
| IUT_Stan Syllabus.xlsx Created 11/18/2016 byVFA-106 Instructor Pilot Lt. Thomas Hanley | 11/18/2016 | |
| Assistant Secretary of the Navy (Manpower and Reserve Affairs) Gregory Slavonic Letter SUBJ: Notification of Substantiated Reprisal Investigations Requiring Secretarial Action Pursuant to the Military Whistleblower Protection Act ICO LT Steven Shaw USN (DODIG Case # 20180516-051435-CASE-01 and DODIG Case # 20180516-05143-Case-03) | December 16, 2019 | Note 1 |
| First Report of Misconduct ICO Lt. Steven Shaw with all attachments, enclosures, and endorsements | December 20, 2018 | |
| | | |

Note 1: Provide electronic transmission, file transmission record, and/or any hard copy receipt demonstrating Lt. Shaw received the document

| Nomenclature | Date | Comments |
|---|---|---|
| Second Report of Misconduct ICO Lt. Steven Shaw with all attachments, enclosures, and endorsements | May 14, 2021 | |
| Rep. Anthony Brown Letter to Secretary of the Navy Thomas Harker ICO Lt. Steven Shaw with all attachments, enclosures, and endorsements | February 17, 2021 | |
| ALNAV 061/18 SUBJ FY-19 Active-Duty Navy Lieutenant Commander Line Selections | September 4, 2018 | |
| Ser PERS-43/068 SUBJ Fiscal Year 2021 Aviation Department Head Screen Board Letter ICO Lt. Steven Shaw Selection Withhold Letter | May 19, 2020 | |
| Cmdr. Bryan Roberts Email to Bryan Sory SUBJ: FW: Voluntary Statement with all attachments | July 5, 2018 | |
| Ser 833/0004 SUBJ Pending Delay and Possible Removal of Your Permanent Promotion to Lieutenant Commander Letter ICO Lt. Steven Shaw | October 9, 2018 | |
| Lt. Cmdr. Barbara Colberg Email to Colby Vokey SUBJ: Command Investigation ICO LT Shaw with all attachments | September 4, 2018 | |
| Capt. Peter Galindez Letter to Lt. Steven Shaw ICO Response to Freedom of Information Act Request dated August 6, 2018 for a copy of the first Command Directed Investigation of Lt. Steven Shaw by Cmdr. Bryan Roberts | August 17, 2018 | Note 1 |
| Ser 834/299 SUBJ Status in the U.S. Navy Letter ICO Lt. Shaw No Show Cause | June 23, 2021 | |
| LtCol Nesbitt Rebuttal | August 26, 2019 | |
| 5000-97 C 472 SUBJ Report of No Misconduct in the case of Lieutenant Colonel Michael C. Nesbitt 1031448774/7523 USMC | September 18, 2019 | |
| Lt. Col. Michael Nesbitt Email to David Ursini SUBJ Counseling book copies with all attachments | September 10, 2018, 1:58 pm | |
| Lt. Col. Michael Nesbitt Email to David Ursini SUBJ LT SHAW Record of Counseling with all attachments, enclosure 14 of Lt. Shaw FNAEB | September 10, 2018 3:16 pm | |
| Department of Defense Consolidated Adjudications Facility (DODCAF) Memorandum for Lt. Steven Shaw SUBJ: Intent to Revoke Eligibility for Access to Classified Information, Assignment to Duties that have been Designated National Security Sensitive, and Access to Sensitive Compartmented Information (SCI) with all attachments, enclosures, and endorsements | October 18, 2019 | |
| Secretary of the Navy Richard Spencer letter to Senator Mark Warner RE Lt. Steven Shaw | April 26, 2019 | |
| Email from Equal Opportunity Investigating Officer, Captain US Fleet Forces Headquarters to Commander NLSC, and Captain CNRMA, N3, CC'ed to Cmdr. Martin Weyenberg, VFA-106 Commanding Officer, SUBJ RE: POC Link, with statement, "I don't want any of the great Americans involved in his complaint to face any negative repercussions. Period." | April 12, 2018, 8:54 am | |
| Project on Government Oversight Letter to Navy Congressional Liaison Office RE Lt. Steven Shaw with all attachments, enclosures, and attachments | August 21, 2019 | |
| | | |

| Nomenclature | Date | Comments |
|---|---|---|
| Ser N00/389 5354 Letter SUBJ: Command Investigation Into Formal Equal Opportunity Complaint at VFA-106 made by Captain Jason Ashley USMC and Lieutenant Courtland Savage USN with all attachments, enclosures, and endorsements | September 9, 2018 | |
| Lt. Barbara Colberg Email to Lt. Courtland Savage SUBJ: EO Complaint Status Update with all attachments | September 12, 2019 | |
| Final N1L/030 Report SUBJ: Preliminary Inquiry Investigation ICO LTJG Courtland A. Savage, USN, Regarding Possible Equal Opportunity and/or Unfair Grading Issues with VFA-106 Instructor Aircrew | April 26, 2017 | |
| Lt. Col. Michael Nesbitt Edited Draft N1L/030 Report SUBJ: Preliminary Inquiry Investigation ICO LTJG Courtland A. Savage, USN, Regarding Possible Equal Opportunity and/or Unfair Grading Issues with VFA-106 Instructor Aircrew | April 28, 2017 | |
| Temporary Duty Orders ICO Lt. Steven Shaw to Naval Air Station Oceana Base Operations Department August 2018 to March 2019 | August 5, 2018 | |
| Temporary Duty Orders ICO Lt. Steven Shaw to Naval Air Station Oceana Base Operations Department March 2019 to August 2019 | March 1, 2019 | |
| Temporary Duty Orders ICO Lt. Steven Shaw to Naval Air Station Oceana Base Operations Department August 2019 to February 2020 | August 27, 2019 | |
| Temporary Duty Orders ICO Lt. Steven Shaw to Naval Air Station Oceana Base Operations Department February 2020 to August 2020 | May 18, 2020 | |
| Substantiated NAVPERS 5354/2 ICO Lt. j.g. Courtland Savage | March 28, 2018 | |
| Substantiated NAVPERS 5354/2 ICO Capt. Jason Ashley subs | December 6, 2017 | |
| Email to Courtland day before phone call | | |
| David Ursini Email to Lt. Steven Shaw SUBJ RE: [Non-DoD Source] VT-21 Instructor Chat | August 31, 2018 | |
| VFA-106 Hazard Report SUBJ: Promulgation of non-standard carrier landing techniques and scan patterns, WESS Number 1536607922433 | September 10, 2018 | |
| Lt. John Rademacher Email to Lt. Michael Jendrycki, Lt. Kieran Sexton, and Lt. Sean Cawley SUBJ: I wonder who this individual could be with all attachments | October 2, 2018 | |
| DD-214 ICO Lt. Steven Shaw | July 31, 2021 | |

