# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

|  |  |
|---|---|
| **In the matter of:**<br><br><br>**MOTION TO QUASH SUBPOENA TO NON-PARTY JOURNALIST CARL PRINE** | Miscellaneous Action No. _____<br><br><br>**ORAL ARGUMENT REQUESTED** |

## MOTION OF NON-PARTY JOURNALIST CARL PRINE
## TO QUASH SUBPOENA
## OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

Pursuant to Rule 45(d) of the Federal Rules of Civil Procedure, non-party journalist Carl Prine, by and through undersigned counsel, respectfully moves to quash the August 29, 2022 subpoena for his deposition testimony, which was issued by counsel for Steven Shaw, plaintiff in *Shaw v. Del Toro, et al.*, Civil Action No. 20-cv-410, a civil lawsuit currently pending before the U.S. District Court for the District of Columbia (hereinafter the "Shaw Lawsuit"). In the alternative, Prine seeks a protective order circumscribing the scope of any testimony he is compelled to provide in order to protect his newsgathering and reporting work product, including his communications with sources. Prine is a resident of Hamilton County, Indiana; this Court is therefore the appropriate venue for this Motion pursuant to Rule 45(d)(3)(A).[1]

The subpoena issued to Prine is unduly burdensome, Fed. R. Civ. P. 45(d)(3)(A)(iv), and it seeks the disclosure of information protected by the reporter's privilege under the First Amendment and common law, Fed. R. Civ. P. 45(d)(3)(A)(iii), and by statutory journalist shield

---

[1] All references herein to the "Rules" are to the Federal Rules of Civil Procedure unless otherwise stated.

laws in Indiana, Ind. Code Ann. § 34-46-4-1, *et seq.*, and the District of Columbia, D.C. Code § 16-4701, *et seq.* Accordingly, for the reasons detailed in the Memorandum of Points and Authorities filed in support of this Motion, the Court should enter an order quashing the subpoena and awarding Prine his reasonable attorney's fees pursuant to Rule 45(d)(1). *See Am. Soc. of Media Photographers, Inc. v. Google, Inc.*, No. 13 C 408, 2013 WL 1883204, at *6 (N.D. Ill. May 6, 2013); *Builders Ass'n of Greater Chicago v. City of Chicago*, No. 96 C 1122, 2002 WL 1008455, at *1 (N.D. Ill. May 13, 2002). At minimum, in the alternative, the Court should enter a protective order restricting the subject matter of any deposition of Prine.

This Motion is based on the concurrently filed Memorandum of Points and Authorities, supporting Declarations of Katie Townsend and Carl Prine, all pleadings, records, and files in the above-captioned matter and the Shaw Lawsuit, all matters of which the Court shall take judicial notice, and on such argument as may be presented by counsel at any hearing on this Motion.

Counsel for Prine met and conferred with counsel for Shaw, the subpoena-issuing party, on September 14 and September 20, 2022. Counsel for Shaw has stated Shaw will not withdraw the subpoena and that Shaw will oppose the relief sought by this Motion.

Dated: September 21, 2022

Respectfully submitted,

*/s/ Katie Townsend*
Katie Townsend
REPORTERS COMMITTEE
  FOR FREEDOM OF THE PRESS
 1156 15th St. NW, Ste. 1020
Washington, D.C. 20005
Telephone: (202) 795-9303
Email: ktownsend@rcfp.org

*Counsel for Non-Party Movant Carl Prine*

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2022, a copy of the Motion of Non-Party Journalist Carl Prine to Quash Subpoena or, in The Alternative for a Protective Order (the "Motion"), the concurrently filed brief in support of the Motion, the Declaration of Katie Townsend and exhibits thereto, and the Declaration of Carl Prine were filed electronically through the Court's Electronic Case Filling System.

I further certify that on September 22, 2022, a copy of the foregoing Motion, brief, and declarations were mailed by first-class U.S. Mail, postage prepaid, and properly addressed to the following, who are counsel of record in *Shaw v. Del Toro, et al.*, a case pending before the U.S. District Court for the District of Columbia (Civil Action No. 20-cv-410), in which Movant's testimony is sought:

**Eric Sebastian Montalvo**
Federal Practice Group Worldwide Service
1750 K Street, NW
Suite 900
Washington, DC 20006
*Counsel for Steven E. Shaw*

**Timothy Parlatore**
Parlatore Law Group LLP
One World Trade Center
Suite 8500
New York, NY 10007
*Counsel for Timothy C. Parlatre*

**Bradley Silverman**
**Brenda A. González Horowitz**
DOJ-USAO Civil Division
601 D Street NW
Washington, DC 20001
*Counsel for Carlos Del Toro, Kenneth Braithwaite, and Thomas Harker*

/s/ Katie Townsend
Katie Townsend

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

**In the matter of:**

**MOTION TO QUASH SUBPOENA TO
NON-PARTY JOURNALIST CARL
PRINE**

Miscellaneous Action No. _____

## BRIEF IN SUPPORT OF
## NON-PARTY JOURNALIST CARL PRINE'S MOTION TO QUASH SUBPOENA
## OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

Katie Townsend
REPORTERS COMMITTEE
  FOR FREEDOM OF THE PRESS
 1156 15th St. NW, Ste. 1020
Washington, D.C. 20005
Telephone: (202) 795-9303
Email: ktownsend@rcfp.org

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND .............................................................................................................. 2

STANDARD OF LAW........................................................................................................ 6

ARGUMENT .................................................................................................................. 8

I.  This Court should quash the subpoena pursuant to Rule 45(d) because enforcing
compliance would place an undue burden on a non-party journalist................................. 8

    A.  Shaw has all the facts and evidence necessary to establish what version of
Nesbitt's notebook, if any, he provided to "the media.".......................................... 10

    B.  Shaw has no reason to depose Prine about Parlatore's statement that he
forwarded records about Shaw to reporters. ......................................................... 11

    C.  Prine cannot be called to testify as to whether Shaw is a public figure,
which is an issue of law. ......................................................................................... 12

II.  This Court should quash the subpoena pursuant to Rule 45(d) because it seeks
privileged or other protected matter under Indiana and Seventh Circuit law. .................. 12

III.  This Court should quash the subpoena pursuant to Rule 45(d) because it seeks
privileged or other protected matter under District of Columbia and D.C. Circuit
law. ................................................................................................................................. 15

    A.  District of Columbia and D.C. Circuit substantive law should control
resolution of Prine's privilege assertions. ............................................................. 15

    B.  District of Columbia and D.C. Circuit substantive law require that the
subpoena be quashed.............................................................................................. 18

IV.  In the alternative, the Court should enter a protective order limiting the scope of
any deposition of Prine. ................................................................................................. 21

V.  If the Court quashes the subpoena under an undue burden analysis, it should
award Prine his reasonable attorney's fees. ................................................................... 21

