UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
------------------------------------------------------------------------X
STEVEN SHAW,

                Plaintiff,                                    Docket No.: 20-cv-410

    -against-

THE HONORABLE CARLOS DEL TORO, and
TIMOTHY C. PARLATORE, ESQ.

                Defendants.
------------------------------------------------------------------------X


# MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS


                                        Timothy C. Parlatore, Esq.
                                        *Defendant, Pro Se*
                                          One World Trade Center, Suite 8500
                                          New York, New York, 10007
                                          212-679-6312
                                          timothy.parlatore@parlatorelawgroup.com

**PRELIMINARY STATEMENT**

The case at bar is a patently improper case, based on a legally insufficient theory, against a Defendant for which there is no jurisdiction[1]. On the pleadings, which are now closed, this Court may render judgment in Defendant's favor and against the Plaintiff.

**STATEMENT OF FACTS**

**Background**

For the sake of brevity, a complete statement of facts is not required for this motion, as it has been exhaustively briefed in other motions. The only facts relevant to this motion are that Defendant Parlatore, acting as an attorney for multiple clients, filed a complaint with the Department of Defense Inspector General ("DODIG") outlining significant misconduct by both a DODIG investigator, as well as Plaintiff.

In this 10-page letter[2], Defendant included a description of the serious misconduct committed by LT Shaw. The serious misconduct outlined in this letter included, but was not limited to:

   a. Secretly teaching students to disregard the approved Navy method of landing on an aircraft carrier, in favor of his unapproved and potentially deadly technique;

   b. Intentionally violating regulations by repeatedly bringing an unauthorized camera into a secure space with Top Secret material present; and

   c. Willfully disobeying orders to cease his unlawful activities.

---

[1] Plaintiff is not relying on diversity jurisdiction, presumably because the amount in controversy does not meet the jurisdictional threshold, but rather relies on supplemental jurisdiction under 28 U.S.C. §1367. While Defendant believes that this libel claim is improperly joined, jurisdictional challenges are not permitted in Fed.R.Civ.P. 12(c) motions and is therefore not being asserted here.

[2] A copy of this letter, which is referenced in the complaint and therefore incorporated by reference and also filed as an exhibit by Plaintiff in his case opening documents (Docket #2-4), is annexed hereto at Exhibit "A."

1

On the 10th page, Plaintiff noted that he had "received inquiries from reporters regarding a significant amount of private information that LT Shaw has released to the media, including several surreptitiously recorded conversations with LtCol Nesbitt, as well as copies of LtCol Nesbitt's personal notes." There was then a footnote where Plaintiff explained:

> It is unknown how LT Shaw came to possess a copy of LtCol Nesbitt's notebook in the first place. It appears that he either unlawfully searched LtCol Nesbitt's office to make copies for himself or received copies from Mr. Ursini.

Plaintiff's complaint does not claim that any of the allegations of serious misconduct are false or defamatory, only this footnote where Defendant is asking DODIG to investigate whether its investigator unlawfully provided copies of evidence to Plaintiff.

## LEGAL STANDARD

Fed.R.Civ.P. 12(c) permits that a party may make a motion for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed.R.Civ.P. 12(h)(2) permits that failure to state a claim upon which relief can be granted may be raised by a motion under Rule 12(c).

When making a 12(c) motion for failure to state a claim, "courts employ the same standard that governs a Rule 12(b)(6) motion to dismiss." *McNamara v. Picken*, 866 F. Supp. 2d 10, 14 (D.D.C. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be sure, the facts alleged need not be "detailed." *Twombly*, 550 U.S. at 555. But they must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[.]" *Id*. Where a pleading offers only "labels

2

and conclusions" or "a formulaic recitation of the elements of a cause of action," the pleading "will not do." *Id*. And while a court assumes the truth of the factual allegations, it does not assume the truth of legal conclusions or accept inferences that a plaintiff draws. *See Iqbal*, 556 U.S. at 678; *Kowal v. MCI Commc'ns Corp*., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

In considering this motion the Court "may consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the parties do not produce the document." *Tefera v. OneWest Bank, FSB*, 19 F. Supp. 3d 215, 220 (D.D.C. 2014) (internal quotations omitted), *quoting Busby v. Capital One, N.A*., 932 F. Supp. 2d 114, 133-34 (D.D.C. 2013); *Ward v. D.C. Dep't of Youth Rehab. Servs*., 768 F. Supp. 2d 117, 119 (D.D.C. 2011))

## ARGUMENT

### I. The Libel Claim is Legally Insufficient as it does not Identify any Allegedly Libelous Statement

In asserting libel claims against Defendant Parlatore, Plaintiff relies upon a statement that makes no factual allegations against Plaintiff at all and is invalid on its face:

> Mr. Parlatore inferred that Lt. Shaw had unlawfully trespassed on either government or private property in order to obtain a copy of Lt. Col. Nesbitt's notebook-the very same one produced by Lt. Col. Nesbitt at Lt. Shaw's FNAEB. Specifically, Mr. Parlatore asserted: "It is unknown how LT Shaw came to possess a copy of LtCol Nesbitt's notebook in the first place. It appears that he either unlawfully searched LtCol Nesbitt's office to make copies for himself or received copies from [the DoD IG] .. Either possibility is a very serious and deeply concerning issue."

