IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STEVEN E. SHAW | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | Case No. 20-cv-00410-RDM |
| v. | ) | |
| | ) | |
| TIMOTHY C. PARLATORE, ESQ., et al., | ) | |
| | ) | |
|     Defendants. | ) | |

**PLAINTIFF STEVEN E. SHAW'S REPLY TO PARALTORE MEMORANDUM OF LAW REGARDING THE COURT'S JURISDICTION UNDER 28 U.S.C. § 1367 AS TO PLAINTIFF'S LIBEL PER SE CAUSE OF ACTION AGAINST DEFENDANT TIMOTHY C. PARLATORE**

**Submitted by:**
Eric S. Montalvo
**FEDERAL PRACTICE GROUP**
1750 K Street NW, Suite 900
Washington, D.C. 20006
(202) 862-4360 – Telephone
(888) 899-6053 – Facsimile
emontalvo@fedpractice.com
*Attorney for Plaintiff:*
**Steven E. Shaw**

**PURSUANT TO** the Court's Opinion and Order of August 2, 2023 (ECF 86), Steven E. Shaw, the Plaintiff in the instant matter, by and through his counsel of record, submits his Memorandum of Law explicating why the Libel *per se* cause of action in Plaintiff's Third Amended Complaint (ECF 46) should be retained by the Court pursuant to supplemental jurisdiction under 28 U.S.C. § 1367(a).  Defendant Parlatore's "Supplemental Brief Regarding Subject Matter Jurisdiction" (ECF 88) is unsupported by the facts of this case and caselaw.

## DISCUSSION

### A. Section 1367 Jurisdiction - Operative Facts

On or about May 16, 2018, naval personnel colluded to embark upon a "kamikaze" plan against Lt. Shaw to destroy his reputation, end his naval career, and frustrate his ability to obtain post service employment.  Defendant Parlatore acknowledged the success of this effort during his deposition on September 16, 2022, stating:

> I mean, do you really think it's likely that an airline would hire him, that he would, you know, start flying for Delta Air Lines without Delta or TSA ever inquiring about, hey, did you ever have a FNAEB, were you ever disciplined, were you ever investigated for teaching students a dangerous way of landing on an aircraft carrier? Come on.

Parlatore Depo Tr. at 126 Lines 13-19.  The plan's execution comprised of the deliberate creation and dissemination of false and defamatory information to injure Lt. Shaw's reputation and standing within the Naval and Civil aviation communities.  The false and offending information was created, collected, and contained in investigations which are protected from unlawful disclosure by the Privacy Act, 5 U.S.C. § 522 (a)-(b), (g)(4).  The elements to be proven are:

> (1) the intentional or willful disclosure by any means of communication to any person, or to another agency (2) of any record about an individual or the contents of any such record (3) without prior written consent (4) the disclosure of which

>caused the individual to suffer actual damages (5) unless the disclosure is pursuant to one of twelve statutory exceptions.

*Id*.  There is no statutory exception that applies in this case.[1]  Three of the offending Navy personnel are Commander Weyenberg, Commander Scott (Lt. Shaw's Commanding Officer), Lt. Col. Nesbitt (Lt. Shaw's Executive Officer), and Commander Roberts (one of the initial investigation officers who produced CDI – 1).  All are Parlatore's clients, are all government officials that intentionally and willfully disclosed Privacy Act protected information to numerous individuals for the intent and purpose of harming Lt. Shaw both personally and professionally which, as stated *supra*, they titled their "kamikaze" effort.  Disclosures continued to occur during the entirety of Lt. Shaw's active-duty service.  The unlawful disclosures were accomplished over time through various methods including their counsel Parlatore.