Note 1: Provide electronic transmission, file transmission record, and/or any hard copy receipt demonstrating Lt. Shaw received the document

**List of Personnel to Provide confirmation of military status, duty station assignment and rank on or between March 2018 and July 2021**

| Name | Status |
| --- | --- |
| Lt. Cmdr. Matthew Dickens | Government Official |
| Lt. Steven Morzenti | Government Official |
| Cmdr. Bryan Roberts | Government Official |
| Cmdr. Martin Weyenberg | Government Official |
| Cmdr. Brandon Scott | Government Official |
| Lt. Col. Michael Nesbitt | Government Official |
| Lt. Cmdr. Dan Tantillo | Government Official |
| Lt. Jonathon Malycke | Government Official |
| Lt. Cmdr. Scott Lindahl | Government Official |
| Maj. Adam Bueltel | Government Official |
| Lt. Cmdr. Hunter Hollrah | Government Official |
| Lt. Alex Bowman | Government Official |
| Lt. "Betsy" Oakes | Government Official |
| Lt. Cmdr. Robert DePol | Government Official |
| Lt. Cmdr. Kevin Overmann | Government Official |
| Lt. Cmdr. Richard Tiberio | Government Official |
| Capt. Johnny Nilsen | Government Official |
| Lt. Cmdr. Thomas Flynn | Government Official |
| Lt. Nate Shuey | Government Official |
| Lt. Cmdr. Michael Scott | Government Official |
| Captain Joshua Sager | Government Official |
| Lt. Cmdr. Jaime Moreno | Government Official |
| Capt. Kevin McLaughlin | Government Official |
| Lt. Chris Gierl | Government Official |
| Cmdr. Brad Freeman | Government Official |
| Phyllis Meek | Base Employee at Naval Air Station Oceana Officer's Club |
| Cmdr. Joel Caponigro | Government Official |
| Lt. Cmdr. Graham Scarbro | Government Official |
| Cmdr. Ron Flanders | Government Official |
| Cmdr. David Hecht | Government Official |
| Cmdr. Charles Hampton | Government Official |
| Cmdr. Brent Faulker | Government Official |
| Lt. Cmdr. James Haley | Government Official |
| Lt. Andrew Odell | Government Official |
| Lt. Cmdr. Julius Bratton | Government Official |
| Brigadier General Jason L. Morris | Government Official |

# Exhibit Q



Timothy C. Parlatore, Esq.
Founder & Managing Partner

March 25, 2020

Eric Montalvo, Esq.
1750 K Street, NW, Suite 900
Washington, DC 20006

   *Re: Shaw v. Modly, 20-cv-410 Settlement Offer*

Mr. Montalvo:

   I am writing to you, pursuant to F.R.E. 408, to outline potential terms for a settlement of all claims between me, Steven Shaw, you, and your firm.  However, nothing in this letter addresses any settlement of claims that my various clients have against LT Shaw.  Should he wish to obtain releases from them as well, we can address that matter separately.

   As the Court has denied your motion to stay, it seems clear that your APA claims will have to be withdrawn.  The only remaining issues are the privacy act claim and the libel claim.  Although I am happy to litigate those claims and look forward to the discovery process, you and I both know that is not in your client's best interest.

   Your Privacy Act claim essentially alleges that members of the Navy, who were in lawful possession of copies of DON documents, provided copies of those documents to their attorney to use in defending them against allegations of whistleblower retaliation and restriction. While this claim has been dismissed as to me, individually, I recognize that I will still be intimately involved in litigating this claim, as your claim alleged activity protected under the attorney-client privilege between me any my clients.  Your claim that "LT Shaw has suffered actual pecuniary harm" as a result of these officers allegedly sharing documents with their attorney so that they can defend themselves, is unsustainable and quite ironic, considering that LT Shaw has engaged in exactly the same conduct in providing documents to you and also members of the media.  I have not found a single case that would support your interpretation of this statute and I imagine that the Navy would have this quickly disposed of in a Fed.R.Civ.P. 12(b)(6) motion.