CONCLUSION.................................................................................................................. 22

# TABLE OF AUTHORITIES

## Cases

*Acuity v. Kerstiens Home & Designs, Inc.*,
    No. 1:16-cv-02800, 2018 WL 3375015 (S.D. Ind. July 10, 2018) ..............................................7

*Am. Soc. of Media Photographers, Inc. v. Google, Inc.*,
    No. 13 C 408, 2013 WL 1883204 (N.D. Ill. May 6, 2013) .......................................................22

*Branzburg v. Hayes*, 408 U.S. 665 (1972) .....................................................................................14

*Builders Ass'n of Greater Chicago v. City of Chicago*,
    No. 96 C 1122, 2002 WL 1008455 (N.D. Ill. May 13, 2002) ..................................................22

*Calderon v. Melhiser*, 458 F. Supp. 2d 950 (S.D. Ind. 2006)....................................................15, 16

*Daimler Chrysler Corp. Healthcare Benefits Plan*, 448 F.3d 918 (6th Cir. 2006) .......................17

*Daly v. Nexstar Broad., Inc.*, 542 F. Supp. 3d 859 (S.D. Ind. 2021)...............................................7

*Eli Lilly do Brasil, Ltda v. Fed Express Corp.*, 502 F.3d 78 (2d Cir. 2007)..................................17

*Gray v. Hoffman-La Roche, Inc.*,
    No. 02-136(RMU), 2002 WL 1801613 (D.D.C. Mar. 27, 2002) ........................................7, 20

*Grunseth v. Marriott Corp.*, 868 F. Supp. 333 (D.D.C. 1994) ...................................................7, 19

*Hobley v. Burge*, 223 F.R.D. 499 (N.D. Ill. 2004)....................................................................9, 10

*Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071 (Ind. 1987) .......................................................16

*In re Subpoena Duces Tecum To Stearns v. Zulka*,
    489 N.E.2d 146 (Ind. Ct. App. 1986) ...........................................................................8, 13, 15

*Jafari v. Wynn Las Vegas, LLC*, 569 F.3d 644 (7th Cir. 2009) .....................................................17

*Lee v. Dep't of Justice*, 413 F.3d 53 (D.C. Cir. 2005) ...................................................................20

*Lien Huynh v. Chase Manhattan Bank*, 465 F.3d 992 (9th Cir. 2006) ..........................................17

*Linder v. Dep't of Def.*, 133 F.3d 17 (D.C. Cir. 1998)....................................................................6

*Longs v. Lebo*, No. 3:07-CV-83 RM, 2009 WL 799533 (N.D. Ind. Mar. 24, 2009)......................7

*McCoy v. Oberdrola Renewables, Inc.*, 760 F.3d 674 (7th Cir. 2014) ..........................................15

*McKevitt v. Pallasch*, 339 F.3d 530 (7th Cir. 2003) .................................................................14, 17

*Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923 (7th Cir. 2004) ....................................................8, 10

*Patterson v. Burge*, No. 03 C 4433, 2005 WL 43240 (N.D. Ill. Jan. 6, 2005) .........................9, 11

*Peck v. City of Boston (In re Slack)*, 768 F. Supp. 2d 189 (D.D.C. 2011)................................7, 20

*Prentice v. McPhilemy*, No. 98-CA-0004309,
    1999 D.C. Super. LEXIS 29 (D.C. Super. Ct. May 5, 1999)................................................8, 18

*Shaw v. Del Toro*, No. 20-cv-410 (D.D.C. Feb. 12, 2020) .................................................. *passim*

*Tavoulareas v. Piro*, 817 F.2d 762 (D.C. Cir. 1987) ...................................................................12

*Thayer v. Chiczewski*, 257 F.R.D. 466 (N.D. Ill. 2009)..................................................................8

*Zerilli v. Smith*, 656 F.2d 705 (D.C. Cir. 1981) ....................................................................17, 20

## Statutes and Rules

5 U.S.C. § 552a .......................................................................................................................2, 11

D.C. Code § 16-4701 ..............................................................................................................8, 18

D.C. Code § 16-4702 .....................................................................................................15, 18, 19

Fed. R. Civ. P. 45(a)(3) ................................................................................................................1

Fed. R. Civ. P. 45(d) ...................................................................................................... *passim*

Ind. Code § 34-46-4-1 ..............................................................................................................7, 13

Ind. Code § 34-46-4-2 ..............................................................................................................13, 15

## Other Authorities

Carl Prine, *Top Navy Aviators Sued by Lieutenant Claiming Vast Racist* Conspiracy,
    Navy Times (Feb. 13, 2020), https://perma.cc/TK3P-7S98 ........................................................6

Geoff Ziezulewicz, *Marine XO of the Navy's Gladiator Fired*, Navy Times (Aug. 9,
    2019), https://perma.cc/Q2T4-9LRF ........................................................................................6

Geoff Ziezulewicz, *The Inside Story on Why Air Boss Barred Paddles from Wagering
    Boozy 'Bottle Bets' with Nuggets*, Navy Times (May 31, 2019),
    https://perma.cc/M686-PP9K ....................................................................................................6

*Marines Clear XO Fired from the Navy's Gladiators*, Navy Times (Sept. 13, 2019),
    https://perma.cc/7WZU-WDGJ ................................................................................................6

Restatement (Second) of Conflict of Laws § 139 (1971) .......................................................17, 18

# INTRODUCTION

On August 29, Carl Prine—a journalist who previously worked for the Navy Times—was served with a deposition subpoena at his home in Hamilton County, Indiana.[1]  The subpoena for Prine's testimony was issued by Navy Lieutenant Steven E. Shaw ("Shaw"), plaintiff in the following civil lawsuit currently pending in the U.S. District Court for the District of Columbia: *Shaw v. Del Toro*, No. 20-cv-410 (D.D.C. Feb. 12, 2020) (hereinafter the "Shaw Lawsuit").[2]

Prine is not a party to the Shaw Lawsuit.  And, as detailed below, the only possible connection—and it would be a tenuous one—that he could have to any of the events underlying the Shaw Lawsuit is his journalism; from May 2019 to February 2020, Prine wrote, edited, or contributed to a handful of articles for the Navy Times that mention individuals and events involved in the Shaw Lawsuit.  While the subpoena Prine received did not identify the topics on which he is expected to testify,[3] meet-and-confer discussions with Shaw's counsel confirm that the only possible purpose to be served by deposing Prine would be to question him about his reporting, including communications Prine may or may not have had with sources as part of his newsgathering.  Moreover, and in any event, it is apparent that deposing Prine is unnecessary; any relevant information he could possibly have, if it exists, would be readily obtainable from other sources—namely, the parties to the Shaw Lawsuit, including Shaw himself.