*Complaint* ¶111..

A plain reading of this quote, in context, demonstrates that Defendant was asking the DoD IG to investigate whether David Ursini had improperly given documents to LT Shaw that he had obtained during his investigation, or if there was another explanation that would exonerate Mr. Ursini, such as LT Shaw taking a copy from LtCol Nesbitt's office.  "A statement challenged as defamatory, regardless of whether it is posed as a question, cannot be libelous unless it can reasonably be read as a false assertion of fact." *Abbas v. Foreign Policy Grp., LLC*, 975 F. Supp. 2d 1, 15 (D.D.C. 2013), *citing Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1094 (4th Cir. 1993). ("[I]nquiry itself, however embarrassing or unpleasant to the subject, is not accusation.").

On its face, the only factual assertion here is that "[i]t is unknown how LT Shaw came to possess a copy of LtCol Nesbitt's notebook in the first place," not an affirmative statement that he had taken it from LtCol Nesbitt's office.  This type of statement cannot legally be considered defamatory.

Moreover, LT Shaw is a limited-purpose public figure based on his voluntary participation in various news article and interviews and, as such, is required to meet the heightened standard of actual malice.  However, under any standard, this cause of action fails.

### II. Plaintiff cannot Plausibly Allege Libel from a Single Footnote in a 10-Page Letter Outlining his Significant Misconduct Under the Libel-Proof Plaintiff Doctrine

It is impossible for LT Shaw to have suffered any damage from this statement because his reputation is libel-proof.  "Libel-proof plaintiffs are those whose reputation is so besmirched, either from uncontested portions of the allegedly libelous publication or from other events occurring prior to the challenged publication, that as a matter of law such plaintiffs would be unable to recover for further damage to reputation."  *Liberty*

4

*Lobby, Inc. v. Anderson*, 562 F. Supp. 201, 209 n.12 (D.D.C. 1983), *citing Simmons Ford, Inc. v. Consumers Union of the United States, Inc.*, 516 F. Supp. 742 (S.D.N.Y.1981).

It is uncontested that LT Shaw engaged in a host of unsavory behavior. In addition to the big three areas of misconduct quoted above, the letter offers another laundry list of misconduct later, all of which were unchallenged by Plaintiff and not alleged to be false or defamatory:

1. Create[d] and distribute[d] an entirely unauthorized and unapproved course of instruction to students, including materials teaching potentially deadly and prohibited techniques in areas that the IUT is not qualified to teach.
2. Continue[d] to secretly distribute this material to students after a direct order to stop.
3. Maintain[ed] an unduly familiar relationship with the students.
4. Actively work[ed] to undermine the approved course of instruction and the qualified instructors by communicating privately with students, telling them upon checking in, "everything you've ever been told is a lie"
5. T[old] students to ignore the Tactical Pocket Checklist (PCL). Despite the fact that the PCL is the only approved procedure, he secretly t[old] the students that "the tac plc is useless" before their first ever flight with live bombs.
6. T[old] students that the Navy training methods are inadequate.
7. Sneak[ed] an unauthorized camera into secured spaces to take unauthorized videos.
8. Ask[ed] students to sneak him back into those same secured spaces after his clearance is suspended.
9. G[ave] multiple media interviews, in violation of PAO instructions, where he criticizes the Navy's training methods, holds himself out to be a master instructor (despite his failure to achieve any instructor qualifications) and admits that "unofficially" he is trying to change "the entire training culture for naval aviators."
10. Despite his claims of inventing a better method of landing on a carrier and trying to change the entire training culture, he failed to submit any of these as official change requests.
11. Create[d] and distribute[d] patches to students who follow his teachings. This patch looks very similar to the squadron patch, with the exception that it depicts the squadron mascot being murdered.

It is utterly impossible to read the full letter outlining all of Plaintiff's history (none of which has Plaintiff pleaded was false or defamatory) and still find it plausible that any reasonable reader would find that a question posed in a footnote was ultimately the statement that lowered their opinion of Plaintiff's reputation. Thus, without going

outside the four corners of the pleadings, and the documents[3] incorporated by reference, Plaintiff is the textbook definition of libel-proof.