On or about June 12, 2019, the DODIG found, *inter alia*, Parlatore's clients to have engaged in unlawful Privacy Act disclosures and recommended that they be held accountable.[2]

During August of 2019 confronting the overwhelming weight of the attack on his future in the aviation community and his standing in the naval community, Lt. Shaw forwarded notes created by his executive officer, LtCol Nesbitt provided as part of his testimony against Lt. Shaw at his FNAEB in support of stripping his flight credentials – which are demonstrably false

---

[1] Defendant Kenneth Braithwaite's Responses and Objections to Plaintiff's First Set of Interrogatories and Documents Request, Page 7, Interrogatory 16. "If you are claiming that any "disclosure" fell within one or more of the exceptions stated in 5 U.S.C. Section 552a(b)(1)-(12), state which exception that you are claiming and why. Response**:** Based on current knowledge and subject to the right to supplement the interrogatories, the Navy does not currently claim any exception."

[2] "Our review of Roberts's email interactions with CDI witnesses and other personnel showed: …transmitting and receiving CDI information containing For Official Use Only (FOUO), Personally Identifiable Information (PII), Controlled but Unclassified, and Sensitive but Unclassified  materials to or through private e-mail accounts of DoN civilian and military personnel; …sending FOUO CDI details or evidence to military, DoN civilian, and non-DoD personnel who had no need to know… ECF 2-2, Pg 31-32,

official statements[3] – to a reporter in a detailed email outlining how they were false to demonstrate the extent that Navy officials going to pursue the "kamikaze" of Lt. Shaw. Carl Prine, the editor of the Navy Times at that time, took responsibility for the matter, subsequently engaged in a back and forth with Parlatore about it (given that it implicated his client which was already known to Prine), and no report was generated. This all occurred five months prior to Parlatore subsequently creating and publicizing the same offending information, for the same purpose, with new additions as discussed *infra*.

On or about December 16, 2019, the Assistant Secretary of the Navy found the actions of these naval personnel, Parlatore's clients, to be unlawful and directed that Cmdr. Martin Weyenberg, Lt. Col. Michael Nesbitt, and Cmdr. Bryan Roberts be held accountable. The Secretary of the Navy also directed the removal of all adverse information created, which included approximately over twenty actions and were inclusive of the Privacy Act protected material at issue in this case and included in Lt. Shaw's military record be removed.

Parlatore, realizing that the "kamikaze" effort was getting off track and in concert with his clients, notwithstanding the Secretary of the Navy's directive for the removal of all adverse material for the purpose of restoring Lt. Shaw's military record to that prior to the unlawful actions taking place, published Privacy Act protected material including the attachment of the first CDI created by Roberts, in support of his campaign to thwart the decision of the Secretary of the Navy given that they were now facing potential discipline for their actions. Parlatore

---

[3] "The board noted discrepancies in some testimony and counseling records presented to the board. LtCol Nesbitt presented notes dated 2 March 2018 describing counseling topics discussed with LT Shaw. The board found that this date conflicted with LT Shaw's recollection and with squadron flight records. An additional discrepancy arose regarding the date of a phone call between Lt Shaw and CDR Scott. LtCol Nesbitt's notes regarding the phone call are dated 24 April, while CDR Scott's statement summary indicates that this call took place on 2 May. The specifics of these discrepancies are noted in the findings of the board…In order to simplify this matter, the testimony and counseling notes of LtCol Nesbitt and the command investigation's interview summary for CDR Scott were not considered by the FNAEB. ECF 13-1

makes it clear in his deposition that the purpose of the publication and distribution was to achieve yet one more investigation of Lt. Shaw and ensure that everyone and anyone was aware that Lt. Shaw had engaged in "misconduct" which is repeated once again in his most recent pleading.

Understanding that the previous allegations had been effectively set aside Parlatore concocted a new set of allegations, all of which are false and defamatory. Lt. Shaw chose one of those statements to pursue in this matter. The statement chosen is *per se* libelous. This statement falsely asserts that Lt. Shaw engaged in criminal behavior. Parlatore acknowledges in his deposition that the actions raised in his statement are criminal.