   While I believe that the libel claims could similarly be disposed of under Fed.R.Civ.P. 12(b)(6), I have chosen to proceed with discovery.  In civil discovery, your client will not be protected by either the Privacy Act or UCMJ Article 31(b), so much of what you claim to be fighting to protect under your Privacy Act claims will become public record (thus undermining any damages claim, should that cause of action somehow survive dismissal).  LT Shaw is making the same mistake that LT Carey Lohrenz made in *Lohrenz v. Donnelly*, 187 F.R.D. 1 (D.D.C. 1999).  The judge's order denying your motion to stay will prevent any further delays in commencing discovery, as we have a mandatory date to complete the 26(f) conference by April

One World Trade Center, Ste 8500
New York, NY 10007
   timothy.parlatore@parlatorelawgroup.com
www.parlatorelawgroup.com
   212.679.6312 direct
212.202.4787 fax

23, 2020.  This, in conjunction with your recent waiver of attorney-client privilege for Capt Ashley, are putting three of your clients into a bad situation with zero chance of ultimate success.

Tomorrow is your deadline to inform the Court of your position regarding the preliminary injunction.  For the limited purpose of resolving the case now, I propose the following:

1.  Tomorrow, you will inform the Court that LT Shaw has decided to voluntarily dismiss the entire case with prejudice, pursuant to a settlement agreement between the parties;

2.  I would suggest that LT Shaw and the Navy agree that LT Shaw can resign his commission with an Honorable Discharge, but with an RE Code on his DD214 that will prevent him from reentering any branch of the armed forces.  I would also suggest that, consistent with the FNAEB results, he surrender his aviator wings as part of his separation.  Of course, I do not speak for the Navy, so AUSA Gonzalez Horowitz may disagree with this proposed term.

3.  LT Shaw or your firm shall pay me $25,000 for a release of all claims for malicious prosecution, abuse of process and Rule 11 sanctions.  I do not care how you apportion this payment between you and your client, and you can keep that term confidential.  However, I would recommend that you memorialize that in a separate confidential agreement for LT Shaw to resolve his potential malpractice claims against your firm.

4.  You will be permitted to self-report to the various disciplinary committees of the U.S. District Court, District of Columbia, Pennsylvania and New Jersey on your false statements to the Court, which your recent Reply Memorandum and exhibits in fact confirmed, rather than refuted.  As you know, I am obligated to report your misconduct to these bodies, but it will be much better for you, if you self-report and relieve me of that obligation.  You will forward me proof that these reports have been made, which will be kept confidential by me.

5.  All parties will execute mutual releases.

Now is the optimal time for you to execute this settlement, with the news media focused on the COVID-19 pandemic.  The outlets that LT Shaw has attempted to shop this story to previously (Navy Times, Military.com) are unlikely to report on the implosion of this completely frivolous case or your firm's conduct.  You have a limited opportunity to extricate yourselves from this situation with less reputational damage.  If you choose to go forward with litigation, the results will likely be much the same, but with increased damages and public exposure for you, your firm, and your three clients.  This is not a threat, but rather a comment on the reality, since your client chose to try to litigate this case in the media.

I remind you of your obligation to share this settlement offer with your client.  Additionally, as you have put Savage and Ashley's interests at risk in favor of LT Shaw's, it is your ethical responsibility to inform them as well.

R/

Timothy C. Parlatore, Esq.

# Exhibit R

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
-----------------------------------------------------------------------X
STEVEN SHAW,

               Plaintiff,                            Docket No.: 20-cv-410

    -against-

THE HONORABLE CARLOS DEL TORO, and
TIMOTHY C. PARLATORE, ESQ.

               Defendants.
-----------------------------------------------------------------------X

### DEFENDANT PARLATORE'S MOTION FOR SANCTIONS AGAINST PLAINTIFF AND HIS COUNSEL

Defendant Timothy C. Parlatore, *pro se*, moves, pursuant to Fed.R.Civ.P. 11 for this Court to impose sanctions against Plaintiff and his counsel for frivolous conduct in the filing, maintenance and litigation of this action. Pursuant to the safe harbor provisions of Fed.R.Civ.P. 11(c)(2), a copy of this motion was served on Eric Montalvo, counsel for the Plaintiff, on September 2, 2022. Pursuant to DC LCvR 7(m), the parties attempted to confer to resolve this motion, but without success. The last day for Plaintiff to withdraw this lawsuit against Defendant Parlatore was September 23, 2022 and, failing to do so, the motion is now ripe for filing.

### PRELIMINARY STATEMENT

The case at bar is nothing more than a publicity stunt and frivolous abuse of the judicial system by a disgraced former Naval Aviator and his dishonest, unethical counsel.[1] This case has been fatally flawed, both legally and factually, from its inception, as Plaintiff's counsel began the very first appearance in this matter by lying to the Court.

---

[1] While I would not normally use such strong language to describe an opposing counsel in court documents, Mr. Montalvo did commence this case by standing in the courtroom and lying to the Court about events he claimed to have participated in, but were quickly disproven through transcripts.

1

From this despicable beginning, the case has devolved into repeated amendments in an effort to cobble together a coherent complaint, while abusing the discovery process in an attempt to improperly pierce the attorney-client privilege and to harass good and honorable officers who dared to hold Plaintiff accountable for his misconduct.

At its core, this case is about a former Naval Officer who disgraced himself and put numerous lives at risk, while retaliating against anyone who threatened his continued dangerous and unlawful behavior.  Plaintiff's misconduct is well known and resulted in self-inflicted alienation from substantially the entire Naval Aviation community.  It is indisputable that Plaintiff secretly taught unapproved and potentially deadly carrier landing techniques to impressionable young student pilots.  Plaintiff displayed open contempt for his fellow aviators as he gave several unauthorized media interviews to denigrate his shipmates and even created a profoundly disturbing shoulder patch depicting the murder of the squadron mascot:



In an effort to insulate himself from any accountability, Plaintiff weaponized the Inspector General process through filing repeated complaints in retaliation against any officers who impeded his use of unlawful and potentially fatal activities.  As collateral damage of his unlawful campaign, Plaintiff wrongfully destroyed the careers of four very

well respected senior Naval Aviators, two of whom had screened for promotion to Captain and Command of an Air Wing.