---

[1] See Declaration of Carl Prine ("Prine Declaration" or "Prine Decl."), ¶ 3; Declaration of Katie Townsend ("Townsend Declaration" or "Townsend Decl."), 4,  Ex. A.

[2] It does not appear the subpoena was properly issued.  The subpoena was signed by Shaw's counsel, Eric Montalvo, who is not a member of the bar of this Court, and it was not signed by a clerk prior to its issuance.  Townsend Decl. ¶ 4, Ex. A; Fed. R. Civ. P. 45(a)(3); *see* Attorney Admission Information, Southern District of Indiana (last visited Sept. 20, 2022), https://ecf.insd.uscourts.gov/cgi-bin/BarLookup.pl.

[3] *Id.*

Accordingly, pursuant to Federal Rule of Civil Procedure 45(d), Prine respectfully moves this Court for an order quashing the subpoena on the grounds that it (1) imposes an undue burden on a non-party and (2) seeks privileged or other protected matter, specifically, Prine's journalistic work product and information about his communications with sources—information shielded from compelled disclosure by statute, common law, and the First Amendment.[4] In the alternative, at minimum, the Court should enter a protective order limiting the scope of Prine's testimony to specific factual matters—such as the existence of any records of communications between Prine and Shaw and/or Prine and Timothy Parlatore ("Parlatore"), a defendant in the Shaw Lawsuit—that Shaw's counsel can demonstrate to this Court are relevant to a claim or defense in the Shaw Lawsuit and cannot be obtained from another source. Such a protective order is necessary to ensure that Prine is not subjected to undue burden or broad-ranging, invasive questioning about his sources and First Amendment-protected newsgathering activities. In addition, should the Court grant his Motion, Prine respectfully requests an award of reasonable attorney's fees pursuant to Rule 45(d).[5]

## BACKGROUND

In February 2020, Navy Lieutenant Steven E. Shaw sued the United States Navy and Timothy Parlatore, a civilian attorney who regularly represents Navy officers as clients. Complaint, *Shaw v. Del Toro*, No. 20-cv-410 (D.D.C. Feb. 12, 2020), ECF No. 1.[6] In his now-operative Amended Complaint, Shaw alleges that the Navy violated the federal Privacy Act, 5 U.S.C. § 552a, and that Parlatore defamed Shaw. *See* Amended Complaint, ECF No. 46.

---

[4] For the reasons set forth below, District of Columbia and D.C. Circuit substantive law should govern the Court's resolution of Prine's reporter's privilege claims.

[5] All references to the "Rules" are to the Federal Rules of Civil Procedure unless otherwise stated.

[6] All citations to ECF filings refer to filings in the Shaw Lawsuit unless otherwise stated.

Shaw's Privacy Act claim is premised on allegations that the Navy improperly provided Parlatore with (i) a survey taken by instructor pilots that contained comments about Shaw, (ii) records of an evaluation of Shaw conducted by the Field Naval Aviator Evaluation Board ("FNAEB") in October 2018, and (iii) the report of a Command Directed Investigation ("CDI") of Shaw.[7]  Shaw also alleges that the CDI report was improperly distributed by Parlatore's client Navy Commander Bryan Roberts ("Roberts") to members of the commercial airline industry.[8]  Shaw alleges that the FNAEB evaluation and CDI were reprisal for whistleblower complaints Shaw made about institutional racism and unlawful gambling for alcohol between pilot instructors and their students.[9]  In 2018, Shaw filed a complaint with the Department of Defense Inspector General ("DOD-IG"), initiating an investigation into Roberts, Marine Corps Lieutenant Colonel Michael Nesbitt ("Nesbitt"), and Navy Commander Martin Weyenberg ("Weyenberg"). That proceeding was conducted by David Ursini ("Ursini"), a DOD-IG investigator.

Shaw's defamation claim against Parlatore arises from a statement made by Parlatore about a notebook written by Nesbitt, a client of Parlatore's, that contained passages about Shaw.[10]  Shaw alleges that portions of the notebook were provided by Nesbitt to the FNAEB during its evaluation of Shaw.[11]  A version of the notebook is presumably among the FNAEB records Shaw claims were improperly disclosed by the Navy in violation of the Privacy Act.

---

[7] Amended Complaint, ECF No. 46 ¶ 28–34.  FNAEB is an administrative body typically used to determine whether officers can safely and competently perform their duties.
[8] Amended Complaint, ECF No. 46 ¶ 25.
[9] Complaint, ECF No. 1 ¶ 12; Amended Complaint, ECF No. 46 ¶ 34.
[10] Amended Complaint, ECF No. 45, ¶ 6, 21–23.
[11] Complaint, ECF No 1 ¶ 44–45; Amended Complaint, ECF. No. 46 ¶ 18, 21, 23.

In January 2020 Parlatore submitted a complaint to the DOD-IG on behalf of his clients Roberts, Nesbitt, and Weyenberg. That complaint asserted that the DOD-IG investigation conducted by Ursini was flawed due to Ursini's bias,[12] and it stated, *inter alia*:

> . . . we have received inquiries from reporters regarding a significant amount of private information that LT Shaw has released to the media, including several surreptitiously recorded conversations with LtCol Nesbitt, as well as copies of LtCol Nesbitt's personal notes. [FN 10][13]

Shaw's defamation claim against Parlatore in the Shaw Lawsuit is predicated on that statement's corresponding footnote, which states:

> [FN 10] It is unknown how LT Shaw came to possess a copy of LtCol Nesbitt's notebook in the first place. It appears that he either unlawfully searched LtCol Nesbitt's office to make copies for himself or received copies from Mr. Ursini. Either possibility is a very serious and deeply concerning issue.[14]

Shaw alleges that Parlatore included the same allegedly defamatory statement in a letter he sent to U.S. Representative Elaine Luria,[15] as well as in correspondence with "various Congressional staffers and Non-Governmental Agencies."[16]

Shaw alleges that Parlatore's suggestion that he "either unlawfully searched LtCol Nesbitt's office to make copies" of the notebook or "received copies from Mr. Ursini" is false because he was provided a copy of his FNAEB evaluation records, which included Nesbitt's notebook.[17] Parlatore has argued that the two "possibilit[ies]" he identified regarding how Shaw may have come to possess a copy of the notebook were informed by his understanding that (i) Nesbitt emailed Ursini a copy of portions of his notebook in September 2018, and (ii) that the

---

[12] Plaintiff's Motion for Preliminary Injunction Ex. 3, ECF 2-4 at 10; Complaint, ECF No. 1 ¶ 67; Amended Complaint, ECF No. 46 ¶ 40; Defendant Parlatore's Response to Plaintiff's First Request for Admissions ("Parlatore's First RFA Response"), ECF 41-3 at 5, 10.
[13] Plaintiff's Motion for Preliminary Injunction Ex. 3, ECF 2-4 at 10.
[14] Amended Complaint, ECF No. 46 ¶ 40; Parlatore's First RFA Response, ECF 41-3 at 10.
[15] Amended Complaint, ECF No. 46 ¶ 22; Complaint, ECF No. 1 ¶ 113
[16] Amended Complaint, ECF No. 46 ¶ 41.
[17] Amended Complaint, ECF No. 46 ¶ 9.