However, the Court need not only consider the other non-defamatory statements made by Defendant in this letter when evaluating whether Plaintiff is libel-proof. Plaintiff also attached the exhibit to the original letter, a copy of the Command Safety Survey, which contains numerous statements from Plaintiff's peers and clearly establishes that his reputation is so bad that he is "unable to recover for further damage to reputation." For example:

- "Since we did the right thing, and removed LT Steven Shaw from our instructor cadre, we clearly show that we are committed to safe and proper teaching and execution."
- "While 99.9 percent of our instructors are stellar and care deeply about the education and training of our students, the marred reputation of one dangerous instructor (LCDR Sel Shaw) has tarnished the hard work of others. Our leadership demands good instructors who will provide the safest and best quality aircrew to the fleet. They make the hard decisions to release the instructors and students who do not uphold that standard."
- "Because Steven Shaw is no longer a part of the squadron and not trying to deliberately disobey all of the above for his vain attempt at being some sort of visionary in his own mind."
- "LT Steven Shaw, an underqualified instructor, often went against conventional wisdom and standard procedure to utilize techniques that were not vetted by the appropriate experts within naval aviation. which could have resulted in the loss of life."
- "All Instructor Aircrew, with the exception of LT Shaw, work effectively as a team."
- "Our instructor leadership is now a cohesive unit that upholds the highest standard of performance and officership in our students. This wasn't always the case, however. When an instructor (LCDR Sel Shaw) was pushing unsafe information to eager to learn students, it degraded the safety and integrity of the instructor cadre. Retaliation from the individual has caused an extreme hit to the individuals that should be the future leadership of the Navy."

---

[3] This DODIG complaint letter was an exhibit to a much larger letter, along with several additional documents, which were sent to Rep. Elaine Luria, which was also incorporated by reference and included as an exhibit in the case initiating documents (Docket #2-5). For the sake of brevity, Defendant will not list all the additional information contained in these documents, but is annexing it hereto at Exhibit "B," should the Court wish to peruse additional materials about Plaintiff, which constitute the "uncontested portions of the allegedly libelous publication" *Id.*

- "With the exception of LT Shaw, every instructor at VFA-106 is a team player and would go anywhere and do anything for another instructor or student in this command. He was a toxic member of the ready room who should have been removed from his role as an instructor/mentor long before he was."
- "Morale WAS high. Recently decimated by the out of control IG system that rewarded unofficer-like conduct by LT Shaw and resulted in the removal of our executive Officer as the result of a biased investigation."
- "Steven Shaw being removed was one of the biggest morale boosts we could have, because that cancer was removed from the community before he actually got someone killed."
- "Morale is at an all time low. Our XO, LtCol Nesbitt, was relieved for standing up to a community cancer named Steven Shaw. It is hard to justify why one of the OUTSTANDING officers in our community is being shot in the face while Steven Shaw walks free on base, despite security violations and other improprieties. How does BIG NAVY think that makes an IAC at VFA-106 feel? It makes us feel like no one above our Skipper gives a goddamn about our careers or contributions."
- "LT Shaw taught non-standard things to students and actively hid what he was doing from the rest of the instructors. Every aviator should know how dangerous that is."
- "Steven Shaw was identified as a high risk individual by the command. He needed to be gone, and thankfully my CO and XO took care of it, regardless of the travesty they're enduring now."
- "If you(CNAF) brings back LT Steven Shaw I will mail my wings to you. You have done a disservice to LtCol Nesbitt by not standing up for the leaders that work for you. Take a hint, when the unit level, wing level and coast level Commanders back him-maybe you should too. VFA-106 will be fine, your retention problem won't. Yet again the JOPA see that character and integrity be damned, senior Navy leadership will not stand up for what is right. We saw it with ADM Moran a few weeks ago, we saw it on June 5th with XO Nesbitt. If this is what it means to be a leader, then good luck keeping people"
- "The entire saga with LT Steven Shaw has clearly gotten beyond ridiculous. In no world should a person like that be allowed in our community, and Sham Nesbitt knew that and took appropriate action. In all the talk of a high end fight from CNAF in down, I can't think of a person I would trust less to fly on my wing in that fight. Our business is based on trust in each other and it is obvious that that snake oil salesman can't be trusted. It was right to get rid of him before he actually got someone killed. If he is brought back, I will send my resignation and wings directly to the boss."

With evidently one of the most horrific reputations of any Naval Aviator in the entire fleet, it is even more implausible that this footnote, even if deemed defamatory,

7

could possibly damage Plaintiff's reputation any further than he has already inflicted on himself through his own actions. Thus, he is the textbook definition of a libel-proof plaintiff and the Court may render a judgment on the pleadings dismissing this count.

## Conclusion

The pleadings in this case provide this Court with more than ample support to find that Plaintiff has failed to allege any defamatory statements and, moreover, that due to the "uncontested portions of the allegedly libelous publication or from other events occurring prior to the challenged publication, that as a matter of law such plaintiffs would be unable to recover for further damage to reputation." *Liberty Lobby, Inc.* at 209 n.12. For these reasons, Defendant respectfully requests that this Court grant this motion, dismissing the complaint, together with such other and further relief as this Court deems appropriate.

Respectfully submitted,

Timothy C. Parlatore, Esq.
*Defendant, pro se*
Parlatore Law Group, LLP
One World Trade Center, Suite 8500
New York, New York 10007
212-679-6312
timothy.parlatore@parlatorelawgroup.com

8