As discussed, the "notes" were created by his client Nesbitt, their falsity was confronted in the FNAEB which determined they were unreliable (remarkable finding given that they were provided by a senior officer in an official proceeding) and Parlatore's exchange with Carl Prine. The notes were provided directly to Lt. Shaw by the FNAEB prior to its final determination and as a listed enclosure and then the final report was provided which included it. Nesbitt personally provided the notes to the FNAEB and Scott provided the report to Lt. Shaw. This was all known to his clients, outlined in the Prine exchange well in advance of Parlatore making his completely unsupported and knowing false criminal assertions about Lt. Shaw. He published these statements with the same goal his client's espoused – to falsely inform the world that Lt. Shaw was a criminal through the use of protected information and now adding new fabrications.

Parlatore was somewhat successful, a new investigation did take place, sans his new criminal conduct assertions. Parlatore has made numerous statements in the record that during this second investigation directly proceeding Lt. Shaw's discharge, that he continued to solicit

Privacy Act protected material from Naval Personnel even after his representation purportedly ceased."[4]

This next phase of the "kamikaze" effort was ultimately a failure which was eventually set aside and removed from Lt. Shaw's military record by a the newly appointed Secretary of the Navy. The reputation assassination and continuing harm to Lt. Shaw's naval career was carried forward through continued creation of defamatory content to be distributed as much as possible by Parlatore given the cloud that hung over his client's given the findings of misconduct by the Secretary of the Navy. Notwithstanding, Lt. Shaw was discharged with an Honorable discharge.

Lt. Shaw was not involved in misconduct, indeed because of his integrity he was bludgeoned by the Navy and Paratore. Indeed, the people, *inter alia*, directed to be held accountable for misconduct by the Secretary of the Navy were Parlatore's clients. An expert report served on the parties in January 2023 demonstrates approximately $1,900,000 in damages. *Per se* libel claims assume damages have been incurred.

The Court in its first hearing in this matter February 13, 2020, admonished Parlatore that "if you are saying things that are knowingly defamatory, you've got a problem, and you ought not in general be saying things where, as I understand the plaintiff's allegation, you had to have known they were false because you actually had the information in your capacity as representing your clients that would have allowed you to know that the allegations had to be false." February 13, 2020 Hearing Tr. at 12-13 Lines 20-25, 1. Parlatore's *per se* libel is directly borne from the

---

[4] Because all I have to do is walk around and people come up to me saying, oh, you're representing, you know, the guys. Let me tell you, Shaw -- I saw Shaw do this, Shaw told me that. I don't write all of that stuff down. And again, a lot of this came to me after the cases that I was representing my clients on, they concluded. Parlatore Depo Tr. at 115 Lines 1-18.

same operative facts of the Privacy Act claim and the same protected documents which include the willful, continuing, and intentional disclosures made by his clients through his publications and his untruthful additions to achieve the same during the pendency of the Privacy Act violations.

Parlatore's actions were in concert with Naval personnel who desired harm upon Lt. Shaw and became a direct participant in it. Parlatore's conduct in this case is indistinguishable from his clients and inseparable from the Privacy Act claims.

Respectfully submitted,

**FEDERAL PRACTICE GROUP**

s/ Eric S. Montalvo
1750 K Street NW, Suite 900
Washington, D.C. 20006
(202) 862-4360 – Telephone
(888) 899-6053 – Facsimile
emontalvo@fedpractice.com
***Attorney for Plaintiff:***
***Steven E. Shaw***

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of October, 2023, I electronically transmitted the attached document to the Clerk of Court using the ECF system for filing and transmittal of Notice of Electronic Filing to the following:

Bradley Silverman
Brenda A. Gonzalez Horowitz
DOK-USAO Civil Division
601 D Street NW
Washington, D.C. 20001
bradley.silverman@usdoj.gov
brenda.gonzalez.horowitz@usdoj.gov
*Attorneys for:*
*Carlos Del Toro*
*Kenneth Braithwaite*
*Thomas Harker*

Timothy Parlatore
PARLATORE LAW GROUP LLP
One World Trade Center
Suite 8500
New York, New York 10007
timothy.parlatore@parlatorelawgroup.com
*Attorney Pro Se:*
*Timothy Parlatore*

/s/ Eric S. Montalvo