In an effort to protect themselves from further charges and assist them in successfully protecting their retirement pensions, these four officers hired Defendant Parlatore, a well-known attorney with a track record for protecting his clients against overreach by the Navy.  Defendant quickly set about vigorously defending his clients which, necessarily, required exposing Plaintiff for his pattern of illegal conduct and persistent dishonesty.  As this defense threatened Plaintiff's ability to continue illegally manipulating the system, Plaintiff and his attorneys chose to pursue a completely frivolous lawsuit against Defendant.

From the initial filing of this matter, Plaintiff filed an emergency motion for a facially unconstitutional restraining order, asking this Court to prospectively restrict Defendant's speech and ability to advocate on behalf of his clients.  Moreover, at the initial appearance, Eric Montalvo, counsel for Plaintiff began by telling this Court a completely made-up story about a prior administrative hearing where Mr. Montalvo claims that he cross-examined one of Defendant's clients.  This story was a knowing and intentional fabrication.

The complaint in this action has undergone numerous revisions because of Plaintiff's inability to conduct basic legal research.  First, he had to withdraw an obviously flawed Privacy Act claim that he had improperly raised against Defendant Parlatore, despite the unequivocal fact that Privacy Act claims can only be raised against governmental agencies, not individual defendants, and certainly not private non-government employees.  Then he had to withdraw an obviously flawed libel claim related to Plaintiff's filing of a patent application because Defendant's statement was indisputably

true that Plaintiff violated the provisions of 37 C.F.R. 501, as required for all government employees.  There were also several amendments to the counts against the Navy, which barely squeaked by on the fourth attempt, albeit in what the Court described as a "close question" for a complaint described as "less than pellucid."

At this point, the only remaining cause of action is a single, obviously flawed libel cause of action.  This cause of action is clearly unwarranted by the law, in that it fails to identify any defamatory statements, but rather cites to a question that was posed.  Moreover, the alleged defamatory question is a single sentence in a footnote on a minor collateral issue in a 10-page letter that outlines significant, dangerous, and criminal misconduct by Plaintiff.  The theory that, after reading ten pages of uncontested, truthful, and derogatory information about Plaintiff, any reader's opinion of Plaintiff would be negatively affected by a question posed in a footnote defies all common sense.  No reasonable, competent attorney could deem this a legitimate claim to raise.

Predictably, since the case proceeded to discovery, the full scope of Plaintiff's improper intent was quickly revealed, as he made discovery demands for privileged and confidential communications between Defendant and his clients, while obstructing the relevant discovery demands from Defendant before finally submitting obviously perjurious responses.

Perhaps most outrageous is the discovery produced regarding damages.  The initial complaint that was filed named several Admirals as co-defendants and ridiculously alleged some form of vast racist conspiracy.  Plaintiff peddled these preposterous claims to the media[2] in the hopes that the claims of racism would garner some public support.

---

[2]      https://www.navytimes.com/news/your-navy/2020/02/14/whos-who-of-navy-aviators-sued-by-lieutenant-claiming-vast-racist-conspiracy/

However, the discovery produced has revealed that this plan backfired, since much of the negative social media comments Plaintiff claims as threats are actually in response to the news articles about this case, rather than any alleged Privacy Act violations or defamation.

Much of the improper actions taken by Plaintiff and his counsel have little to no case law to compare it to, because before this case, it was inconceivable that any licensed attorney would engage in such blatantly frivolous behavior.

## STATEMENT OF FACTS

### Background

Plaintiff was a young, relatively inexperienced, F/A-18 pilot with a demonstrated reputation for retaliating against senior Navy leadership that disagreed with him, and then using the media in an attempt to publicly undermine his superior officers while falsely painting himself as the hero that the Navy should be listening to.  This pattern began around the time that he graduated from the U.S. Naval Academy and penned a column for the Capital Gazette, complaining that the Naval Academy had failed to rewrite their Honor system in the way that Plaintiff wanted them to.[3]

LT Shaw went on to flight training and ultimately, after qualifying to fly the F/A-18C Hornet, LT Shaw was assigned to VFA-131.  Despite his limited experience, he decided to write a white paper called "Ball Flying for F-18 Pilots," where he espoused a completely untested, unauthorized, and dangerous method of using an instrument called the Velocity Vector Indicator as a primary tool for lining up an approach to land on an aircraft carrier.  However, rather than submitting his white paper to Naval Air Systems Command to test

---

[3]        https://archive.is/20140201064011/http://www.capitalgazette.com/news/guest-column-naval-academy-honor-concept-strays-from-roots/article_f3b4151b-da04-5df1-a047-f3e1ef525d85.html

and evaluate, he instead began sharing this document with other junior aviators who began testing his theories with near catastrophic results.

After several scary wave-offs and one near ramp strike, the Landing Signals Officers ("LSO")[4] and leadership discovered that these junior aviators were dabbling in LT Shaw's theory, rather than following the prescribed method of carrier landings.  On August 22, 2016, the air wing LSO sent a message to the LSO School to report on LT Shaw's activities and the potentially deadly consequences:

> We crushed a Hornet JO - he wrote a 9 page manifesto on velocity vector gouge and ball flying.  We had just found out about it, but we quickly found out it was circling amongst some of the Airwing JOs. Boxxx has a video of a pass from a JO in that squadron, apparently under the tutelage of the manifesto-writer, that we will get to you. Not sure how Boxxx kept him off the ramp - truly scary vision.  Don't worry, the last page of the manifesto was an appendix that calculated the angle an aircraft would have to maintain to fly straight into the round down from the start (no, I'm not joking). This may be the only accurate section in the entire document - but I'm not going to test it out for you.