copy of Nesbitt's notebook used in the FNAEB proceeding was a different version than that which (according to Parlatore) "Shaw released to the media."[18]

In meet-and-confer discussions, Shaw's counsel represented to undersigned counsel that Parlatore's initial discovery disclosures mention Prine twice by name.[19]  First, Prine is apparently listed as a person Parlatore believes may have information supporting Parlatore's contention that Shaw is a public figure.[20]  Second, Prine is apparently listed as a person that Parlatore believes may have information "[o]n the subject of [Shaw] surreptitiously recording and then disseminating conversations with his superior officers at the same time that he is also disseminating copies of LtCol Nesbitt's notebook."[21]  Shaw's counsel also has indicated that he believes that Prine may have information about a statement in an email from Parlatore (to someone other than Prine) in which Parlatore apparently wrote: "I just forwarded LtCol Nesbitt's rebuttal, along with the numerous witness statements that Mr. Ursini refused to accept or consider in reaching his conclusions to multiple reporters."[22]

Prine is a working journalist.  He currently reports on the military and related matters for Coffee or Die Magazine, a news and lifestyle magazine covering "stories both about and for the military, first responder, veteran, and coffee enthusiast communities."[23]  Prine previously worked for the Navy Times; he left the Navy Times in July 2020.[24]  Prine has a byline on one Navy

---

[18] Tr. of Preliminary Injunction Hearing, ECF 5 at 14:5–11; Parlatore's First RFA Response, ECF 41-3 at 8–9.
[19] Townsend Decl. ¶¶ 7–8, Ex. B.
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] Prine Decl. ¶ 1.
[24] Prine Decl. ¶ 2.

Times article concerning Shaw, which ran after the Shaw Lawsuit was filed.[25]  Prior to that,

Prine edited or contributed to three articles published by the Navy Times related to Shaw or the

Shaw Lawsuit (none of which refer to Shaw by name).  Specifically, Prine edited a May 31, 2019

article by Geoff Ziezulewicz that summarized the DOD-IG report into gambling for alcohol

between pilot instructors and students in the Navy that was initiated by Shaw's complaint.[26]

Prine also edited an August 9, 2019 article by Ziezulewicz that reported that Nesbitt had been

relieved of his role as a result of the DOD-IG investigation conducted by Ursini.[27]  And Prine

contributed to a September 13, 2019 article reporting that the Marine Corps Training Command

had rescinded the DOD-IG's finding against Nesbitt, and that Nesbitt would be permitted to

retire honorably.[28]

Prine has lived in this District since November 2019.[29]  On August 29, 2022, Prine was

served at his home with the deposition subpoena that is the subject of this Motion.[30]  The

subpoena's compliance date is September 22, 2022.  Under Rule 45(d)(3)(a), this Court is the

appropriate forum to decide this Motion.

## STANDARD OF LAW

The movant seeking an order quashing a subpoena bears the burden of demonstrating

undue burden under Rule 45(d).  *Linder v. Dep't of Def.*, 133 F.3d 17, 24 (D.C. Cir. 1998);

---

[25] Carl Prine, *Top Navy Aviators Sued by Lieutenant Claiming Vast Racist* Conspiracy, Navy Times (Feb. 13, 2020), https://perma.cc/TK3P-7S98.
[26] Geoff Ziezulewicz, *The Inside Story on Why Air Boss Barred Paddles from Wagering Boozy 'Bottle Bets' with Nuggets*, Navy Times (May 31, 2019), https://perma.cc/M686-PP9K.
[27] Geoff Ziezulewicz, *Marine XO of the Navy's Gladiator Fired*, Navy Times (Aug. 9, 2019), https://perma.cc/Q2T4-9LRF.
[28] *Marines Clear XO Fired from the Navy's Gladiators*, Navy Times (Sept. 13, 2019), https://perma.cc/7WZU-WDGJ.
[29] Prine Decl. ¶ 2.
[30] Prine Decl. ¶ 3.

*Acuity v. Kerstiens Home & Designs, Inc.*, No. 1:16-cv-02800, 2018 WL 3375015, at *1 (S.D. Ind. July 10, 2018). In determining whether a Rule 45 subpoena is unduly burdensome, a court may examine a number of factors, including relevance, the need of the party for the information sought, and the burden compliance would impose. *Id.* "Additionally, non-party status is a significant factor to be considered when assessing undue burden for the purpose of a Rule 45 motion." *Id.* (cleaned up). Under Rule 45, a party asserting a privilege bears the burden of establishing the privilege applies, at which point the burden shifts to the issuing party to attempt to overcome the applicable privilege. *Peck v. City of Boston (In re Slack)*, 768 F. Supp. 2d 189, 193 (D.D.C. 2011); *Acuity*, 2018 WL 3375015, at *1.

Where appropriate this brief also addresses the substantive law of the District of Columbia and Indiana, which are relevant to Prine's claims of privilege with respect to information and testimony sought by Shaw in support of his non-federal defamation claim. Fed. R. Evid. 501 ("in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"); *see, e.g.*, *Longs v. Lebo*, No. 3:07-CV-83 RM, 2009 WL 799533, at *3 (N.D. Ind. Mar. 24, 2009); *Gray v. Hoffman-La Roche, Inc.*, No. 02-136(RMU), 2002 WL 1801613, at *1 (D.D.C. Mar. 27, 2002); *Grunseth v. Marriott Corp.*, 868 F. Supp. 333, 336-37 (D.D.C. 1994); *see also Daly v. Nexstar Broad., Inc.*, 542 F. Supp. 3d 859, 865 & n.3 (S.D. Ind. 2021). Indiana statutory law provides journalists a privilege to refuse to reveal sources of information obtained in the course of newsgathering. *See* Ind. Code § 34-46-4-1, *et seq.* (hereinafter the "Indiana Shield Law"). Though the Indiana Shield Law does not specify whether the recipient or issuer of the subpoena bears the burden of proof when the shield law is invoked, the Indiana Court of Appeals has found "highly persuasive" a Texas Supreme Court decision holding "that when a non-party newsgatherer claims a privilege the burden shifts to the

discovering party." *In re Subpoena Duces Tecum to Stearns v. Zulka*, 489 N.E.2d 146, 150–51

(Ind. Ct. App. 1986) ("*Zulka*"). District of Columbia statutory law, which provides journalists a

broad privilege against the compelled disclosure of sources, news, and information, D.C. Code

§ 16-4701 *et seq.* (hereinafter the "D.C. Shield Law"), similarly shifts the burden to the party that

issued the subpoena once the privilege is invoked. *Prentice v. McPhilemy*, No. 98-CA-0004309,

1999 D.C. Super. LEXIS 29 (D.C. Super. Ct. May 5, 1999).

## ARGUMENT

I. **This Court should quash the subpoena pursuant to Rule 45(d) because enforcing compliance would place an undue burden on a non-party journalist.**

The deposition subpoena issued by Shaw's counsel, if enforced, would impose an undue

burden on Prine. Fed. R. Civ. P. 45(d)(1); Fed. R. Civ. P. 45(d)(3)(A)(iv). That is true under

Seventh Circuit law, *Thayer v. Chiczewski*, 257 F.R.D. 466, 470 (N.D. Ill. 2009); *see also Nw.*

*Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 928 (7th Cir. 2004), and under D.C. Circuit law.