One week later, LT Shaw was detached from VFA-131 and sent home for medical treatment after injuring himself during an alcohol fueled port visit.  However, the LSO leadership took action to ensure that all LSOs were on the lookout to ensure that no other aviators were following LT Shaw's landing technique.  Although they kept his identity

---

[4] The landing signal officer's primary responsibility is the safe and expeditious recovery of fixed-wing aircraft aboard ship. The employment of high-performance aircraft and the necessity for all weather operations have placed ever increasing demands on the LSO's skill and judgment. Through training and experience, he is capable of correlating

factors of wind, weather, aircraft capabilities, ship configuration, pilot experience, etc., in order to provide optimum control and assistance in aircraft landings. The LSO is also directly responsible for training pilots in carrier landing techniques. In this regard, he must constantly monitor pilot performance, schedule and conduct necessary ground training, counsel and debrief individual pilots, and certify their carrier readiness and qualification. The pilot and LSO form a professional and disciplined team, both ashore and afloat. The LSO strives to develop the pilot's confidence, judgment, maximum effort, technical proficiency, and personal interest. The pilot must rely on the LSO's experience

and ability to prepare him for optimum effectiveness as a carrier pilot.

anonymous, the incident was reported in the September 2016 LSO newsletter, which was transmitted to all LSOs fleet wide.

LT Shaw was next assigned as an instructor pilot at VFA-106, the fleet replacement squadron that trains new aviators how to fly the F/A-18E/F Super Hornet. He missed the first several months to recover from his knee injury, but once he returned to full duty, he made little to no effort to get his required qualifications to serve as an Instructor Pilot ("IP"). Instead, he focused his efforts on finding complaints that he could file against the squadron, while secretly teaching students the same prohibited carrier landing techniques that had nearly killed his squadron mate at VFA-131.

### The Complaints

LT Shaw sought out opportunities to file complaints against his command. He searched the list of students who had failed to qualify and reached out to the only two African Americans on the list with an enticing offer, he would assist them with filing complaints alleging racism against the squadron and potentially give them another shot at their dreams of becoming fighter pilots. Although he was never a flight instructor for either student (and one had left the squadron well before LT Shaw arrived), he helped them weave a tale of racism that was completely unsupported by the evidence and unsupported by any of the African American instructors at the squadron. When his complaints failed to achieve the desired results, LT Shaw took these false claims to both Senator Warner's office and the media. Although he successfully got a profile in military.com about the alleged racism at VFA-106, and his own fake prowess as an instructor, the investigations failed to produce any evidence of bias resulting in these students' failures to perform. After the article was released, at least one of those students admitted that he knew he was disenrolled because he had difficulty keeping up with his

peers, not because of any racism.  After an investigation, it was determined that these two students were disenrolled because of sustained substandard performance and were unable to complete the fighter syllabus successfully.  However, some of the instructors failed to treat the students with proper dignity and respect.  Changes were immediately implemented to ensure that no such problems would occur in the future.

Similarly, LT Shaw looked for a complaint to file for the purpose of targeting the LSOs, who had crushed his dangerous carrier landing technique.  He seized on a longstanding and voluntary tradition of "bottle bets," whereby students could make friendly bets with their LSO instructors on whether they would pass their qualifications.  LT Shaw manufactured claims that he had been approached by several students to complain and that he had attempted to discuss the matter with several instructors to correct it, but without avail.  Both the claims of racism and bottle bets are false, as LT Shaw acted alone and made no efforts to give the command the opportunity to correct any improprieties.  Although he had the option to remain anonymous, LT Shaw elected to become the named complainant.

Unfortunately for LT Shaw, the Inspector General found "that the allegation involves a command matter for which ISIC oversight and resolution, rather than IG inquiry, is appropriate."  Thereafter, the command took positive actions to ensure that the traditional practice was reigned in and made clear that it was an optional exercise, thus ensuring that it was conducted legally and ethically.  LT Shaw refused to accept that his efforts to attack the LSO community[5] had failed to produce the retaliatory results he

---

[5] It is important to understand that carrier landing training is a matter that LT Shaw had absolutely no involvement with.  As he never tried to become an LSO, he is ineligible from even becoming qualified to teach carrier landings.  He therefore was not involved in any of the carrier landing training or execution and was not present or involved in any of the bottle bet activities.

sought, so he brought the matter to Senator Warner's office to escalate an already resolved matter. Eventually, Commander of Naval Air Forces put out a message to cease all bottle bets. Thereafter, LT Shaw revealed himself to the command as the complainant.

LT Shaw pushed these complaints for the sole purpose of attacking the command and particularly the LSOs, while ensuring that everyone knew that he was behind them so that he could use whistleblower protection status to immunize himself from any accountability.

**LT Shaw's Dangerous Misconduct**

Throughout his tour at VFA-106, LT Shaw made little effort to get qualified to teach any phase of instruction. Rather than spending time getting qualified to teach the approved syllabus, he devoted his efforts to creating an entirely new syllabus, spending hundreds of hours drafting papers, exercises, presentations, videos, and drawings. Many of the techniques included in his syllabus are unproven, overly simplistic, or downright dangerous ways to fly the Super Hornet. The centerpiece of his unauthorized curriculum is, of course, the dangerous carrier landing techniques that had almost killed his shipmate at VFA-131. However, rather than submit this syllabus through the proper channels of the Navy for review and potential approval to be used as part of the official syllabus, LT Shaw concealed these lessons from all the qualified instructors and aviators. Instead, he secretly provided it to the impressionable and inexperienced students.