*Breiterman v. United States Capitol Police*, 323 F.R.D. 36, 54 (D.D.C. 2017) (noting that in the

D.C. Circuit courts "generally employ a balancing test" to evaluate undue burden, "weighing the

burdensomeness to the moving party against the deponent's need for, and the relevance of the

information being sought."). Because there is little, *if any*, relevant information that can be

obtained through Prine's testimony—and no information that is not already available to the

parties—Rule 45(d)(3)(A)(iv) requires an order quashing the subpoena.

To the extent Prine possesses any information relevant to the claims and defenses in the

Shaw Lawsuit, the same information is (more easily) obtainable through party discovery, making

his deposition unnecessary. *See Patterson v. Burge*, No. 03 C 4433, 2005 WL 43240, at *2

(N.D. Ill. Jan. 6, 2005); *Breiterman*, 323 F.R.D. at 54 (quashing a subpoena for deposition

testimony that would "retread topics that have been explored at depth with [other] witnesses,"

and about which the issuing party "already has had an opportunity to obtain . . . from a first-hand source."). And, further, compelling Prine to provide testimony concerning his newsgathering and reporting activities—including about communications he may or may not have had with sources—would jeopardize his journalism. As previously noted, though no longer with the Navy Times, Prine continues to report on the military.

Shaw cannot depose Prine merely because Prine was named in Parlatore's initial disclosures. For non-parties, "the possibility of mere relevance may not be enough; rather, non-parties are entitled to somewhat greater protection." *Patterson*, 2005 WL 43240, at *1. And Prine's status as a journalist informs the "relative hardship" he would experience by sitting for a deposition and weighs heavily against compelling his compliance with the subpoena. *See Hobley v. Burge*, 223 F.R.D. 499, 505 (N.D. Ill. 2004). Indeed "[g]iven the important role that newsgathering plays in a free society, courts must be vigilant against attempts by civil litigants to turn non-party journalists or newspapers into their private discovery agents." *Id.* And subpoenas to members of the media, like Prine, threaten to undermine journalists' "efforts to maintain their independence and gain the trust of sources." *Patterson*, 2005 WL 43240, at *3 (N.D. Ill. Jan. 6, 2005) (citation omitted). As "journalistic and editorial judgments" are Prine's "stock and trade . . . surely some good justification should be advanced before these journalistic and editorial judgments can be examined by outsiders and made public in the context of a civil lawsuit." *Id.*

As further explained below, the hardship Prine will suffer as a non-party journalist if compelled to comply with the subpoena far outweighs any possible benefit to Shaw of obtaining Prine's compliance and, accordingly, the subpoena must be quashed. *See Nw. Mem'l Hosp. v.*

9

*Ashcroft*, 362 F.3d 923, 933 (7th Cir. 2004) (affirming quash of subpoena when issuing party could not show that the "cost is offset by the probative value of the records").

> **A.    Shaw has all the facts and evidence necessary to establish what version of Nesbitt's notebook, if any, he provided to "the media."**

Shaw apparently seeks Prine's testimony, in part, because Parlatore stated that Shaw "released to the media" a copy of Nesbitt's notebook.  Townsend Decl. ¶¶ 7–8, Ex. B.  Parlatore apparently contends that the version of Nesbitt's notebook Shaw "released to the media" was the version that Nesbitt sent Ursini—which may, Parlatore claims, differ from the version included among the FNAEB records.  Parlatore's First RFA Response, ECF 41-3 at 8–9.  Assuming, *arguendo*, this is relevant to Shaw's defamation claim against Parlatore, it turns on facts within **Shaw's** possession, custody, and control.  If Shaw sent a member of the media a copy of Nesbitt's notebook, Shaw can testify to that and, presumably, produce that correspondence.

This conclusion is supported by the analysis of the Seventh Circuit in *Northwestern Memorial Hospital v. Ashcroft*, in which the subpoena-issuing party to a case pending in the U.S. District Court for the Southern District of New York sought medical records from a non-party, Northwestern Memorial Hospital.  There, the Seventh Circuit explained that even if records are "relevant," they also must be "probative," and it affirmed a district court order quashing the subpoena because the subpoena-issuing party "had repeated opportunities to articulate a use for the records that it seeks, and it has failed to do so."  362 F.3d at 930.  Simply put, because discovery is sought from a non-party, it is not enough for there to be a possibility that Prine's testimony "*might* reflect something . . . that *might* be helpful" to Shaw.  *See Hobley*, 223 F.R.D. at 505.  Rather, when non-party compliance with a subpoena "would impose a significantly greater burden for significantly less useful material," the subpoena should be quashed.  *Id.*

**B.**    **Shaw has no reason to depose Prine about Parlatore's statement that he forwarded records about Shaw to reporters.**

Shaw apparently also seeks Prine's testimony, in part, because of an email in which Parlatore states that he "forwarded LtCol Nesbitt's rebuttal, along with the numerous witness statements that Mr. Ursini refused to accept or consider in reaching his conclusions to multiple reporters."  True or not, it is unclear what, if any, relevance this has to *any* of the causes of action in Shaw's Amended Complaint.  ECF No. 46 ¶¶ 26–43.  It has nothing to do with Shaw's defamation claim against Parlatore—which is predicated on Parlatore's statement about how Shaw came to possess Nesbitt's notebook.  Nor does it appear to relate to Shaw's Privacy Act claim against the Navy for allegedly disclosing information to Parlatore.  5 U.S.C. 552a(b) ("No agency shall disclose any record which is contained in a system of records by any means of communication to any person.").  In any event, even assuming it is somehow relevant to a claim or defense in the Shaw Lawsuit—which it does not appear to be—any information concerning what Parlatore provided to "multiple reporters" is plainly in the possession of a party to the case—Parlatore—and, if needed, can and should be sought from him.