In addition to providing unauthorized and dangerous training to students, while he, himself was unqualified to work as an instructor, LT Shaw began sneaking a camera into the simulator building to film himself performing experimental maneuvers in the simulator. This is highly illegal, as the simulator building is a secure facility that houses classified materials.

9

## Accountability vs. Retaliation

When squadron leadership stepped in to try to hold LT Shaw accountable and ensure that his actions did not result in student deaths, LT Shaw filed several more Inspector General Complaints claiming retaliation. By a quirk of fate, the case was assigned to David Ursini, a disgruntled former Naval Flight Officer and inept investigator who conducted an extraordinarily incompetent investigation. Despite a complete lack of evidence supporting LT Shaw's claims and a mountain of exculpatory material, Mr. Ursini wrote a report concluding that LT Shaw had been retaliated against by his squadron leadership.

As discussed more fully in the complaint filed against Mr. Ursini, which was included as Exhibit 3 to Plaintiff's Motion for a Preliminary Injunction, this report failed to properly address the issue of causation. It is undisputed that LT Shaw made protected communications and it is undisputed that there were adverse personnel actions taken against him. There is no evidence that these two situations are linked, as the adverse personnel actions were all required based on squadron leadership's obligation to ensure safety of flight and to address misconduct by LT Shaw which was unrelated to his protected communications. Therefore, the actions taken by squadron leadership against LT Shaw for his dangerous misconduct were authorized and lawful, pursuant to subparagraph (b)(2)(C) to 10 USC § 1034:

> Nothing in this paragraph shall be construed to limit the ability of a commander to consult with a superior in the chain of command, an inspector general, or a judge advocate general on the disposition of a complaint against a member of the armed forces for an allegation of collateral misconduct or for a matter unrelated to a protected communication. Such consultation shall provide an affirmative defense against an allegation that a member requested, directed, initiated, or conducted a retaliatory investigation under this section.

At this point, the squadron leadership hired civilian attorney, Defendant Timothy Parlatore, to represent them.  A rebuttal submission was prepared that eviscerated Mr. Ursini's report, leading the Marine Corps to file a Report of No Misconduct against the Executive Officer of VFA-106, LtCol Nesbitt.  The original squadron commander, CDR Weyenberg was given a Non-Punitive Letter of Caution, while the commander who replaced him, CDR Scott was completely exonerated.

## Agency Action

Undeterred, LT Shaw pushed his case to Congress, where he intentionally deceived Congresswoman Elaine Luria to write to the Secretary of the Navy demanding that LT Shaw be put back on flight status.  He also intentionally deceived other elected officials and non-profit, Project on Government Oversight ("POGO") to advocate on his behalf.

Ultimately, under the political pressure that LT Shaw had brought to bear, the Assistant Secretary of the Navy for Manpower and Reserve Affairs ("ASN M&RA") issued an order blindly accepting the obviously deeply flawed findings of Mr. Ursini, without making any effort to hear the other side of the story.  He ordered that LT Shaw's service record be sanitized of all adverse effects of his misconduct and that the squadron leadership be evaluated for whether their retirement should be reduced as a result.  ASN M&RA gave LT Shaw everything that he wanted, except for one thing.  He set parameters to limit the scope of any re-investigation of LT Shaw, while LT Shaw wanted him to prohibit the Navy from ever investigating him or holding him accountable for placing lives at risk and potentially compromising classified materials.

## LT Shaw Files a Frivolous Lawsuit

In a desperate effort to delay or avoid the investigation into his own misconduct, LT Shaw has filed the instant lawsuit.  His initial complaint contains numerous material misstatements of fact and incomprehensible legal claims.

One of the most offensive and malicious aspects of the complaint is LT Shaw's opportunistic claims of a racist conspiracy.  Cognizant of the stigma and potential publicity that attaches to one who is branded a racist, LT Shaw intentionally and falsely presents the complaint as a tale of racism in VFA-106 and in Naval Aviation.  While there is room for improvement in certain areas, the tale of racism told by LT Shaw is wholly invented.  In fact, the investigations revealed that none of the African American instructors concurred with LT Shaw's claims about racism at VFA-106.

These outrageously false claims were made as part of LT Shaw and his attorney's despicable efforts to use this lawsuit as a publicity stunt.  LT Shaw attempted to have this case reported in the media and even brought a publicist with him to Court at the initial appearance on the preliminary injunction.  After the Navy Times did report on the case, Plaintiff's counsel posted the article on his firm's website and promoted the article on social media with the hashtag #racism.

In an effort to silence the opposition, LT Shaw also sued the civilian attorney representing his squadron leadership on an inept libel theory, while moving for a preliminary injunction seeking a prior restraint on both the attorney's First Amendment rights, as well as to prevent him from advocating on his clients' behalf.

During the oral arguments on this preliminary injunction, LT Shaw's attorney, Eric Montalvo, made several material misrepresentations to the Court.  For example, Mr. Montalvo told the Court a story about how he had cross-examined LtCol Nesbitt at a prior

administrative hearing when, in fact, there was no such cross-examination.  He also falsely claimed that LT Shaw had received a Navy Achievement Medal for teaching his dangerous carrier landing technique when the citation clearly shows this to also be untrue.

What makes this case particularly offensive is LT Shaw's decision to take advantage of two African American former student pilots in an effort to paint a false picture of racism in the Navy.  LT Shaw specifically sought out to these two individuals (one of whom had already left before LT Shaw arrived at VFA-106) to encourage them to file EO complaints on the promise that it could help them get back into training.  LT Shaw pushed them into media interviews, all with the goal of falsely portraying the squadron as racist and himself as a master instructor (while concealing the fact that he failed to qualify to instruct even a single phase).  Both of their EO complaints were unfounded because race played no role in their disenrollment, yet LT Shaw is continuing to appropriate their debunked stories to protect himself.  Now, by filing this frivolous complaint and pushing a false racism narrative in the media, he has attempted to again drag these two officers into a public spotlight for his personal benefit.