*Patterson v. Burge* is instructive.  There, the Northern District of Illinois considered a subpoena served on two non-party news organizations that sought information—including unpublished work product—they had compiled about a party to that case.  2005 WL 43240, at *1.  The stated rationale for the subpoena was "meager, to say the least, and consist[ed] largely of arguing repeatedly, albeit in different verbal formulations, that the materials sought may contain relevant information."  *Id.* at *2.  The district court determined that, to the extent the subpoena-issuing party had established some relevance, it had done so only "in its broadest and weakest sense."  *Id.*  And "[a]gainst these weak justifications, the burden on [a subpoena recipient] is significant," especially because the information sought may involve a journalist's

"thought processes, his or her method of investigation, and his or her choices about what should be published and what withheld." *Id.* at \*4. Accordingly, the district court in *Patterson* quashed the subpoena under Rule 45. This Court should do the same here.

### C. Prine cannot be called to testify as to whether Shaw is a public figure, which is an issue of law.

Shaw apparently also seeks Prine's testimony, in part, because Parlatore listed Prine as a person who may have information as to whether Shaw is a public figure. But "whether (and to what extent) a person is a public figure is a matter of law for the court to decide." *Tavoulareas v. Piro*, 817 F.2d 762, 772 (D.C. Cir. 1987). For this reason, non-party journalists are not called to testify about the public figure status of plaintiffs they have reported on; were that permissible, non-party journalists routinely would be haled into court as witnesses in defamation cases. For this reason, too, the subpoena is unduly burdensome and should be quashed pursuant to Rule 45.

## II. This Court should quash the subpoena pursuant to Rule 45(d) because it seeks privileged or other protected matter under Indiana and Seventh Circuit law.

It appears that Shaw seeks Prine's deposition testimony solely in connection with his state-law defamation claim against Parlatore, over which the federal court in Washington, D.C. is exercising supplemental jurisdiction. Accordingly, Prine may assert substantive state-law privileges. For the reasons set forth below, District of Columbia substantive law should control resolution of this Prine's privilege assertions as to any discovery sought in connection with that state-law claim. However, to the extent this Court applies the substantive law of Indiana, that state's strong substantive protections for journalists' unpublished work product and communications with confidential and nonconfidential sources would apply.

First, Prine's work product, including conversations he had with sources, are privileged. Indiana courts have held that a First Amendment privilege protects non-party journalists, like Prine, against the compelled disclosure of both confidential and nonconfidential information in

civil discovery. *See Zulka*, 489 N.E.2d at 150 ("The compelled production of a reporter's resource materials is 'equally as invidious' as the compelled disclosure of confidential informants.") (citation omitted).[31]  As the *Zulka* court recognized, for reporters who rely on sources in the newsgathering process, "the effect of such [compelled] disclosure upon future investigative reporting threatens freedom of the press and the public's need to be informed." *Id.* at 149–50.  Indeed, the court noted, the role of a news organization

> [i]s to gather as much information as it possibly can with respect to all facets of activity of interest and importance to readers.  If it does its job well, it logically will be the repository of much information concerning controversial events which take place in the area which it serves.  . . . To make the press, in effect, the investigative arm of every civil litigant . . . inevitably will constrict the flow of information to the press, and ultimately to us all.

*Zulka*, 489 N.E.2d at 150 (quoting *Suede Originals v. Aetna Casualty* (1982), Tex. Dist., 8 Media L. Reptr. 2565).  Here, Shaw cannot demonstrate that Prine's testimony is "highly relevant," that he has a "compelling need" for that testimony "sufficient to override the First Amendment Privilege," or that he "has been unsuccessful obtaining the information [he seeks from Prine] from other sources." *Id.*

In addition, Prine, who is an "editorial or reportorial employee" of a periodical also is entitled to invoke the protections of the Indiana Shield Law, Ind. Code § 34-46-4-1, *et seq*.  That law provides a statutory privilege against the compelled disclosure of "the source of any information" obtained in the newsgathering process no matter whether the information was "published or unpublished."  Ind. Code § 34-46-4-2.

---

[31] The Indiana Court of Appeal's recognition of a reporter's privilege based in the First Amendment to the United States Constitution also implies the existence of an even stronger, independent privilege based in the Indiana Constitution, which "more jealously protects freedom of speech guarantees than does the United States Constitution." *Mishler v. MAC Sys., Inc.*, 771 N.E.2d 92, 97 (Ind. Ct. App. 2002) (citation omitted).

In sum, to the extent Shaw seeks to question Prine about conversations with sources during the course of his newsgathering—whether to obtain information that is published or unpublished, or confidential or nonconfidential—such questioning is foreclosed by the substantive law of Indiana, which affords statutory and constitutional privileges against the compelled disclosure of such information.

It does not appear that Shaw seeks Prine's deposition testimony in connection with his federal Privacy Act claim. However, to the extent Shaw does seek deposition testimony related to that claim—over which the district court in Washington, D.C. has federal question jurisdiction—D.C. Circuit substantive law should apply, for the reasons detailed below. However, even if this Court were to apply the substantive privilege law of the Seventh Circuit, the First Amendment would protect against the compelled disclosure of any confidential source information that Shaw would seek to elicit from Prine. *See Branzburg v. Hayes*, 408 U.S. 665, 710 (1972) (Powell, J., concurring); *McKevitt v. Pallasch*, 339 F.3d 530, 533 (7th Cir. 2003). While the Seventh Circuit has held that the reporter's privilege does not apply in cases in which solely non-confidential information is sought, *id.*, there is no limit on the types of information that Shaw seeks to elicit from Prine. And, because the testimony Shaw seeks from Prine can *only* relate to Prine's newsgathering and reporting activities, there is significant risk that Shaw will attempt to question Prine about such privileged matters.

For the foregoing reasons, if it applies the substantive privilege law of Indiana and the Seventh Circuit, this Court should quash the subpoena pursuant to Rule 45(d)(3)(A)(iii).

III.    **This Court should quash the subpoena pursuant to Rule 45(d) because it seeks privileged or other protected matter under District of Columbia and D.C. Circuit law.**

A.    **District of Columbia and D.C. Circuit substantive law should control resolution of Prine's privilege assertions.**

Shaw's defamation claim—the only claim in the Shaw Lawsuit for which it appears he seeks discovery from Prine—is a non-federal claim over which the U.S. District Court for the District of Columbia has supplemental jurisdiction. State laws creating a privilege are substantive, and federal courts apply the choice-of-law rules of the forum state—here, Indiana— to determine the appropriate substantive law for claims arising under diversity or supplemental jurisdiction. *McCoy v. Oberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014).