## LEGAL STANDARD

Fed.R.Civ.P. 11 provides that:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

## ARGUMENT

### I.   The Claims Against Defendant Parlatore are Being Presented for an Improper Purpose

This entire lawsuit is nothing more than a publicity stunt and frivolous abuse of the judicial system for the purpose of prolonging the inevitable.  LT Shaw did not show up to the courthouse with a team of lawyers, but rather a lawyer and a publicist. Immediately following the appearance, his attorney (presumably with the assistance of his publicist) posted an article about the proceeding on his website and social media.  This pattern of behavior follows LT Shaw's pattern of attempting to put himself into the media spotlight while using that spotlight to falsely bash his shipmates.

Discovery has similarly demonstrated the completely improper purpose of Plaintiff's litigation strategy, as he has demanded obviously privileged and confidential information from Defendant, while providing almost nothing in return.  He aggressively demands to schedule depositions of Defendants while ignoring all attempts to discuss

14

availability of Plaintiff to be deposed.  Now, he is issuing subpoenas to depose officers who held him accountable while on active duty, but who possess no non-privileged, admissible information relevant to the claims Plaintiff is asserting here.

Moreover, as discussed in the next section, Plaintiff's claim against Defendant Parlatore is wholly unwarranted under existing law – a fact that has been clearly communicated to Plaintiff and his counsel in the past, yet he persists in maintaining this completely frivolous cause of action.

Separately, while not asserted against Defendant Parlatore, Plaintiff's Privacy Act claims against the Navy are also knowingly frivolous.  The documents that Plaintiff complains were transmitted to Defendant Parlatore were provided as part of discovery in the course of representing his clients.  Plaintiff's counsel, as a former JAG lawyer with the Marine Corps, is fully aware that the military is required to provide discovery to defense counsel in such cases and presumably even received similar documents from the Navy in his representation of LT Shaw.  Now that discovery has progressed, Plaintiff has documentary proof that these documents were lawfully provided, yet he persists in maintaining this knowingly baseless case.  Although this cause of action is not asserted against Defendant Parlatore, Plaintiff's frivolous conduct is emblematic of his larger misconduct in this case and is the basis for his abuse of the discovery process, for the purpose of harassing Defendant Parlatore and his clients.

## II.    The Libel Claim is Unwarranted Under the Law and Completely Frivolous

In asserting libel claims against Defendant Parlatore, Plaintiff utterly failed to properly consider both the factual and legal basis of these claims.  As an introductory matter, LT Shaw is a limited-purpose public figure based on his voluntary participation

in various news article and interviews and, as such, is required to meet the heightened standard of actual malice.  However, under any standard, this cause of action fails, as the sole remaining allegedly libelous statement is invalid on its face:

> Mr. Parlatore inferred that Lt. Shaw had unlawfully trespassed on either government or private property in order to obtain a copy of Lt. Col. Nesbitt's notebook-the very same one produced by Lt. Col. Nesbit at Lt. Shaw's FNAEB. Specifically, Mr. Parlatore asserted: "It is unknown how LT Shaw came to possess a copy of LtCol Nesbitt's notebook in the first place. It appears that he either unlawfully searched LtCol Nesbitt's office to make copies for himself or received copies from [the DoD IG] .. Either possibility is a very serious and deeply concerning issue."

*Complaint* ¶111.

A plain reading of this quote, in context, demonstrates that Defendant was asking the DoD IG to investigate whether David Ursini had improperly given documents to LT Shaw that he had obtained during his investigation, or if there was another explanation that would exonerate Mr. Ursini, such as LT Shaw taking a copy from LtCol Nesbitt's office.  "A statement challenged as defamatory, regardless of whether it is posed as a question, cannot be libelous unless it can reasonably be read as a false assertion of fact." *Abbas v. Foreign Policy Grp., LLC*, 975 F. Supp. 2d 1, 15 (D.D.C. 2013), *citing Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1094 (4th Cir. 1993). ("[I]nquiry itself, however embarrassing or unpleasant to the subject, is not accusation.").[6]

---

[6] These issues could have been raised in a Motion to Dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), however Defendant chose not to do so in favor of first putting Plaintiff through the paces of discovery.  As Plaintiff's criminal conduct and persistent false statements have severely damaged Defendant's clients, some of whom were still facing disciplinary actions as a result of Plaintiff's misconduct at the time, Defendant put the best interests of his clients above his own to use the discovery mechanisms to which Plaintiff had foolishly exposed himself to in order to exonerate his clients.  However, these arguments could still be raised at any time in either a Fed.R.Civ.P. 12(c) motion or a Fed.R.Civ.P. 56 motion.

On its face, the only factual assertion here is that "[i]t is unknown how LT Shaw came to possess a copy of LtCol Nesbitt's notebook in the first place," not an affirmative statement that he had taken it from LtCol Nesbitt's office.  This type of statement cannot legally be considered defamatory.

However, even under this patently deficient interpretation, it is impossible for LT Shaw to have suffered any damage from this statement because his reputation is libel-proof.  "Libel-proof plaintiffs are those whose reputation is so besmirched, either from uncontested portions of the allegedly libelous publication or from other events occurring prior to the challenged publication, that as a matter of law such plaintiffs would be unable to recover for further damage to reputation." *Liberty Lobby, Inc. v. Anderson*, 562 F. Supp. 201, 209 n.12 (D.D.C. 1983), *citing Simmons Ford, Inc. v. Consumers Union of the United States, Inc.*, 516 F. Supp. 742 (S.D.N.Y.1981).