Courts applying Indiana's choice-of-law rules do not appear to have directly addressed their application to a motion to quash a subpoena to a non-party on the basis of privilege. Cases applying Indiana's choice-of-law analysis to tort cases, however, are instructive. That analysis requires the court to first "determine if there is a true conflict" between the laws of the states impacted by the litigation—here, Indiana and the District of Columbia. *Calderon v. Melhiser*, 458 F. Supp. 2d 950, 952 (S.D. Ind. 2006). There is a "true conflict" between the laws of those two jurisdictions. D.C.'s Shield Law is more protective than Indiana's; D.C.'s Shield Law applies to journalistic work product in addition to protecting sources, D.C. Code § 16-4702, whereas Indiana's Shield Law applies to "the source of any information procured or obtained" in the course of newsgathering. Ind. Code § 34-46-4-2. While Indiana courts also recognize a broader privilege arising out of the First Amendment, *see Zulka*, 489 N.E.2d at 150, the expressly broader reach of D.C.'s statutory privilege presents a "true conflict" with Indiana law.

When, as here, there is a conflict between the laws of the different states, Indiana applies the doctrine of *lex loci delicti*, which makes applicable the substantive law of the state "where

the last event necessary to make an actor liable" took place. *Calderon*, 458 F. Supp. at 952. Indiana does not apply *lex loci delicti* in cases where the place of injury does not have a significant connection to the legal action. *Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind. 1987). In such cases, courts instead may consider other factors like: (1) the place where the conduct that resulted in the injury took place; (2) the residence or place of business of the parties; and (3) the central location of the relationship between the parties. *Id.* at 1073–74.

Under either analysis, the substantive law of the District of Columbia should apply to Prine's claims of privilege. Indiana has no connection to the events giving rise to the Shaw Lawsuit, nor does it have any connection to the newsgathering that is the target of Shaw's subpoena to Prine and the subject of this Motion. The District of Columbia is where the underlying Shaw Lawsuit is pending, where (among other of the defendants) the United States Navy is located, and where "a substantial part of the events or omissions giving rise" to Shaw's defamation claim took place, Amended Complaint, ECF No. 46 ¶ 6. It is also, under the doctrine of *lex loci delicti*, where the final act necessary to give rise to Shaw's defamation claim— publication and resulting damages—allegedly occurred. *See* Amended Complaint, ECF No. 46 ¶ 41; ¶ 22. Moreover, the District of Columbia is the central location for most—if not all—of the newsgathering and reporting that would be the subject of Prine's deposition testimony.[32] Accordingly, District of Columbia substantive privilege should apply.

---

[32] Prine moved to this District in November 2019. Prine Decl. ¶ 2. All of the Navy Times articles that he edited or contributed to that concern individuals or events connected to the Shaw Lawsuit were published prior to November 2019, with the exception of one article that was published in February 2020, after the Shaw Lawsuit was filed. *See* Carl Prine, *Top Navy Aviators Sued by Lieutenant Claiming Vast Racist* Conspiracy, Navy Times (Feb. 13, 2020), https://perma.cc/TK3P-7S98. That article is about the Shaw Lawsuit itself and does not appear to be the subject of the deposition testimony Shaw seeks from Prine.

As explained above, it appears that Shaw seeks to depose Prine solely in connection with his defamation claim against Parlatore. To the extent, however, Shaw also seeks information from Prine pertaining to Shaw's Privacy Act claim, the choice-of-law analysis differs, because in federal question cases, courts apply federal choice-of-law rules. *Jafari v. Wynn Las Vegas, LLC*, 569 F.3d 644, 649 (7th Cir. 2009) (citing *In re Gaston and Snow*, 243 F.3d 599, 605–06 (2d Cir. 2001)). When Congress has not given clear guidance, courts will often consult the Restatement (Second) of Conflicts of Law when conducting a federal common law choice-of-law analysis. *Eli Lilly do Brasil, Ltda v. Fed Express Corp.*, 502 F.3d 78, 81 (2d Cir. 2007); *see also Lien Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006); *Daimler Chrysler Corp. Healthcare Benefits Plan*, 448 F.3d 918, 922 (6th Cir. 2006).

The threshold question under federal common law choice-of-law analysis is which jurisdiction has the most significant relationship with the communication over which the privilege is asserted. Restatement (Second) of Conflict of Laws § 139 (1971). Here, for the reasons stated above, the forum with the most significant relationship to the newsgathering and reporting that Shaw seeks to depose Prine about is the District of Columbia. Once that question is answered, courts then consider whether that forum—the U.S. District Court for the District of Columbia—would privilege the communication, while the local forum—the U.S. District Court for the Southern District of Indiana—would not. With respect to any testimony sought in support of Shaw's federal Privacy Act claim, the scope of the reporter's privilege recognized in the D.C. Circuit differs from that recognized in the Seventh Circuit; the D.C. Circuit recognizes a reporter's privilege that protects nonconfidential sources *and* unpublished journalistic work product. *Compare McKevitt*, 339 F.3d 530 *with Zerilli v. Smith*, 656 F.2d 705, 712–14 (D.C. Cir. 1981).

17

Where the law of the local forum differs, the law of the forum with the most significant relationship with the communication that is the subject of the privilege claim applies, as long as there is some "special reason why the forum policy favoring admission [of potentially privileged material] should not be given effect." *Id.* Here, the fact that Prine has no information, whatsoever, relevant to Shaw's Privacy Act claim, and the fact that the discovery sought by Shaw is targeted to obtaining information about Prine's D.C.-centered newsgathering and reporting, are both independent "special reasons" that weigh in favor of applying the more protective privilege law of the D.C. Circuit. *See* Restatement (Second) Conflict of Laws § 139 cmt. d (listing items that may constitute a "special reason," including "the number and nature of the contacts that the state of the forum has with the parties and with the transaction involved [and] the relative materiality of the evidence that is sought to be excluded"). For these reasons, D.C. Circuit law should apply to Prine's claims of reporter's privilege over any information—if there is any—sought by Shaw in connection with his federal Privacy Act claim.

## B. District of Columbia and D.C. Circuit substantive law require that the subpoena be quashed.

The D.C. Shield Law, D.C. Code § 16-4701 *et seq.* applies to the deposition testimony sought from Prine in support of Shaw's non-federal defamation claim and requires the subpoena to be quashed. The statute provides an *absolute* privilege against the compelled disclosure of journalistic sources, whether confidential or non-confidential. D.C. Code § 16-4702(1); *see also* D.C. Code § 16-4703(b) ("A court may not compel disclosure of the source of any information protected under section 16-4702."). This absolute protection extends "not only [to] the identity of the person, but . . . [also to] documents, inanimate objects and all sources of information" that would lead to the disclosure of a source protected under the statute. *Prentice*, 1999 D.C. Super. LEXIS 29, at *12 n.10 (cleaned up). For example, in *Grunseth v. Marriott Corp.*, a party

18

subpoenaed non-party journalists for the disclosure of a hotel bill and notes of interviews with sources that the reporters had relied upon to write a story about a politician's extramarital affair. 868 F. Supp. at 355 (D.D.C. 1994) (applying District of Columbia substantive law in part). But, the district court noted, "[w]hat Plaintiff is really trying to do, through the use of discovery . . . is obtain the sources relied upon by the Tribune reporters." *Id.* This was impermissible. "[T]he D.C. statute accords total protection to news sources, whether confidential or not, and whether disclosed to others or not. Thus, by its clear wording, the statute applies to and covers the present case and gives an absolute privilege for all news sources." *Id.* at 336.

In addition, the D.C. Shield law also provides a qualified privilege for journalistic work product. Specifically, the statute states "no judicial . . . body with the power to issue a subpoena shall compel any person who is or has been employed by the news media in a news gathering or news disseminating capacity to disclose" unpublished material—namely, "[a]ny news or information procured by the person while employed by the news media in the course of pursuing professional activities that is not itself communicated in the news media." D.C. Code § 16-4702(2). To the extent Shaw seeks deposition testimony from Prine involving (i) conversations or other correspondence Prine had with sources and (ii) unpublished work product material, that testimony would fall squarely within the scope of the D.C. Shield Law's protections.

Shaw cannot overcome the statute's qualified privilege for work product because he cannot meet the requirements imposed by D.C. Code § 16-4703(a). Specifically, the statute requires that a party seeking information must establish "by clear and convincing evidence" that the information is both "relevant to a significant legal issue before a judicial . . . body that has the power to issue a subpoena," and could not be obtained, with due diligence, by any alternative means. *Id.* The court also must find an "overriding public interest in the disclosure." *Id.* As

previously discussed, all of the information sought from Prine related to Shaw's defamation claim is either irrelevant or could be obtained from an alternative source—specifically, from the parties to the Shaw Lawsuit. Shaw—not Prine—is in the best position to testify about (or produce correspondence) concerning who he sent a copy of Nesbitt's notebook to, if that occurred. And deposition testimony from Prine is not, as a matter of law, needed to determine the *question of law* as to whether Shaw is a public figure for the purposes of his defamation claim; the Navy Times' published articles relating to Shaw are publicly available. *See Gray*, 2002 WL 1801613, at *1 (applying District of Columbia substantive law and holding that subpoena-issuing party failed to meet the requisite burden to overcome the D.C. Shield Law's qualified privilege).

Finally, any information—and it appears there is none—Shaw seeks from Prine to support his federal Privacy Act claim would be protected by the reporter's privilege recognized by the D.C. Circuit. Under D.C. Circuit law, "a qualified reporter's privilege under the First Amendment should be readily available in civil cases." *Zerilli v. Smith*, 656 F.2d 705, 712–14 (D.C. Cir. 1981). The privilege applies to both confidential information and unpublished, nonconfidential information. *In re Slack*, 768 F. Supp. 2d at 194 (D.D.C. 2011) (explaining that not extending the qualified privilege to both confidential and nonconfidential information "would risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government or private parties").

Shaw cannot overcome this qualified privilege. Courts applying the law of the D.C. Circuit use a two-prong test to determine whether a party has done so. "First, the information sought must go 'to the heart of the matter' and not merely be marginally relevant." *Lee v. Dep't of Justice*, 413 F.3d 53, 57 (D.C. Cir. 2005) (quoting *Zerilli*, 656 F.2d at 713). "Second, the

plaintiff must have exhausted 'every reasonable alternative source of information' so that journalists are not simply a default source of information for plaintiffs." *Id.* (quoting *Zerilli*, 656 F.2d at 713). Neither of these conditions can be met here.

Prine's testimony plainly does not go to the "heart" of Shaw's Privacy Act claim; it is not relevant to that claim *at all*. Shaw alleges that Parlatore—not Prine—was the improper recipient of the Privacy Act-protected material at issue. Second, Shaw cannot demonstrate that he has exhausted every reasonable alternative source of any information he would seek during Prine's deposition. Parlatore—not Prine— plainly is in the best position to discuss whether he received Privacy Act-protected material from the Navy. Because Shaw cannot overcome the qualified reporter's privilege available to Prine under D.C. Circuit law, the subpoena must be quashed.

## IV. In the alternative, the Court should enter a protective order limiting the scope of any deposition of Prine.

The subpoena should be quashed for the reasons set forth above. Compelled compliance with the subpoena would impose an undue burden on a non-party journalist and the subpoena seeks the disclosure of privileged information. In the event, however, the Court does not quash the subpoena in its entirety, Prine respectfully requests that the Court enter an order limiting the scope of the deposition to those specific factual matters that Shaw can demonstrate both are relevant to a claim or defense in the Shaw Lawsuit, and cannot be obtained from any other source. Such a protective order is necessary to ensure that Prine is not unduly burdened or subjected to an open-ended inquiry about his reporting and newsgathering, including his communications with (and identities of) his sources.

## V. If the Court quashes the subpoena under an undue burden analysis, it should award Prine his reasonable attorney's fees.

Attorney's fees are an available, and appropriate, sanction for the court to impose when a party fails to "take reasonable steps to avoid imposing undue burden or expense on a person

subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Indeed, even "good faith in issuing a subpoena is not sufficient to avoid sanctions . . . if a party has issued the subpoena in violation of the duty imposed by that Rule." *Builders Ass'n of Greater Chicago v. City of Chicago*, No. 96 C 1122, 2002 WL 1008455, at *3 (N.D. Ill. May 13, 2002). In particular, courts have awarded fees when a party's "counsel fail[s] to take reasonable steps after meeting and conferring with" a non-party subpoena recipient. *Am. Soc. of Media Photographers, Inc. v. Google, Inc.*, No. 13 C 408, 2013 WL 1883204, at *6 (N.D. Ill. May 6, 2013) (awarding fees). As in *Am. Soc. Of Media Photographers, Inc. v. Google, Inc.*, Shaw "could have withdrawn the subpoena and attempted to subpoena a different [individual or entity] that possessed the relevant information. This was not, however, the course of action [he] chose." 2013 WL 1883204, at *6. As such, the Court should also award Prine his reasonable attorney's fees.

## CONCLUSION

For the foregoing reasons, Mr. Prine respectfully requests that this Court enter an order quashing Shaw's subpoena for Prine's deposition testimony and directing Shaw to pay reasonable attorney's fees in connection with this Motion. In the alternative, Mr. Prine respectfully requests that this Court enter a protective order limiting the scope of any deposition testimony he is compelled to provide in the Shaw Lawsuit.

Dated: September 21, 2022

Respectfully submitted,
*/s/ Katie Townsend*
Katie Townsend
REPORTERS COMMITTEE
  FOR FREEDOM OF THE PRESS
 1156 15th St. NW, Ste. 1020
Washington, D.C. 20005
Telephone: (202) 795-9303
Email: ktownsend@rcfp.org

*Counsel for Non-Party Movant Carl Prine*