Here, it is uncontested that LT Shaw engaged in a host of unsavory behavior. Among many other things, he surreptitiously recorded conversations with his superior officers, including those he has not yet met, such as CDR Scott.  He collected screenshots of group chats that he was not a participant in.  Through his behavior, he had already soiled his own reputation so badly that any allegation of copying LtCol Nesbitt's notebook would be superfluous.

## III.   Mr. Montalvo Made Material Misrepresentations to the Court in the Initial Appearance

On February 13, 2020, when the parties appeared before the Court, there was limited oral argument, yet the arguments that Mr. Montalvo advanced contained knowing, material misstatements of fact.  First, he stated:

> So what all this means is that the executive officer, during 2018, came in to testify. I cross-examined him on that testimony. He then said

17

he had notes that reflected the situation. He then -- it was demonstrated that the notes that he said that were taken contemporaneous could not have been accurate because the dates that he was providing, Lieutenant Shaw was either on leave or not even in the command. And so the investigation ultimately determined -- and we have this and will supplement the record -- that their testimony of both the commanding officer and the executive officer was incredible or not reliable.

Mr. Montalvo was fully aware that this statement was entirely false, yet he chose to fabricate a cross-examination that he then told the Court. The reality is that he never cross-examined LtCol Nesbitt, as COMNAVAIRFORINST 5420.1H states:

The FNAEB respondent has no right to be represented by a military lawyer before the board. The respondent may bring a lawyer or non-lawyer advisor and may confer with the advisor during the course of the hearing. The respondent's advisor may testify before the board, just as any other witness; however, the advisor may not take an active part in the hearing. Specifically, an advisor may not: a. challenge board members, b. question board members or witnesses, and c. make objections, arguments or opening and closing statements.

Later, Defendant provided Mr. Montalvo with the opportunity to correct the record, as required by R.P.C. 3.3(a)(1) or to "supplement the record," as he had promised during that Court appearance, but Mr. Montalvo instead flippantly responded, "In the words of the pirate Barbossa, 'I'm disinclined to acquiesce to your request.' Have a good day."

Later in that same hearing, Mr. Montalvo falsely stated:

What Mr. Parlatore continues to do is either he's misinformed or he's not well researched, because when he's saying these training techniques and things, as we will supplement in the record, he's got accolades. He's got Navy achievement medals for the very conduct that Mr. Parlatore is saying is dangerous and wanton. And we will demonstrate that in the record.

Yet, a review of the two Navy Achievement Medals that LT Shaw received demonstrates this to be yet another false statement. One was for cataloging Heads-up Display ("HUD") videos from the T-45s in Pensacola and the other is a standard End-of Tour award from VFA-131, which makes no such reference. While it would generally be possible that a lawyer would unknowingly made this false statement based on false information from his client, in this case, Mr. Montalvo did assist Plaintiff in his FNAEB and would have presumably reviewed his award citations before and perhaps even included them in his FNAEB package.

Thus, substantially all of the factual representations that Mr. Montalvo made to the Court on February 13, 2020 were false. Although he told the Court no less than five times that he would "supplement the record" on these points, no such supplement was ever submitted because any such supplement would have revealed his statements to be completely false.

R.P.C. 3.3(a)(1) requires attorneys "to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Yet, despite numerous requests from Defendant Parlatore, Mr. Montalvo has steadfastly refused to comply with his ethical obligations.

## Conclusion

Someday, the case of LT Shaw will likely become a case study for military officer leadership courses of what to do when faced with a chronic IG complainer who also presents an unmitigated safety risk.   While LT Shaw has certainly secured his place in Naval Aviation history, this frivolous case continues.  It is time to end the abuse and sanction Plaintiff and his counsel for their frivolous conduct.

Respectfully submitted,

Timothy C. Parlatore, Esq.
*Defendant, pro se*
Parlatore Law Group, LLP
One World Trade Center, Suite 8500
New York, New York 10007
212-679-6312
timothy.parlatore@parlatorelawgroup.com

# Exhibit S

| From: | Timothy Parlatore, Esq. |
|---|---|
| To: | Eric Montalvo |
| Cc: | Brenda; Daisy Chung; Carol Thompson; Cristina Lagarde; Laura Berry; James Asbill |
| Subject: | RE: Shaw Deposition Notice |
| Date: | Friday, September 2, 2022 4:27:41 PM |
| Attachments: | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |
| | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |
| | Motion for Sanctions.pdf |

Montalvo, please see attached.

Please be advised that pursuant to Fed.R.Civ.P 11(c)(2), you have until September 23, 2022 to dismiss the complaint and take appropriate corrective action, otherwise this motion will be filed on Monday, September 26, 2024.

Pursuant to LCvR 7(m), I would like to confer with you prior to September 19, 2022 to see if we can resolve this issue without motion practice. Please let me know your availability to discuss, or if you are not willing to have any such discussions.



CONFIDENTIAL NOTICE: This E-mail (including any attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received the message in error, please reply to notify the sender and then delete the message. Thank you.

https://lcardapp.com/lcard/timothy.parlatore-51814

On Fri, Sep 02, 2022 at 6:23 AM, Timothy Parlatore, Esq. <timothy.parlatore@parlatorelawgroup.com> wrote:
Does this mean that you are still refusing to provide Shaw's availability for a deposition? Kind of an important point to understand as part of your proposed motion.



CONFIDENTIAL NOTICE: This E-mail (including any attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, is confidential, and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received the message in error, please reply to notify the sender and then delete the message. Thank you.

https://lcardapp.com/lcard/timothy.parlatore-51814

On Thu, Sep 1 2022 at 23:39, Eric Montalvo <emontalvo@fedpractice.com> wrote: